# EXHIBIT A

**CT Corporation**
**Service of Process Notification**
09/01/2022
CT Log Number 542235127

## Service of Process Transmittal Summary

**TO:**    Michael Johnson, Legal Assistant
The Hartford
1 Hartford Plz, HO-1-09
Hartford, CT 06155-0001

**RE:**    **Process Served in Connecticut**

**FOR:**    Sentinel Insurance Company, Ltd.  (Domestic State: CT)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Preferred Mutual Insurance Company vs. Sentinel Insurance Company, Ltd. |
| **DOCUMENT(S) SERVED:** | Attachment(s), Summons, Declaratory Judgment Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Hudson County: Superior Court - Law Division, NJ<br>Case # HUDDJ286222 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, East Hartford, CT |
| **DATE/METHOD OF SERVICE:** | By Process Server on 09/01/2022 at 12:15 |
| **JURISDICTION SERVED:** | Connecticut |
| **APPEARANCE OR ANSWER DUE:** | Within 35 days from the date of receipt, not counting the date of receipt |
| **ATTORNEY(S)/SENDER(S):** | Monique D. Moreira<br>Moreira & Moreira, P.C.<br>712 Kearny Avenue<br>Kearny, NJ 07032<br>201-991-9001 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/01/2022, Expected Purge Date: 09/06/2022<br><br>Image SOP<br><br>Email Notification,  Michael Johnson  MICHAEL.JOHNSON@THEHARTFORD.COM<br><br>Email Notification,  Fiona Rosenberg  Fiona.Rosenberg@thehartford.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>67 Burnside Ave<br>East Hartford, CT 06108<br>800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the

**CT Corporation**
**Service of Process Notification**
09/01/2022
CT Log Number 542235127

included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

---

## BUSINESS DETAILS

---

# SENTINEL INSURANCE COMPANY, LTD.   ACTIVE

No information provided

---

## Business Details   

---

### General Information   —

Business Name
SENTINEL INSURANCE COMPANY, LTD.

Business status
ACTIVE

Citizenship/place of formation
Domestic/Connecticut

Business address
No information provided

Annual report due

NAICS code

Business ALEI
0621786

Date formed
7/6/1999

 Chat with us

Business type
Insurance Stock

Mailing address

Last report filed

**BUSINESS DETAILS**
NAICS sub code

## Principal Details    —

None

## Agent details    —

Agent name
C T CORPORATION SYSTEM

Agent Business address
67 BURNSIDE AVE, EAST HARTFORD, CT, 06108-3408, United States

# Filing History    ^

📄 **Name Reservation - Reservation of Name**
**0001979131**
Filing date: 5/24/1999

Volume Type
B

Volume
267

Start page
1556

Pages

| | |
|---|---|
| Attorney(s): | **Monique D. Moreira, Esq.** |
| Attorney Id No.: | **904782012** |
| Law Firm: | **Moreira & Moreira, P.C.** |
| Address: | **712 Kearny Avenue** |
| | **Kearny, NJ 07032** |
| | |
| Telephone No.: | **(201)    991-9001** |
| Fax No.: | **(201)    991-9122** |
| E-mail: | **moreiralaw@moreiralawpc.com** |
| Attorney(s) for Plaintiff(s): | **Preferred Mutual Insurance Company** |

| | |
|---|---|
| **Preferred Mutual Insurance Company** | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff(s) | **LAW** DIVISION |
| vs. | **HUDSON** COUNTY |
| **Sentinel Insurance Company, Ltd. d/b/a "Hartford"; JOHN DOES 1-10 (individual fictitious parties whose identities are unknown at this time); and ABC CORPORATIONS 1-10 (individual fictitious corporations whose identities are unknown at this time)** | DOCKET NO.: **HUD-DJ-2862-22** |
| Defendant(s) | CIVIL ACTION |
| | **𝕾𝖚𝖒𝖒𝖔𝖓𝖘** |

**FROM THE STATE OF NEW JERSEY**

To the Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is provided and available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $ **250.00**_____ and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

31 - Summons - Law or Chancery Divisions
Superior Court. Appendix XII-A. CN 10153.
Rev. 11/14    P11/18

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com    800.222.0510    Page 1

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey statewide hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is provided and available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

Date: **August 31, 2022**                                        **Michelle Smith**

                                                                          *Clerk of the Superior Court*

Name of Defendant to be Served: **Sentinel Insurance Company, Ltd. d/b/a "Hartford**

Address of Defendant to be Served: **c/o CT Corporation System,**
                                                   **67 Burnside Avenue**
                                                   **Hartford, CT 06108**

31 - Summons - Law or Chancery Divisions
Superior Court. Appendix XII-A. CN 10153.
Rev. 11/14    P11/18

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com    800.222.0510    Page 2

MOREIRA & MOREIRA, P.C.
Monique D. Moreira, Esq.—904782012
712 Kearny Avenue
Kearny, New Jersey 07032
(201) 991-9001
Attorney(s) for Plaintiffs: Preferred Mutual Insurance Company

| | |
|---|---|
| Preferred Mutual Insurance Company | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION: HUDSON COUNTY |
| Plaintiff(s), | : DOCKET NO.:  HUD-DJ- |
| | : |
| vs. | :           CIVIL ACTION |
| | : |
| Sentinel Insurance Company, Ltd. | : DECLARATORY JUDGMENT COMPLAINT |
| d/b/a "Hartford"; JOHN DOES 1-10 | : |
| (individual fictitious parties | : |
| whose identities are unknown at | : |
| this time); and ABC CORPORATIONS 1- | : |
| 10 (individual fictitious | : |
| corporations whose identities are | : |
| unknown at this time), | : |
| | : |
| Defendant(s) | : |

Plaintiff, Preferred Mutual Insurance Company (hereinafter "Preferred"), by and through its attorneys, Moreira & Moreira, P.C., as and for a Complaint for Declaratory Judgment against Defendants Sentinel Insurance Company, Ltd. d/b/a "Hartford", John Does 1-10, and ABC Corporations 1-10 (collectively, the "Defendants") alleges as follows:

## NATURE OF THE ACTION

1.  This is an insurance coverage action for declaratory relief pursuant to the Uniform Declaratory Judgment Act of New Jersey, N.J.S.A. 2A:16-50, et. seq., to determine the respective rights and duties of the parties, including without limitation the rights and obligations, if any, of Defendants under a policy of business owner's insurance issued by Hartford to Huma Beauty Salon, LLC (the "Harford Policy") in connection with an underlying claim.

2.    Preferred, insurer for Vrajsan Inc., Green Street Wine & Liquor, LLC, and 1183 Green Street, LLC, in the Underlying Action sought contribution under the Hartford Policy for costs associated with claims, demands, and a multi-count lawsuit which recently settled for $150,000.00 bearing Docket No. MID-L-294-18 ("Underlying Action"). Vrajsan Inc., Green Street Wine & Liquor, LLC, and 1183 Green Street, LLC is and was at the time an additional insured under the Hartford Policy.

3.    The present dispute between Preferred and the Defendants relates to the existence, scope, and extent of coverage, if any, available to Preferred with respect to the Underlying Action under the Hartford Policy.

4.    Preferred seeks a determination that Defendants were obligated to defend and pay damages, including attorney's fees in the Underlying Action, by virtue of the status of Vrajsan Inc., Green Street Wine & Liquor, LLC, and 1183 Green Street, LLC as an additional insured under the Hartford Policy.

## JURISDICTION AND VENUE

5.    There exists an actual and justicable controversy between and among the parties concerning whether and to what extent insurance coverage is available to Preferred with respect to the Underlying Action under the Harford Policy.

6.    This Court has jurisdiction over this action, pursuant to the Uniform Declaratory Judgment Act of New Jersey, N.J.S.A. 2A:16-50,

et seq., which provides for this Court's jurisdiction over declaratory judgment proceedings, pursuant to N.J. Ct. R. 4:3-1(a)(4), which provides that such proceedings shall be brought in the Law Division, and pursuant to all other applicable provisions of the New Jersey Court Rules and law.

7. Venue is properly placed in Hudson County Superior Court pursuant to N.J. Ct. R. 4:3-2 because one or more of the parties reside, maintain registered offices and/or conduct business in Hudson County, New Jersey.

## THE PARTIES

8. Plaintiff, Preferred Mutual Insurance Company, is a corporation that does conduct business in the State of New Jersey, and specifically within Hudson County.

9. Defendant, Sentinel Insurance Company, Ltd. d/b/a "Hartford", is a corporation that does conduct business in the State of New Jersey, and specifically within Hudson County.

10. John Does 1-10 are additional presently unknown fictitious parties who have or may claim rights to insurance coverage under the Hartford Policy, and ABC Corporations 1-10 are additional presently unknown fictional insurance companies which issued or may have issued other insurance policies under which coverage is available for the Underlying Action.

## FACTUAL BACKGROUND

A. The Underlying Action

11.  Plaintiff in the Underlying Action, Rochelle Finkelstein, alleged that on January 17, 2016, she was caused to slip and fall on or about 1188-1192 Green Street, Iselin, New Jersey.

12.  Plaintiff brought suit in Law Division, Hudson County, under Docket No. MID-L-294-18, against the property owners, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC ("Property Owner").  **(See Exhibit "A"—Underlying Action Complaint)**.

13.  A third-party complaint was then filed by the Property Owner against Huma Beauty Salon, LLC ("Huma Beauty") seeking defense and indemnification under the lease between the Property Owner and Huma Beauty.  **(See Exhibit "B"—Answer and third-party complaint & Exhibit "C"—Lease agreement)**.

14.  Huma Beaty Salon, LLC, through counsel in the underlying action, denied the demand for defense and indemnification, and admitted that the Property Owner was an additional insured under the Hartford Policy.  **(See Exhibit "D"—Correspondence from Huma Beauty's counsel)**.

15.  A tender was made to Hartford for coverage an as additional insured.  **(See Exhibit "E"—Tender correspondence)**.

16.  The Underlying Action settled for $150,000.00, with no contribution from the Hartford Policy, on or about August 3, 2022.

     B. Harford Policy

17.  The Hartford Policy states:

          We will pay those sums that the insured becomes legally
          obligated to pay as damages because of "bodily injury",

"property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. **(See Exhibit "F"—Hartford Policy)**.

18. The policy period of the Hartford Policy is from 12:01 a.m. on December 17, 2015 to December 17, 2016. **(See Exhibit "F"—Hartford Policy)**.

19. The Harford Policy provides that Managers and/or Lessors are additional insured for business liability coverage in the policy. **(See Exhibit "F"—Hartford Policy)**.

20. Preferred's insureds, the Property Owners, were the lessors of the property in question in the Underlying Action.

21. Accordingly, the Property Owners, qualified as additional insureds under the Hartford Policy.

22. Further, as set forth by counsel for Huma Beaty in the Underlying Action, the Property Owners were in fact additional insureds, and therefore, there was not breach of contract committed in the Underlying Action as alleged in the Third-Party Complaint. **(See Exhibit "D"—Correspondence from Huma Beauty's counsel)**.

23. Property Owners, through counsel, on July 26, 2022, tendered the Underlying Action to Hartford. **(See Exhibit "E"—Tender correspondence)**.

24. Hartford rejected the tender, citing the lease agreement as a basis for the denial. **(See Exhibit "G"—Hartford correspondence)**.

25.   A review of the policy terms demonstrates that the lease does not provide a basis to deny coverage to the property owner as an additional insured.

26.   As a result of Hartford's denial, Plaintiff was forced to settle the Underlying Action for $150,000.00 without contribution from Hartford despite the Property Owners being additional insureds on the Hartford Policy.

## COURT I

### DECLARATORY JUDGMENT

27.   Plaintiff repeats and incorporates by reference herein the allegations set forth in Paragraphs 1 through 26 as set forth at length herein.

28.   Hartford contracted to defend its insured(s) and pay damages on behalf of its insured(s) for covered bodily injury or property damage actions occurring during the policy period.

29.   The Underlying Actions falls within the coverage afforded by the Hartford Policy.

30.   By refusing to provide the Property Owners a defense, Hartford has breached its duties and obligations to Property Owners and its insurer, plaintiff, Preferred Mutual.

31.   As a direct and proximate result of Hartford's Breach, Plaintiff incurred and will continue to incur damage.

32.   As an "insured" as defined by the Hartford Policy with respect to the underlying claim for bodily injury, the Property Owners were

entitled to a defense, and in the event of an adverse judgment, damages paid on their behalf under the Hartford Policy.

33. To the extent that Harford contends that the Underlying Action falls within a policy exclusion, Hartford bears the burden of proof in that regard.

34. The underlying Complaint, and discovery taken, neither alleges nor prove any facts that would bring the Underling Action within the scope of any exclusion in the Hartford Policy.

35. The terms and conditions of the Hartford Policy provide the Property Owners with coverage for Property Owner's alleged liability to Finkelstein.

**WHEREFORE**, Plaintiffs, demand judgment against Defendant, Hartford, declaring that:

A. Hartford was obligated to defend the Property Owners, and to reimburse its insurer, Plaintiff, Preferred Mutual, for the previously expended attorney's fees and defense costs in the Underlying Action;

B. Hartford was obligated to pay damages in the Underlying Action;

C. Plaintiff is entitled to pre and post judgment interest;

D. Hartford is obligated to pay Plaintiff for all costs and legal fees on the Underlying Action and the present action;

E. Harford is obligated to pay treble damages for bad faith for its failure to contribute its pro rata amount to the resolution of the Underlying Action;

F. Plaintiff is entitled to attorney's fees and costs incurred for the prosecution of this lawsuit pursuant to R. 4:42-9(a)(6); and

G. For such other relief as the Court deems equitable and just.

## COUNT II

### INTERESTED PARTIES

36. Plaintiff repeats and incorporates by reference herein the allegations set forth in Paragraphs 1 through 35 as set forth at length herein.

37. All individuals and/or corporations that may have rights and/or interest in the outcome of this suit and are named =herein pursuant to the terms of N.J.S.A. 2A:16-56.

**WHEREFORE**, Plaintiff, Preferred, demands judgment:

(a)  Declaring the rights and duties of the parties;

(b)  Awarding attorneys' fees and costs of suit; and

(c)  For any other relief the Court deems fair and just.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Monique D. Moreira, Esq., is hereby designated trial counsel for plaintiff.

### CERTIFICATION OF COUNSEL

Pursuant to Rule 4:5-1, the undersigned hereby certifies that at the time of filing this complaint, the matter in controversy is not the

subject of any other action pending in any Court and/or arbitration proceeding. I further certify that I am unaware of any other party who should be joined in this action.

<div align="center">

**CERTIFICATION OF SERVICE**

</div>

I hereby certify that the within Complaint has been filed and served in accordance with the rules of court.

<div align="right">

MOREIRA & MOREIRA, P.C.

</div>

By: _____

MONIQUE D. MOREIRA, ESQ.

Dated: August 29, 2022

A True Copy
Attest:

_____
Process Server
JoAnn Nizlankiewicz

# Exhibit 'A'

LAW OFFICE OF ANDREW S. BLUMER.
4255 Route 9 N., Bldg. 5, Suite D
Freehold, New Jersey 07728
(732) 303-6430
File No. BI-FINK-001
Andrew S. Blumer, Esq.
Attorney ID# 032631994
Attorney for Plaintiff(s)

| | |
|---|---|
| ROCHELLE FINKELSTEIN<br><br>     Plaintiff,<br><br>v.<br><br>VRAJSAN INC., GREEN STREET WINE &<br>LIQUOR LLC, 1183 GREEN STREET LLC,<br>GREEN STREET PLAZA, 1188 GREEN<br>STREET, LLC,  SHREE KOTIYARK<br>REALTY LLC, GOVERNMENT<br>EMPLOYEES INSURANCE COMPANY,<br>JOHN/JANE DOES, including snow removal<br>and ice control vendors & property<br>management entities, (1-10); ABC<br>CORPORATIONS, including snow removal<br>and ice control vendors & property<br>management entities, (1-10); DEF<br>PARTNERSHIPS, including snow removal<br>and ice control vendors & property<br>management entities,  (1-10); GHI LIMITED<br>LIABILITY COMPANIES, including snow<br>removal and ice control vendors & property<br>management entities, (1-10);<br><br>     Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br><br>DOCKET NO.:<br><br>       **<u>CIVIL ACTION</u>**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Rochelle Finkelstein, residing at 12 Woodshore East in the City of Cliffwood

Beach, County of Monmouth, State of New Jersey by way of Complaint against the Defendants

says:

### FIRST COUNT

1.     On or about January 17, 2016, at approximately 8:30 p.m. Defendants, VRAJSAN

INC., GREEN STREET WINE & LIQUOR LLC, 1183 GREEN STREET LLC, 1188 GREEN STREET, LLC, SHREE KOTIYARK REALTY LLC, and GREEN STREET PLAZA, each individually or in combination collectively, managed, owned, operated, leased, controlled, used and/or maintained the premises, a commercial space/premises/store/strip mall and its included common areas therein (including but not limited to parking lots and sidewalks), with a physical location commonly known as "GREEN STREET PLAZA" located at or about 1188-1192 Green Street, in the City of Iselin, County of Middlesex, and State of New Jersey.

2.     At the time and place aforesaid, DEFENDANTS, each of them, managed, owned, operated, leased, controlled, used and/or maintained the premises, including common areas such as walkways, sidewalks, paths of ingress and egress, parking lots and/or driveways of said premises and, further, installed, repaired or maintained the exterior walkways and lots and, further, performed or were responsible for the proper performance of the removal and/or maintenance of snow and also the control and treatment of ice on/in the walkways, sidewalks, parking lots and other means of ingress and egress at the aforementioned location including but not limited to the aforesaid common areas herein and, further, held it open to the public, to the commercial tenants and its employees therein and to other such persons, including persons such as Plaintiff at the time and place then and there existing.

3.     On or about January 17, 2016, the Plaintiff, Rochelle Finkelstein, was lawfully on the Defendants' premises.

4.     At the aforesaid time and place DEFENDANTS, each of them, owed a duty to those lawfully on the premises/property, including Plaintiff, to use reasonable care in the management, ownership, control, operation, use and/or maintenance of the premises so that the premises would be reasonably safe and free of any and all dangerous conditions capable of causing injury to those persons lawfully on the premises. This duty included a duty to conduct reasonable inspections of

said premises to make sure no hazardous conditions existed on the premises.

5.      At the time and place aforesaid, DEFENDANTS, through its/their respective agents, servants and/or employees, breached the duty of care owed to Plaintiff, who was legally on the premises/property, since Plaintiff was caused to slip and fall due to (a) dangerous and hazardous condition(s) that existed on the premises/property; to wit: ice within the premise's common area(s) that caused her to slip and fall, which led to Plaintiff severely injuring herself. DEFENDANTS, through its/their respective agents, servants and/or employees breached the duty of care owed the Plaintiff, by, *inter alia*, negligently and carelessly allowing (a) dangerous condition(s) to exist. Specifically, said Defendants failed to keep the premises in a safe condition, caused, created, and/or allowed (a) dangerous condition(s) to exist, failed to conduct a reasonable inspection of the premises and were/was otherwise negligent in the management, ownership, control, operation, use, and/or maintenance of the premises and, further, failed to warn of the existence of the dangerous condition(s) then and there existing at the time of this accident.

6.      It was reasonably foreseeable that the aforementioned hazardous and dangerous condition(s) that caused Plaintiff to slip and fall would cause injury to persons lawfully on the premises/property including Plaintiff, and DEFENDANTS, through its/their respective agents, servants and/or employees knew or should have known of the existence of the hazardous condition(s) since reasonable inspection(s) would have revealed its/their existence.

7.      As a direct and proximate result of the aforesaid conduct, including negligence, of said DEFENDANTS, Plaintiff was caused to slip and fall and sustain severe and permanent injuries, undergo great pain and suffering, was forced to seek medical aid and attention, was prevented from attending to her usual activities and has been left with injuries that will, in the future, cause said Plaintiff to suffer pain, require medical treatment and will similarly incapacitate Plaintiff.

WHEREFORE, the Plaintiff demands judgment against Defendants, VRAJSAN INC.,

GREEN STREET WINE & LIQUOR LLC, 1183 GREEN STREET LLC, 1188 GREEN STREET, LLC, SHREE KOTIYARK REALTY LLC, and GREEN STREET PLAZA, and Co-Defendants, John/Jane Does, including snow removal and ice control vendors & property management entities (1-10), ABC Corporations, including snow removal and ice control vendors & property management entities, (1-10), DEF Partnerships, including snow removal and ice control vendors & property management entities, (1-10), GHI Limited Liability Companies, including snow removal and ice control vendors & property management entities, (1-10), individually, jointly, concurrently, and/or severally for damages together with interest, costs of suit, attorney's fees and such other relief as the Court may deem just and equitable.

## SECOND COUNT

1.    Plaintiff repeats and realleges each and every allegation contained within the First Count of the Complaint and incorporates the same herein as if set forth at length.

2.    At all times herein relevant, the Defendant, GOVERNMENT EMPLOYEES INSURANCE COMPANY, was an entity authorized by the State of New Jersey to write policies of automobile insurance that was and is conducting business in Middlesex County, New Jersey.

3.    At the time and place aforesaid, Plaintiff sustained personal injuries while an operator of, occupant of, pedestrian struck by, or individual entering, alighting from or struck by an object propelled from a private passenger automobile.

4.    At the time and place aforesaid, Plaintiff, was a named insured or resident relative of the named insured, or otherwise entitled to coverage as an operator, occupant, pedestrian struck by or individual entering, alighting from or struck by an object propelled form the automobile insured by Defendant.

5.      Plaintiff is entitled to receive personal injury protection (PIP) medical expense, essential services and income continuation and other benefits including uninsured motorist (UM), underinsured motorist (UIM) and medical payment coverage under the Defendant's insurance policy.

6.      Following her accident, the Plaintiff(s) applied for PIP benefits from the Defendant by submitting a timely application for personal injury protection benefits as well as copies of the medical bills incurred for treatment of injuries sustained in the accident and/or plaintiff(s) submitted claims for UM, UIM and/or medical payment coverage.

7.      The Defendant has wrongfully failed and refused to make prompt payment of Plaintiff's PIP, UM, UIM and/or medical payment benefits, in violation of New Jersey No Fault Law and in breach of the Defendant's policy of insurance with the Plaintiffs.

8.      The Defendant's failure to properly compensate plaintiff for the requested UM/UIM benefits constitutes bad faith and Plaintiff seeks punitive damages in this regard in accordance with Taddei v. State Farm Indemnity Company 401 N.J. Super. 449, 951 A.2d 1041 (App. Div. 2008).

9.      As a result of the Defendant's actions herein set forth the Plaintiff(s) has/have suffered damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant, GOVERNMENT EMPLOYEES INSURANCE COMPANY, for damages including payment of all medical bills, statutory penalties including interest and counsel fees, and any other such relief as this Court may deem fair and proper.

## THIRD COUNT

1.      Plaintiff repeats and realleges each and every allegation contained within the First and Second Counts of the Complaint and incorporates the same herein as if set forth at length.

2.      Defendants John/Jane Does, including snow removal and ice control vendors &

property management entities, (1-10), ABC Corporations, including snow removal and ice control vendors & property management entities, (1-10), DEF Partnerships, including snow removal and ice control vendors & property management entities, (1-10), GHI Limited Liability Companies, including snow removal and ice control vendors & property management entities, (1-10), are all named fictitiously due to the Plaintiffs' lack of knowledge and belief as to the true identities of said Defendants. At such time as the Plaintiff learns the true identities of said Defendants, this Complaint will be amended to reflect it, noting that all pre-suit informational demands by Plaintiffs, including for the names of any and all snow removal and ice control vendors, property management entities and any involved entities relative to the subject accident, have gone unanswered and otherwise essentially ignored.

3.    At the time and place aforesaid, Defendant(s) John/Jane Does, including snow removal and ice control vendors & property management entities, (1-10), ABC Corporations, including snow removal and ice control vendors & property management entities, (1-10), DEF Partnerships, including snow removal and ice control vendors & property management entities, (1-10), GHI Limited Liability Companies, including snow removal and ice control vendors & property management entities, (1-10), were individuals and/or entities who was/were the managing agent(s) and/or manager(s) of property for or on behalf of a/the named Defendant(s), owned, operated, leased, controlled, repaired, constructed, inspected, installed, repaired or maintained pavers, walkways, driveways, sidewalks, parking lots and other means of ingress and egress and/or maintained the premises, a commercial development/complex, including further unknown companies/entities/persons that performed or were responsible for the proper performance of the removal and/or maintenance of snow and ice from the walkways, parking lots, and other means of ingress and egress at the aforementioned location and/or were entities who provided services at or made deliveries to the premises and/or contributed in some way to the existence of the dangerous

conditions.

4.    At the time and place aforesaid, said Defendant(s), each of them, owed a duty to those lawfully on the premises to use reasonable care in the management, ownership, operation, use, maintenance, construction, inspection, and/or control of the premises to keep the premises reasonably safe for invitees (and others), including persons such as the Plaintiff, by keeping said premises free of dangerous and hazardous conditions capable of causing injury to those lawfully on the premises.

5.    At the time and place aforesaid, Defendants, through its/their agents, servants, and/or employees breached the duty of care owed to Plaintiff for the reasons aforesaid in prior Counts of this Complaint and incorporated herein by reference. Further, Defendants, through its/their agents, servants, and/or employees breached the duty of care owed the Plaintiff, by negligently and carelessly allowing (a) dangerous condition(s) to exist. Specifically, said Defendants failed to keep the premises in a safe condition, caused, created and/or allowed (a) dangerous condition(s) to exist, failed to conduct a reasonable inspection(s) of the premises, and were otherwise negligent in the management, ownership, control, operation, use, and/or maintenance of the premises and, further, also failed to warn of the existence of the dangerous condition(s) then and there existing at the time of this accident.

6.    It was reasonably foreseeable that the aforementioned hazardous and dangerous condition(s) that caused Plaintiff to slip and fall would cause injury to persons lawfully on the premises/property including Plaintiff, and DEFENDANTS, through its respective agents, servants and/or employees knew or should have known of the existence of the hazardous condition(s) since reasonable inspection(s) would have revealed its/their existence.

7.    As a direct and proximate result of the aforesaid conduct, including negligence, of said DEFENDANTS, Plaintiff, was caused to slip and fall and sustain severe and permanent injuries,

undergo great pain and suffering, was forced to seek medical aid and attention, was prevented from attending to her usual activities and has been left with injuries that will, in the future, cause said Plaintiff to suffer pain, require medical treatment and will similarly incapacitate Plaintiff.

WHEREFORE, the Plaintiff demands judgment against Defendants, VRAJSAN INC., GREEN STREET WINE & LIQUOR LLC, 1183 GREEN STREET LLC, 1188 GREEN STREET, LLC, SHREE KOTIYARK REALTY LLC, and GREEN STREET PLAZA, and Co-Defendants, John/Jane Does, including snow removal and ice control vendors & property management entities (1-10), ABC Corporations, including snow removal and ice control vendors & property management entities, (1-10), DEF Partnerships, including snow removal and ice control vendors & property management entities, (1-10), GHI Limited Liability Companies, including snow removal and ice control vendors & property management entities, (1-10), individually, jointly, concurrently, and/or severally for damages together with interest, costs of suit, attorney's fees and such other relief as the Court may deem just and equitable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Court Rules, Andrew S. Blumer, Esq. is hereby designated as trial counsel in this matter.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable in this case.

## CERTIFICATION OF PENDING ACTION

I hereby certify that to the best of my knowledge the above-captioned matter is not the subject of any other pending action in any court or of a pending arbitration proceeding. I hereby certify that no other action or arbitration is being contemplated by the Plaintiff(s).

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

LAW OFFICE OF ANDREW S. BLUMER, LLC
Attorneys for Plaintiff

By: _____
Andrew S. Blumer, Esq.

DATED: January 16, 2018

A True Copy
Attest:
Process Server
JoAnn Nizianklewicz

# Civil Case Information Statement

**Case Details: MIDDLESEX | Civil Part Docket# L-000294-18**

Case Caption: FINKELSTEIN ROCHELLE  VS VRAJSAN INC.

Case Initiation Date: 01/16/2018

Attorney Name: ANDREW S BLUMER

Firm Name: ANDREW S. BLUMER

Address: BLDG 5, STE D 4255 RTE 9N

FREEHOLD NJ 07728

Phone:

Name of Party: PLAINTIFF : Finkelstein, Rochelle

Name of Defendant's Primary Insurance Company (if known): Unknown

Case Type: PERSONAL INJURY

Document Type: Complaint with Jury Demand

Jury Demand: YES - 6 JURORS

Hurricane Sandy related? NO

Is this a professional malpractice case?  NO

Related cases pending: NO

If yes, list docket numbers:

Do you anticipate adding any parties (arising out of same transaction or occurrence)? NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

Do parties have a current, past, or recurrent relationship? NO

If yes, is that relationship:

Does the statute governing this case provide for payment of fees by the losing party? NO

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:

Do you or your client need any disability accommodations? NO
    If yes, please identify the requested accommodation:

Will an interpreter be needed? NO
    If yes, for what language:

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

01/16/2018
Dated

/s/ ANDREW S BLUMER
Signed

A True Copy
Attest
Process Server
JoAnn Nizianklewicz

Exhibit 'B'

MOREIRA & MOREIRA, P.C.
Monique D. Moreira, Esq.—904782012
712 Kearny Avenue
Kearny, New Jersey 07032
(201) 991-9001
Attorney(s) for Defendants/Third Party Plaintiffs: Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC

| | |
|---|---|
| ROCHELLE FINKELSTEIN | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION: MIDDLESEX COUNTY |
| Plaintiff, | : DOCKET NO.: MID-L-294-18 |
| | : |
| vs. | : CIVIL ACTION |
| | : |
| VRAJSAN INC.; GREEN STREET | : ANSWER, AFFIRMATIVE DEFENSES, |
| WINE & LIQUOR LLC; 1183 GREEN | : THIRD PARTY COMPLAINT, |
| STREET LLC; 1188 GREEN STREET, | : CROSSCLAIM, JURY DEMAND AND |
| LLC; SHREE KOTIYARK REALTY | : DESIGNATION OF TRIAL COUNSEL |
| LLC;GOVERNMENT EMPLOYEES | : |
| INSURANCE COMPANY, | : |
| JOHN/JANE DOES, including snow | : |
| removal and ice control vendors & | : |
| property management entities, (1-10); | : |
| ABC CORPORATIONS, including snow | : |
| removal and ice control vendors & | : |
| property management entities, (1-10); | : |
| DEF PARTNERSHIPS, including snow | : |
| removal, and ice vendors & property | : |
| management entities, (1-01) GHI | : |
| LIMITED LIABILITY COMPANIES, | : |
| including snow removal and ice control | : |
| vendors & property management | : |
| entities, (1-10), | : |
| | : |
| Defendant(s) | : |
| | : |
| VRAJSAN INC.; GREEN STREET | : |
| WINE & LIQUOR, LLC; AND 1183 | : |
| GREEN STREET, LLC | : |
| | : |
| Third party plaintiff(s), | : |
| | : |
| vs. | : |
| | : |
| HUMA BEAUTY SALON, LLC d/b/a | : |
| GREEN STREET HAIR SALON | : |
| | : |
| Third Party Defendant(s) | : |

Defendants, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, with a mailing address of 1183 Green Street, Iselin, NJ 08830, by way of Answer to the Complaint say as follows:

## FIRST COUNT

1.  Defendants deny the allegations contained in paragraph one of the First Count of plaintiff's Complaint.

2.  Defendants deny the allegations contained in paragraph two of the First Count of plaintiff's Complaint.

3.  Defendants deny the allegations contained in paragraph three of the First Count of plaintiff's Complaint.

4.  Defendants deny the allegations contained in paragraph four of the First Count of plaintiff's Complaint.

5.  Defendants deny the allegations contained in paragraph five of the First Count of plaintiff's Complaint.

6.  Defendants deny the allegations contained in paragraph six of the First Count of plaintiff's Complaint.

7.  Defendants deny the allegations contained in paragraph seven of the First Count of plaintiff's Complaint.

**WHEREFORE,** Defendants, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, demand judgment against plaintiff for dismissal of lawsuit, attorney fees, costs, and any other relief, which the Court deems appropriate and just.

## SECOND COUNT

Defendants repeat each and every allegation contained in the answer to the First Count as though fully set forth at length herein.

1.   Defendants deny the allegations contained in paragraph one of the Second Count of plaintiff's Complaint.

2.   Defendants deny the allegations contained in paragraph two of the Second Count of plaintiff's Complaint.

3.   Defendants deny the allegations contained in paragraph three of the Second Count of plaintiff's Complaint.

4.   Defendants deny the allegations contained in paragraph four of the Second Count of plaintiff's Complaint.

5.   Defendants deny the allegations contained in paragraph five of the Second Count of plaintiff's Complaint.

6.   Defendants deny the allegations contained in paragraph six of the Second Count of plaintiff's Complaint.

7.   Defendants deny the allegations contained in paragraph seven of the Second Count of plaintiff's Complaint.

8.   Defendants deny the allegations contained in paragraph eight of the Second Count of plaintiff's Complaint.

9.   Defendants deny the allegations contained in paragraph nine of the Second Count of plaintiff's Complaint.

**WHEREFORE,** defendants, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, demand judgment against plaintiff for dismissal of lawsuit, attorney fees, costs, and any other relief, which the Court deems appropriate and just.

## THIRD COUNT

Defendants repeat each and every allegation contained in the answer to the First and Second Counts as though fully set forth at length herein.

1.  Defendants deny the allegations contained in paragraph twelve of the Third Count of plaintiff's Complaint.

2.  Defendants deny the allegations contained in paragraph thirteen of the Third Count of plaintiff's Complaint.

3.  Defendants deny the allegations contained in paragraph fourteen of the Third Count of plaintiff's Complaint.

4.  Defendants deny the allegations contained in paragraph four of the Third Count of plaintiff's Complaint.

5.  Defendants deny the allegations contained in paragraph five of the Third Count of plaintiff's Complaint.

6.  Defendants deny the allegations contained in paragraph six of the Third Count of plaintiff's Complaint.

7.  Defendants deny the allegations contained in paragraph seven of the Third Count of plaintiff's Complaint.

**WHEREFORE,** defendants, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, demand judgment against plaintiff for dismissal of lawsuit, attorney fees, costs, and any other relief, which the Court deems appropriate and just.

## AFFIRMATIVE DEFENSES

### FIRST SEPARATE DEFENSE

Any loss, injury or damage sustained by the plaintiff is governed by the Rules of Comparative Negligence and any judgment entered should be reduced pro-rata accordingly or defeated in its entirety.

### SECOND SEPARATE DEFENSE

The Complaint of the plaintiff fails to state a claim upon which relief can be granted.

### THIRD SEPARATE DEFENSE

There is a lack of jurisdiction over the person of these defendants by reason of insufficiency of process and insufficiency of service of process. Therefore, these defendants reserve the right to move for a dismissal.

### FOURTH SEPARATE DEFENSE

Plaintiff is guilty of negligence proximately contributed to the occurrence of the accident and damages alleged in the Complaint and thus, is subject to the provisions of N.J.S.A. 2A:15-5.1, et seq.

### FIFTH SEPARATE DEFENSE

Any loss, injury or damage sustained by the plaintiff was due her own negligence.

### SIXTH SEPARATE DEFENSE

Any loss, injury of damage sustained by the plaintiff was due to her own contributory negligence.

### SEVENTH SEPARATE DEFENSE

These defendants deny negligence.

## EIGHTH SEPARATE DEFENSE

The Complaint filed herein fails to state a cause of action upon which relief can be granted.

## NINTH SEPARATE DEFENSE

The accident, injuries and damages which are the subject of plaintiff's Complaint resulted from the acts and conduct of a third person or persons over whom these defendants exercised no control and for whose conduct these defendants were not responsible.

## TENTH SEPARATE DEFENSE

These defendants violated no duty owing to the plaintiff at the time and placed alleged in the Complaint.

## ELEVENTH SEPARATE DEFENSE

These defendants were guilty of no act of negligence nor breach of obligation which was the proximate cause of the happening of the accident, and therefore, the Complaint fails to set forth a cause of action and defendants reserve the right to dismiss the Complaint at or before the time of trial.

## TWELFTH SEPARATE DEFENSE

The plaintiff's wrongful conduct bars their claim for relief.

## THIRTEENTH SEPARATE DEFENSE

The incident, which forms the basis for this litigation, which allegedly caused injuries and damage to the plaintiff was proximately caused or contributed to by the fault of third persons not parties to this litigation. The responsibility of the defendants filing this answer and the right of the plaintiff to recover in this litigation can only be determined after the percentage of responsibility of all parties to the incident are determined, whether or not parties to this litigation. Accordingly,

these defendants seek an adjudication of the percentage of fault of the plaintiff and each and every other person whose fault contributed to the incident.

### FOURTEENTH SEPARATE DEFENSE

The plaintiff voluntarily assumed a known risk and the conduct in the assumption of this risk was the proximate cause of the happening of the accident, and plaintiff is, therefore, barred from recovery.

### FIFTEENTH SEPARATE DEFENSE

The Complaint is barred by reason of the Statute of Limitations or other applicable rules, statutes or regulations controlling, or requiring the initiation of a suit within a certain period of time following the accrual of the cause of action.

### SIXTEENTH SEPARATE DEFENSE

The answering defendants had no notice of the alleged condition.

### CROSSCLAIM

The answering defendants, while denying any liability on their part, state that the co-defendants are joint tortfeasors under the Joint Tort-Feasors Act, N.J.S.A. 2A:53A-1, et seq., and the New Jersey Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., for any judgment that may be entered in the cause on behalf of the plaintiff.

**WHEREFORE**, defendants, Vrajsan Inc.; Green Street Wine & Liquor, LLC;  and 1183 Green Street, LLC, demand judgment against co-defendants for contribution, attorney fees, costs, and any other relief, which the Court deems appropriate and just.

### FIRST COUNT

While denying liability of the defendants for the damages alleged, if judgment is recovered by the plaintiff against these defendants, it is hereby asserted that their negligence, if

any, was not morally culpable, but was merely constructive, technical, imputed or vicarious, and that plaintiff's damages arose through the direct and primary negligence of the co-defendants. The answering defendants hereby demand indemnification from co-defendant, for all damages asserted by the plaintiff.

**WHEREFORE**, defendants, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, demand judgment against co-defendants for contribution, attorney fees, costs, and any other relief, which the Court deems appropriate and just.

## THIRD PARTY COMPLAINT

## FIRST COUNT

Defendants/Third Party Plaintiffs, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, by way of a Third Party Complaint state against Huma Beauty Salon:

1.   The plaintiff has filed a complaint for damages allegedly caused by the negligence of Vrajsan Inc., Green Street Wine & Liquor, LLC and 1183 Green Street LLC.

2.   Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, the answering defendant/third party plaintiff asserts that Huma Beauty Salon is responsible for the damages suffered by the plaintiff as those are alleged to have resulted from their negligence.

3.   Huma Beauty Salon owes Vrajsan Inc., Green Street Wine & Liquor, LLC and 1183 Green Street LLC indemnification should the plaintiff prove successful.

**WHEREFORE**, Vrajsan Inc., Green Street Wine & Liquor, LLC and 1183 Green Street LLC demand judgment for full indemnification under the common law together with legal fees, contribution, costs of suit and any other remedy the court deems appropriate and just.

## COUNT II- CONTRACTUAL INDEMNIFICATION

Defendants/Third Party Plaintiffs, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, restate and allege each of the foregoing paragraphs as if the same were set forth fully and at length herein.

1.    Vrajsan Inc., Green Street Wine & Liquor, LLC and 1183 Green Street LLC and Huma Beauty Salon entered into a certain lease which was in full force and effect at the time of the loss.

2.    Under such lease, Huma Beauty Salon promised to insure, indemnify and hold harmless.

3.    Despite the provision of the lease between Vrajsan Inc., Green Street Wine & Liquor, LLC and 1183 Green Street LLC and Huma Beauty Salon, indemnification and defense has not been provided to Vrajsan Inc., Green Street Wine & Liquor, LLC and 1183 Green Street LLC.

**WHEREFORE**, Defendants/Third Party Plaintiffs, Vrajsan Inc., Green Street Wine & Liquor, LLC and 1183 Green Street LLC demand full contractual indemnification, contribution, legal fees, costs of suit and any other remedy the court deems appropriate and just.

## COUNT III- BREACH OF CONTRACT

Defendants/Third Party Plaintiffs, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, restate and allege each of the foregoing paragraphs as if the same were set forth fully and at length herein.

1.    Vrajsan Inc., Green Street Wine & Liquor, LLC and 1183 Green Street LLC and Huma Beauty Salon entered into a certain lease which was in full force and effect at the time of the loss.

2. Under such lease, Huma Beauty Salon promised to insure the lessor for any and all claims arising out of the lessees activities and otherwise hold the lessor harmless.

3. Huma Beauty Salon was to procure a policy with limits of at least $1,000,000.00 and name Vrajsan Inc., Green Street Wine & Liquor, LLC and 1183 Green Street LLC as an additional insured.

4. Huma Beauty Salon failed to deliver such policy and has otherwise refused to defend, indemnify and hold harmless.

**WHEREFORE**, Defendants/Third Party Plaintiffs, Vrajsan Inc., Green Street Wine & Liquor, LLC and 1183 Green Street LLC demand full contractual indemnification, legal fees, costs of suit and any other remedy the court deems appropriate and just.

### REQUEST FOR ALLOCATION PURSUANT TO RULE 4:7-5(c)

Pursuant to R. 4:7-5(c) and **Young v. Latta**, 124 N.J. 584 (1991), these defendants state that if any co-defendant settles this matter prior to the conclusion of the trial, the liability of any settling co-defendant shall remain an issue and these defendants shall seek an allocation of percentage of negligence by the finder of fact against such settling co-defendant and/or a credit in favor of these defendants consistent with such allocation.

### ANSWER TO ALL CROSSCLAIMS/COUNTERCLAIMS

Defendants, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, deny the allegations of any and all Crossclaims and/or Counterclaims already filed or to be filed by any party in this action, as they may relate in any respect to these Defendants.

**WHEREFORE**, Defendants, Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC, demand judgment dismissing the Crossclaims and Counterclaims, with costs and counsel fees and any other relief, which the Court deems appropriate and just.

## CERTIFICATION OF NO OTHER ACTION

This matter is not the subject of any other action pending in court or any other pending arbitration proceeding is contemplated. I further certify that there is no other party who should be joined in this action.

## CERTIFICATION OF SERVICE

An original and one (1) copy of this Answer has been filed with the Clerk of the Superior Court in the county in which this action is venued. A copy of these papers has been served on all those persons designated by R. 1:5-1(a) for such. Service was made as permitted by R. 1:5-2, R. 4:6-1(a) and R. 4:6-1(d), and within the time period allowed under R. 4:6.

## JURY DEMAND

The defendants hereby demand a trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Monique D. Moreira, Esq., attorney for defendants is hereby designated as trial counsel.

MOREIRA & MOREIRA, P.C.

By: _____

Monique D. Moreira, Esq. Attorney(s) for
Defendants/Third Party Plaintiff, Vrajsan Inc.,
Green Street Wine & Liquor, LLC and 1183 Green
Street LLC

Dated: March 6, 2018

A True Copy
Attest:

Process Server
JoAnn Nizlankiewicz

# Civil Case Information Statement

**Case Details: MIDDLESEX | Civil Part Docket# L-000294-18**

Case Caption: FINKELSTEIN ROCHELLE  VS VRAJSAN INC.

Case Initiation Date: 01/16/2018

Attorney Name: MONIQUE DANIELLE MOREIRA

Firm Name: MOREIRA & MOREIRA, PC

Address: 712 KEARNY AVE
KEARNY NJ 07032

Phone:

Name of Party: null : VRAJSAN, INC.

Name of Defendant's Primary Insurance Company
(if known): PREFERRED MUTUAL INSCO

Case Type: PERSONAL INJURY

Document Type: Answer

Jury Demand: YES - 6 JURORS

Hurricane Sandy related? NO

Is this a professional malpractice case?  NO

Related cases pending: NO

If yes, list docket numbers:

Do you anticipate adding any parties (arising out of same transaction or occurrence)? YES

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

03/07/2018                                            /s/ MONIQUE DANIELLE MOREIRA
Dated                                                 Signed

A True Copy
Test:
Process Server
Ann Niziankiewicz

Exhibit 'C'

*Lease Agreement*

*Between*

*VRAJSAN INC.*
*(The Landlord)*

*HUMA BEAUTY SALON, LLC.*
*47 ASTOR CT*
*SAYREVILLE, NJ 08872*
*(The Tenant)*

*For the subject premises known as*
*1191 Green Street, Iselin, New Jersey 08830*

*Lease Dated: SEPTEMBER, 15TH 2009*

1

# *Lease Agreement*

*This Agreement* is made this 17th day of August 2009 between *VRAJSAN INC.*, with a mailing address of 1183 Green Street, Iselin, NJ 08830, (*hereinafter referred to as the Landlord*) and *HUMA BEAUTY SALON LLC, with a mailing address of 47 Astor Court, Sayreville, NJ 08872 (hereinafter referred to as the Tenant)*. Huma Khan, a principal of the Tenant LLC joins in this Lease as a personal guarantor of all of Tenant's obligations under same.

## *PROPERTY:*

The *Tenant* agrees to rent from the *Landlord* and the *Landlord* agrees to lease to the *Tenant*, the premises known as, 1191 Green Street, Iselin, NJ 07730 (*hereinafter referred to at the Premises*).

## *TERM AND RENT:*

The term of this Lease is for ONE AND HALF (1&1/2) years with 2 options. 1st option for THREE AND HALF (3&1/2) years period and 2nd option for 5 years and commences on September,___,2009 and ends on March ___, 2011 and rent will be $43,800.00 for the First Term of the Lease.

Rent for 1st year will be $2400.00 per Month PLUS CAM charges.

1st year CAM charges are approximately $500.00 per month and final charges will be adjusted at the end of year according to percentage of rental use and will be due within 90 days of next year. 2nd year onwards CAM charges will be adjusted according to 1st year charges. Upon request tenant will be provided with all the bills for CAM charges.

2

IT IS FURTHER provided that if the Tenant is in full compliance with all of the terms of this lease, and is not in default thereof, the Tenant is hereby granted First option for three and half years. With the exception of rent, all of the terms of the lease shall remain the same in each of the option periods. Rent for 1st and 2nd renewal terms is spelled out in the lease. Approximate CAM charge will be determined at that time from the 1st year bills. Tenant is granted 75 days free rent; Rent will start from day number 75 or the day tenant obtains a C. of O. and opens for business, whichever is first. Tenant is responsible for getting certificate of occupancy from township of Woodbridge.

Rent for 2nd year will be $2496.00 PLUS CAM charges.

Rent for 3rd year will be $2596.00 PLUS CAM charges.

Rent for 4th year will be $2700.00 PLUS CAM charges.

Rent for 5th year will be $2808.00 PLUS CAM charges.

In order to exercise these options, the Tenant **MUST** notify the landlord in writing by certified or registered mail or by in person delivery with receipt of its intention to renew the lease no later than six (6) months prior to the end of the initial term. Rent for 2nd term should be as follows.

1st year of 2nd term rent will be $2920.00 PLUS CAM charges.

2nd year or 2nd term rent will be $3037.00 PLUS CAM charges.

3rd year of 2nd term rent will be $3158.00 PLUS CAM charges.

4th year of 2nd term rent will be $3285.00 PLUS CAM charges.

5th year of 2nd term rent will be $3406.00 PLUS CAM charges.

In addition to rent, the *Tenant* must pay a late charge of $50.00 for each payment that is more than ten days late, and $100.00 for each payment that is more than 20 days late. All payments shall be made directly to the *Landlord* at the address specified above. See Utilities and sign paragraphs for each additional amount to be added as rent each moth to the unit.

### SECURITY DEPOSIT:

The *Tenant* will give to the *Landlord* a security deposit constituting of two-month's rent. The initial security deposit shall be $4,800.00. The security deposit shall be revised annually to ensure that the deposit always equals the then two (2) month's rent. If *Tenant* fully complies with the terms of this Lease, *Landlord* will return the security deposit within the time period required by law after *Tenant* vacates the property. If *Tenant* does not fully comply with the terms of this Lease Agreement, *Landlord* may use the security deposit to pay amounts owed by the *Tenant*, including damages.

Notwithstanding anything contained in the preceding paragraph, the tenant shall be in material default of the lease if the Landlord does not receive rent within thirty (30) days of the due date.

### USE OF THE PROPERTY:

The *Tenant* may use the premises as a Beauty Salon and must comply with all federal, state and municipal ordinances, statues, requirements and laws, pertaining to the premises, occasioned by or affecting use thereof by *Tenant*. Any municipal licenses or Certificates of Occupancy shall be the sole responsibility of the Tenant. This lease is expressly contingent upon Tenant obtaining all municipal permits and

approval for the operation of the premises as a beauty salon in addition to obtaining any other state, local, or other governmental agency's requirements. *Tenant* shall have forty-five (45) days to satisfy the contingency contained in the preceding sentence.

### UTILITIES, TAXES AND COMMON AREA MAINTENANCE

In addition to the base rent, *Tenant* agrees that they shall be responsible for the timely payment of all utilities including but not limited to electricity, water, sewer, garbage collection, heat and air conditioning, maintenance, lawn maintenance and snow removal as well as its proportionate share of municipal taxes, and landlord's property and liability insurance under CAM charges. All the foregoing shall be added to the base rent and shall be considered in the amount due for each consecutive month. This is a "Triple Net Lease". Proportionate share for 1191 Green Street is 16.6%.

### RENTER'S INSURANCE:

*Tenant* shall obtain, and their own cost and expense, a plate glass and public liability insurance policy including bodily injury and property damage insuring *Tenant* and *Landlord* with minimum coverage of 1,000,000.00 as follows:  The *Tenant* shall provide the *Landlord* with a Certification of Insurance showing *Landlord* as additional insured. The Certificate shall provide for a ten-day written notice to *Landlord* in the event of cancellation or material change of coverage.  To the maximum extent permitted by insurance polices which may be owned by *Tenant* or *Landlord* for the benefit of each other, waive any and all rights of subrogation which might otherwise exist.  Said insurance policy shall remain in full force and

5

effect until the expiration of this Lease Agreement or any extensions granted by the *Landlord* thereto.

### *EVICTION:*

If the *Tenant* fails to pay the base rent or any additional rent within *thirty (30)* days after it is due, the *Tenant* may be evicted. The *Landlord* may also evict the *Tenant* if the *Tenant* does not comply with all of the terms of this Lease and for all other causes as permitted by law. If evicted, the *Tenant* agrees that they must continue to pay the rent for the rest of the terms. The *Tenant* further agrees that they must also pay all costs, including the *Landlord's* reasonable attorney's fees, complaint filing and service fees, related to the eviction and the collection of any monies owed the *Landlord*, along with the cost of re-entering, re-renting, cleaning, and repairing the premises. Rent received from any new *Tenant* will reduce the amount owed the *Landlord*, as per *Landlord's* legal obligation to mitigate damages in the event of a breech by *Tenant* of *Tenant's* obligation under the Lease.

### *PAYMENTS BY LANDLORD:*

If the *Tenant* fails to comply with the terms of this Lease Agreement, the *Landlord* may take any required action and charge the cost, including the *Landlord's* reasonable attorney's fees, to the *Tenant* as additional rent. Failure to pay such additional rent upon demand is a violation of this Lease Agreement.

### *CARE OF THE PREMISES:*

Upon occupancy of the Premises, the *Tenant* accepts the Premises in *"AS IS"* condition. The *Tenant* has examined the Premises, and is satisfied with their present physical condition.

The *Tenant* agrees to maintain the Premises and all of its systems, fixtures, and/or appliances in as good condition as it was at the start of this Lease Agreement, except for ordinary wear and tear. The *Tenant* must pay for all repairs, replacements, and damages, caused by and/or during the *Tenant's* occupancy of the Premises, including the *Tenant's* patrons, clients and delivery persons. The *Tenant* will remove all of the *Tenant's* property at the end of this Lease. Any property that is left becomes the property of the *Landlord* and may be thrown out. *Tenant* shall maintain a service contract for the *HVA* system with a licensed contractor which shall require quarterly servicing of said system during the term of the lease and any renewals thereof. *Tenant* shall provide evidence to *Landlord* of same on a quarterly basis and failure to do so will be considered as a breech of *Tenant's* obligations under the Lease.

### *INTERRUPTION OF SERVICES:*

The *Landlord* is not responsible for any inconvenience or interruption of service due to repairs, improvements, or for any reason beyond the *Landlord's* control.

### *ALTERATIONS:*

The *Tenant* shall be responsible for all initial alterations of his own business. The parties agree and understand that any alterations, additions, and/or improvements of or attached to the premises become the *Landlord's* property.

7

### COMPLIANCE WITH LAWS:

The *Tenant* must comply with the laws, orders, rules, and requirements of governmental authorities and insurance companies which have issued or are about to issue policies covering the Premises and/or its contents.

### TERMINATION:

If the *Tenant* wishes to terminate the terms of this Lease Agreement, the *Tenant* must notify the *Landlord* in *writing* at least ninety (90) days prior to the expiration date set forth herein, provided that the *Tenant* are in full compliance with all of the terms of this Lease Agreement.

### NO WAIVER BY LANDLORD:

The *Landlord* does not give up any rights by accepting rent or by failing to enforce any terms of this Lease Agreement.

### ASSIGNMENT OR SUBLEASE:

The *Tenant* may not sublease the Premises or assign this Lease without the *Landlord's* prior *written* consent, which shall not be unreasonably withheld or delayed. In the event that the *Tenant* wishes to assign or sublet the premises, they must notify the *Landlord* in writing at least thirty (30) days prior to the commencement of said assignment or sublet and under landlord's terms and conditions. *Tenant* and personal guarantor shall not be released from any responsibilities under the Lease by virtue of its assignment or subleasing unless specifically agreed as to same by *Landlord.*

### ENTRY BY LANDLORD:

8

Upon reasonable notice, the *Landlord* or the *Landlord's agents* may enter the premises to provide services, inspect, repair, improve, or show it to potential purchasers. The *Tenant* must notify the *Landlord* if the *Tenant* will be away for ten (10) days or more. In case of emergency or the *Tenant's* absence, the *Landlord* may enter the Premises without the *Tenant's* consent.

<center>*QUIET ENJOYMENT:*</center>

The *Tenant* may use the Premises without interference subject to the terms of this Lease Agreement as a Beauty salon, Barber shop, Hairstyling, Nail salon or other similar Business.

<center>*SUBORDINATION:*</center>

The Lease as the *Tenant's* rights is subject and subordinate to present and future mortgages on the Premises. The *Landlord* may execute any papers on the *Tenant's* behalf as the *Tenant's* Attorney-in-Fact to accomplish this.

<center>*HAZARDOUS USE:*</center>

The *Tenant* will not keep anything in the Premises, which are dangerous, flammable, explosive, or might increase the danger of fire or any other hazard. All beauty salon items are allowed at the premises as long as approved by fire dept.

<center>*INJURY OR DAMAGE:*</center>

The *Tenant* will be responsible for any injury or damage caused by the act or neglect of the *Tenant*, the *Tenant's agents, employees and/or patrons or other visitors*. The *Landlord* is not responsible for any injury or damage unless due to the negligence or improper conduct of the *Landlord*.

*NOTICES:*

All notices provided by this Lease must be *written* and delivered personally or by Certified Mail, Return Receipt Requested.

*SIGNS:*

The *Tenant* will be allowed a sign, the size, composition and the Landlord shall determine location of which. Tenant should use Sign Company assigned by Landlord for uniformity purposes only.

*VALIDITY OF LEASE AGREEMENT:*

If a clause or provision of this Lease Agreement is legally invalid, the rest of this Lease Agreement remains in full force and effect.

*PARTIES:*

This Lease Agreement binds the Landlord and the Tenant. All parties who lawfully succeed to their rights and responsibilities are also bound.

*ENTIRE LEASE AGREEMENT:*

All promises the *Landlord* has made are contained in this written Lease Agreement. This Lease Agreement can only be modified by an agreement in *writing,* executed by both *Landlord* and *Tenant. This premises is leased for Beauty salon only and landlord will not allow any other beauty salons in the plaza.*

*LAWS GOVERNING THIS LEASE AGREEMENT:*

This Lease Agreement and all of its terms shall be governed and construed in accordance with the Laws of the State of New Jersey.

10

*SIGNATURES:*

By executing herein below, the *Landlord* and the *Tenant* hereby agree to be bound by the terms of this Lease Agreement.

*In witness whereof*, the parties have hereunto set their hands and seals on the date and year first written above.

*Witness:*

_____    _____
                                    **VRAJSAN INC.**
                                    **By: Vrajesh Desai**


_____    _____
                                    **HUMA BEAUTY SALON, LLC**
                                    **By: HUMA KHAN**


_____    _____
                                    **HUMA KHAN, Personal Guarantor**

11

**William Kinsella**

**To:**          sanjaykshah64@yahoo.com
**Subject:**     Rochelle Finkelsteinn v Vrajsan Inc. Green Street et   File: 16103856

Dear Sanjay-

As we discussed, the claimant allegedly worked at Huma Salon She reportedly left work around 8:15 and while changing her shoes near her car slipped on ice?

I would like the lease with Huma Salon.

I also want to know the name of the snow removal contractor, the local guy, who comes out when conditions warrant it.

Is there any records of having a snow contractor come out 1/17/16.

Please provide the information/response requested as soon as possible.

Thank You



## William T Kinsella, SCLA

**Liability Claims Specialist**

One Preferred Way | New Berlin, NY 13411
P: 800.333.7642 ext 1480 | F: 607.847.6616
William.kinsella@preferredmutual.com

  

report this ad

# Pluckemin, NJ 🏠

Somerset

## Weather History for KSMQ - January, 2016

January

17

2016

**View**

Sunday, January 17, 2016

| Daily | Weekly | Monthly | Custom |
|-------|--------|---------|--------|

|  | Actual | Average | Record |
|--|--------|---------|--------|
| **Temperature** | | | |
| Mean Temperature | 32 °F | - | |
| Max Temperature | 39 °F | 36 °F | - (-1) |
| Min Temperature | 24 °F | 15 °F | - (-1) |
| **Degree Days** | | | |
| Heating Degree Days | 34 | | |
| **Moisture** | | | |
| Dew Point | 25 °F | | |
| Average Humidity | 81 | | |
| Maximum Humidity | 96 | | |
| Minimum Humidity | 48 | | |
| **Precipitation** | | | |
| Precipitation | 0.00 in | - | - () |
| **Sea Level Pressure** | | | |
| Sea Level Pressure | 29.77 in | | |
| **Wind** | | | |
| Wind Speed | 2 mph (NNW) | | |
| Max Wind Speed | 8 mph | | |

| | Actual | Average | Record |
|---|---|---|---|
| Max Gust Speed | 16 mph | | |
| Visibility | 5 miles | | |
| Events | Snow | | |

Averages and records for this station are not official NWS values.

T = Trace of Precipitation, MM = Missing Value     Source: NWS Daily Summary

Daily Weather History Graph



report this ad | why ads?

## Search for Another Location

Airport or City:

KSMQ

Submit

## Trip Planner

Search our weather history database for the weather conditions in past years. The results will help you decide how hot, cold, wet, or windy it might be!

Date:

January

17

Submit

report this ad | why ads?

## Astronomy

| Jan. 17, 2016 | Rise | Set |
|---|---|---|
| Actual Time | 7:19 AM EST | 4:57 PM EST |
| Civil Twilight | 6:49 AM EST | 5:27 PM EST |
| Nautical Twilight | 6:16 AM EST | 6:01 PM EST |
| Astronomical Twilight | 5:43 AM EST | 6:34 PM EST |
| Moon | 11:58 AM EST [1/17] | 12:38 AM EST [1/17] |
| Length of Visible Light | 10h 38m | |
| Length of Day | 9h 38m | |

**First Quarter, 58% of the Moon is Illuminated**

| Jan 17 | Jan 23 | Jan 31 | Feb 8 | Feb 15 |
|---|---|---|---|---|
| First Quarter | Full | Last Quarter | New | First Quarter |

report this ad | why ads?

## Hourly Weather History & Observations

| Time [EST] | Temp. | Windchill | Dew Point | Humidity | Pressure | Visibility | Wind Dir | Wind Speed | Gust Speed | Precip | Events | Conditions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12:53 AM | 39.9 °F | 37.8 °F | 28.9 °F | 65% | 29.79 in | 10.0 mi | Variable | 3.5 mph | - | N/A | | Overcast |
| 1:53 AM | 39.0 °F | 34.0 °F | 28.0 °F | 65% | 29.80 in | 10.0 mi | WNW | 6.9 mph | - | N/A | | Overcast |
| 2:53 AM | 39.0 °F | 33.4 °F | 23.0 °F | 53% | 29.83 in | 10.0 mi | NW | 8.1 mph | - | N/A | | Overcast |
| 3:53 AM | 37.9 °F | 32.1 °F | 19.9 °F | 48% | 29.83 in | 10.0 mi | NNW | 8.1 mph | 16.1 mph | N/A | | Overcast |
| 4:53 AM | 34.0 °F | 28.8 °F | 19.9 °F | 56% | 29.84 in | 10.0 mi | NW | 5.8 mph | - | N/A | | Clear |
| 5:53 AM | 28.9 °F | - | 19.9 °F | 69% | 29.83 in | 10.0 mi | Calm | Calm | - | N/A | | Clear |
| 6:53 AM | 28.0 °F | - | 21.0 °F | 75% | 29.84 in | 10.0 mi | Calm | Calm | - | N/A | | Clear |
| 7:53 AM | 28.0 °F | - | 21.9 °F | 78% | 29.86 in | 10.0 mi | Calm | Calm | - | N/A | | Clear |
| 8:53 AM | 30.0 °F | - | 23.0 °F | 75% | 29.87 in | 10.0 mi | Calm | Calm | - | N/A | | Clear |
| 9:53 AM | 32.0 °F | - | 24.1 °F | 73% | 29.88 in | 10.0 mi | Calm | Calm | - | N/A | | Clear |
| 10:53 AM | 34.0 °F | - | 24.1 °F | 67% | 29.85 in | 10.0 mi | Calm | Calm | - | N/A | | Mostly Cloudy |

| Time [EST] | Temp. | Windchill | Dew Point | Humidity | Pressure | Visibility | Wind Dir | Wind Speed | Gust Speed | Precip | Events | Conditions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11:53 AM | 35.1 °F | - | 23.0 °F | 61% | 29.84 in | 10.0 mi | Calm | Calm | - | N/A | | Overcast |
| 12:53 PM | 35.1 °F | 32.2 °F | 21.0 °F | 57% | 29.80 in | 10.0 mi | Variable | 3.5 mph | - | N/A | | Overcast |
| 1:53 PM | 34.0 °F | - | 24.1 °F | 67% | 29.78 in | 3.0 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 2:00 PM | 33.1 °F | 30.0 °F | 24.1 °F | 70% | 29.77 in | 2.0 mi | East | 3.5 mph | - | 0.00 in | Snow | Light Snow |
| 2:09 PM | 33.1 °F | - | 26.1 °F | 75% | 29.77 in | 1.8 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 2:22 PM | 32.0 °F | - | 27.0 °F | 82% | 29.77 in | 0.5 mi | Calm | Calm | - | 0.00 in | Snow | Snow |
| 2:53 PM | 30.9 °F | - | 28.0 °F | 89% | 29.77 in | 0.8 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 3:02 PM | 30.9 °F | - | 28.0 °F | 89% | 29.76 in | 0.8 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 3:53 PM | 30.9 °F | - | 28.0 °F | 89% | 29.74 in | 1.0 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 4:04 PM | 30.9 °F | - | 28.9 °F | 92% | 29.73 in | 0.8 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 4:30 PM | 30.9 °F | - | 28.0 °F | 89% | 29.74 in | 1.0 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 4:44 PM | 30.9 °F | - | 28.0 °F | 89% | 29.74 in | 2.0 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 4:53 PM | 30.9 °F | - | 28.0 °F | 89% | 29.75 in | 2.0 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 5:04 PM | 30.9 °F | - | 28.0 °F | 89% | 29.74 in | 1.5 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 5:20 PM | 30.9 °F | - | 28.9 °F | 92% | 29.73 in | 2.5 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 5:53 PM | 30.0 °F | - | 28.0 °F | 92% | 29.74 in | 2.5 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 6:08 PM | 30.0 °F | - | 27.0 °F | 88% | 29.73 in | 3.0 mi | Calm | Calm | - | 0.00 in | Snow | Light Snow |
| 6:23 PM | 28.9 °F | - | 26.1 °F | 89% | 29.72 in | 2.5 mi | Calm | Calm | - | 0.00 in | | Mostly Cloudy |
| 6:32 PM | 28.0 °F | - | 26.1 °F | 92% | 29.73 in | 2.5 mi | Calm | Calm | - | 0.00 in | | Scattered Clouds |
| 6:42 PM | 28.0 °F | - | 25.0 °F | 88% | 29.73 in | 3.0 mi | Calm | Calm | - | 0.00 in | | Partly Cloudy |
| 6:53 PM | 27.0 °F | - | 25.0 °F | 92% | 29.74 in | 1.8 mi | Calm | Calm | - | 0.00 in | | Partly Cloudy |
| 7:05 PM | 27.0 °F | - | 25.0 °F | 92% | 29.73 in | 1.0 mi | Calm | Calm | - | N/A | | Mostly Cloudy |
| 7:22 PM | 27.0 °F | - | 25.0 °F | 92% | 29.73 in | 3.0 mi | Calm | Calm | - | N/A | | Overcast |

| Time (EST) | Temp. | Windchill | Dew Point | Humidity | Pressure | Visibility | Wind Dir | Wind Speed | Gust Speed | Precip | Events | Conditions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7:29 PM | 28.0 °F | - | 26.1 °F | 92% | 29.73 in | 7.0 mi | Calm | Calm | - | N/A | | Overcast |
| 7:53 PM | 28.0 °F | - | 27.0 °F | 96% | 29.74 in | 7.0 mi | Calm | Calm | - | N/A | | Overcast |
| 8:53 PM | 28.9 °F | - | 27.0 °F | 92% | 29.72 in | 5.0 mi | Calm | Calm | - | N/A | | Overcast |
| 9:39 PM | 28.0 °F | - | 26.1 °F | 92% | 29.70 in | 2.0 mi | Calm | Calm | - | N/A | | Mostly Cloudy |
| 9:53 PM | 28.0 °F | - | 26.1 °F | 92% | 29.71 in | 4.0 mi | Calm | Calm | - | N/A | | Overcast |
| 10:53 PM | 27.0 °F | - | 24.1 °F | 89% | 29.72 in | 4.0 mi | Calm | Calm | - | N/A | | Mostly Cloudy |
| 11:49 PM | 24.8 °F | - | 21.2 °F | 86% | 29.70 in | 2.5 mi | Calm | Calm | - | N/A | | Partly Cloudy |
| 11:53 PM | 24.1 °F | - | 21.9 °F | 91% | 29.71 in | 1.8 mi | Calm | Calm | - | N/A | | Partly Cloudy |

report this ad

Exhibit 'D'

# Law Offices of Linda S. Baumann

Employees of a Subsidiary of The Hartford Financial Services Group, Inc.

67 E. Park Place, Suite 201
Morristown, New Jersey 07960

*Shaun A McGinn, Esquire*

Admitted in New Jersey #032232000
Office Telephone:                                    Direct Dial: (609) 308-0961
   (609) 371-1533
Office Facsimile:
   (877) 369-5792

June 2, 2022

Monique D. Moreira, Esq.
Moreira & Moreira, P.C.
712 Kearny Avenue
Kearny, New Jersey 07032
Fax No.: (201) 991-9122
Email: MOREIRALAW@MOREIRALAWPC.COM

**RE:     Rochelle Finkelstein v. Huma Beauty Salon, LLC d/b/a Green Street Hair Salon**
**        Docket No.: MID-L-294-18**

Dear Ms. Moreira:

Please be advised that Third Party Defendant, Huma Beauty Salon, LLC d/b/a Green Street Hair Salon, hereby supplements and amends its answers to Interrogatories to include the certified copy of The Hartford policy of insurance.

In light of the attached, Third Party Defendant, Huma Beauty Salon, LLC d/b/a Green Street Hair Salon requests Third Party Plaintiff to stipulate to the dismissal of the third count of the Third Party Complaint alleging breach of contract for failure to procure insurance coverage.

If I do not hear from you within five (5) business days to the contrary, I will assume that this form and method of amendment is acceptable to you.

Very truly yours,
Law Offices of Linda S. Baumann
**/s/ Shaun A. McGinn**
Shaun A McGinn

SAM/mrm
Enc.
cc.     Andrew S. Blumer, Esq. via email: andrew@blumerlaw.com

A True Copy
Attest

Process Server
JoAnn Nyzkankiewic

Exhibit 'E'

# *Moreira & Moreira, P.C.*

José B. Moreira
Monique D. Moreira *

⬤ Ⓜ

**Attorneys at Law**

712 Kearny Avenue
Kearny NJ, 07032

Mark C. De Blis

Tel: (201) 991-9001
Fax: (201) 991-9122
E-Mail: moreiralaw@moreiralawpc.com

*Admitted in NJ and NY

July 26, 2022

<u>**Via Email (Marisela.roman@thehartford.com)**</u>
Marisela Roman-Moran
The Hartford
50 Millstone Road
Building 300, Suite 140
East Windsor, NJ 08520

RE:   **Finkelstein, Rochelle v. Vrajsan Inc.**
      **Docket No.:  MID-L-294-18**
      **Our File No.: 03-0146**
      **Our Policy #**
      **Our Claim #:**
      **Your Claim No. :**
      **D/O/L: 1/17/2016**

Dear Ms. Roman-Moran:

Please allow this letter to confirm that I am asserting a demand for defense and indemnification on behalf of Vrajsan Inc.; Green Street Wine & Liquor, LLC; and 1183 Green Street, LLC (hereinafter "Vrajsan, Inc.").

Attached herewith for your reference is a copy of the lease between your client, Huma Beauty Salon, Inc. and my client, Vrajsan Inc. As you will note, the lease requires that your client name my client as an additional insured under the Hartford Policy. A review of the Hartford Policy confirms that Vrajsan is in fact, an additional insured under the Hartford Policy. Pursuant to the additional insured endorsement, as well as the other insurance clause, defense and indemnification is owed to Vrajsan, Inc. in the above captioned matter.

We hereby tender the defense and indemnification of Vrajsan, Inc. and await your formal response.

Please note that I will continue to protect the interests of Vrajsan Inc. if I am compelled by your company's failure to do so. If your company fails to take over the defenses of Vrajsan Inc. within the next five (5) days, I will begin billing my customary rate of $350.00 an hour and not the discount rate carriers benefit from.

Very truly yours,
**MOREIRA & MOREIRA, P.C.**

By: _____
     Monique D. Moreira, Esq.

MDM: zlm
Cc:    William Kinsella—via email

A True Copy
Attest:

Process Server
Ann Nizlankiewicz

Exhibit 'F'

Prepare. Protect. Prevail.



**THE HARTFORD**

Business Insurance
Employee Benefits
Auto
Home

April 15th, 2022

Insured:              HUMA BEAUTY SALON, LLC
Policy Number:        ████████████
Policy Term:          12/17/2015 – 12/17/2016
Writing Company:  SENTINEL INSURANCE COMPANY, LIMITED

This will verify that, to the best of the undersigned's knowledge, the attached is a complete and accurate representation of insurance policy referenced above. Documents and/or information produced herewith are kept and maintained in the ordinary course of business.

Alicia Thayer
Operations Support Specialist
Clinton Business Center
Hartford Office Location

301 Woods Park Dr.
Clinton, NY 13323
Toll Free: 888-525-2652
Fax: 866-809-1178

# Spectrum®

## Business Owner's Policy





# IMPORTANT NOTICE TO OUR POLICYHOLDERS

THANK YOU FOR RENEWING YOUR POLICY WITH THE HARTFORD.  WITH THIS NOTICE WE ARE PROVIDING YOU ONLY WITH THE DECLARATIONS PAGE, WHICH OUTLINES YOUR COVERAGES, AND WITH THOSE POLICY FORMS, NOTICES, AND BROCHURES WHICH ARE DIFFERENT FROM THOSE WHICH WE PROVIDED WITH YOUR PREVIOUS POLICY.  **YOU SHOULD RETAIN ALL OF THESE DOCUMENTS AND THOSE PROVIDED WITH YOUR PREVIOUS POLICY INDEFINITELY** SO THAT YOU WILL HAVE A COMPLETE SET OF POLICY FORMS AT ALL TIMES FOR YOUR REFERENCE.

IF YOU HAVE QUESTIONS, OR IF AT ANY TIME YOU NEED COPIES OF ANY OF THE FORMS LISTED ON YOUR POLICY, PLEASE CALL YOUR HARTFORD AGENT OR BROKER, OR THE OFFICE OF THE HARTFORD IDENTIFIED ON YOUR POLICY, AS APPROPRIATE.

Form G-3187-0



HUMA BEAUTY SALON,LLC

1191 GREEN ST
ISELIN                    NJ  08830

Policy Number: ████████████████
Renewal Date: 12/17/15

Thank you for being a loyal customer of The Hartford.

**# 1: Your Hartford Policy**
Enclosed are renewal documents for your policy, which is scheduled to renew on 12/17/15 . Along with a new Declarations Page, which details the coverages provided by your policy, we are enclosing important policy documents. Please be aware that you will receive an invoice separately for this new policy term approximately 30 days prior to the renewal date; no action is required now.

To ensure the premium you paid for this past policy term was accurate, we may contact you by letter, phone or email to conduct a premium audit. If contacted, we will advise what information is needed to complete the audit.

**# 2: Your Business Insurance Coverage Checkup**
Now is a great time to complete a business insurance coverage checkup with a Hartford Insurance Professional. Because you wear so many hats each day, you may not be thinking about how changes to your business can impact the type and amount of insurance coverage needed to protect it.

Together we will evaluate how your needs may have changed over the past year. Examples include:
- Has your mailing address and/or the physical location of your business changed?
- Has there been any increase/decrease in the amount of business property/equipment you own?
- Has there been any increase/decrease in your company's payroll or sales?
- Have you added or eliminated any vehicles used in your business operations?
- Are the bill plan and deductible on your policy right for your business?

**During the review we may make coverage recommendations, provide peace of mind solutions, and possibly reduce your costs. Here is all you need to do:**
- **Call toll free** (866) 467-8730 **, and select our renewal review service option any weekday from** 8 A.M. **to** 6 P.M. EST **and request your business insurance check-up.**
- **To best serve you, please have your Policy Number or Account Number and a Copy of your current Renewal Policy in hand when you call.**

**# 3: Servicing Your Needs**
To login or register for our Online Business Service Center, go to www.thehartford.com/servicecenter where any time, day or night you can:
- Pay your bill, view payment history and enroll in Auto Pay
- Request Auto ID Cards and Certificates of Insurance
- View electronic copies of billing and policy documents and sign up for paperless delivery

**# 4: If You've Had A Loss or Accident... Report It Immediately**
We want to help! Contact us as quickly as possible at 1-800-327-3636.
- Representatives are available 24-7 to assist in helping you recover from your loss.

On behalf of COMM INSURE LLC/PHS                      and The Hartford, we appreciate the opportunity to have been of service to you this past year and look forward to serving your business insurance needs for the upcoming year.

Sincerely,
Your Hartford Team

# Insurance Policy Billing Information

**Thank you for selecting The Hartford for your business insurance needs.**

**Shortly, you will receive your first bill from us. You are receiving this Notice so you know what to expect as a valued customer of The Hartford. Should you have any questions after reviewing this information, please contact us at 866-467-8730, and we will be happy to assist you.**

o   Your total policy premium will appear on your policy's Declarations Page. You will be billed based on the payment plan you selected.

o   You may pay the "minimum due" as it appears on your insurance bill or pay the policy balance in full.

o   An installment service fee is added to each installment. A late fee will also be applied if the "minimum due" is not **received** by the due date shown on your bill. Service and late payment fees do not apply in all states.

o   If you selected installment billing, any credit or additional premium due as the result of a change made to your policy, will be spread over the remaining billing installments. Additional premium due as a result of an **audit** will be billed in full on your next bill date following the completion of the audit.

o   If you elected Electronic Funds Transfer (EFT), policy changes may result in changes to the amount automatically withdrawn from your bank account. The invoice you receive following a policy change will include future withdrawal amounts. If you need to adjust or stop your next scheduled EFT withdrawal, please contact us **at least 3 days prior** to the scheduled withdrawal date at the telephone number shown below.

o   If you selected installment billing and pay the premiums for your first policy term on time, at renewal, your account may qualify for our "Equal Installment" feature. This means that the percentage due for each installment, including the initial renewal installment, will be the same throughout the policy term – helping you better manage cash flow. Equal installments will continue as long as you pay your premiums on time and no cancellation notices are issued for any policy on your account. If you no longer qualify for Equal Installments, future renewals will be billed based on the payment plan you selected, which includes a higher initial installment amount.

o   If your policy is eligible for renewal, your bill for the upcoming policy term will be sent to you approximately 30 days prior to your policy's renewal date. If your insurance needs change, please contact us at least 60 days prior to your renewal date so we can properly address any adjustments needed.

o   **One bill convenience** -- you have the option of combining all eligible Hartford policies on one single bill allowing you to make one payment for all policies on your account as payments are due.

## You're In Control

In addition to selecting a bill plan option that best meets your budget, you have the flexibility to decide **how** your payments are made …

o   **Repetitive EFT:** Sign up for Repetitive EFT payments and have payments automatically withdrawn from your bank account. This option saves you money by reducing the amount of the installment service fee.

o   **Pay Online:** Register at **www.thehartford.com/servicecenter**. Online Bill Pay is Quick, Easy and Secure!

o   **Pay by Check:** Send a check with your remittance stub in the envelope provided with your bill.

o   **Pay by Phone:** Call toll-free **1-866-467-8730.**

**Should you have any questions about your bill, please call Customer Service toll-free number:**
**1-866-467-8730 - 7AM – 7PM CST.  We look forward to being of service to you.**

**Form 100722 11th Rev**. Printed in U.S.A.



## PRODUCER COMPENSATION NOTICE

You can review and obtain information on The Hartford's producer compensation practices at www.TheHartford.com or at 1-800-592-5717.

Form G-3418-0

POLICY NUMBER: ████████████

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

---

**SCHEDULE**

Terrorism Premium:

$          $31.00

---

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for "certified acts of terrorism" under TRIA. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement.

**B.** The following definition is added with respect to the provisions of this endorsement:

**1.** A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of TRIA, to be an act of terrorism under TRIA. The criteria contained in TRIA for a "certified act of terrorism" include the following:

  **a.** The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

  **b.** The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

  **c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion

**C. Disclosure Of Federal Share Of Terrorism Losses**

The United States Department of the Treasury will reimburse insurers for a portion of insured losses, as indicated in the table below, attributable to "certified acts of terrorism" under TRIA that exceeds the applicable insurer deductible:

| Calendar Year | Federal Share of Terrorism Losses |
|---------------|-----------------------------------|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate industry insured losses under TRIA exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

Form SS 83 76 01 15                                                                 Page 1 of 2
© 2015 , The Hartford
(Includes copyrighted material of the Insurance Services Office, Inc., with its permission.)

**D. Cap On Insurer Liability for Terrorism Losses**

If aggregate industry insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceed $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**E. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of terrorism coverage, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form, Coverage Part or Policy.

**F. All other terms and conditions remain the same.**



# IMPORTANT NOTICE TO POLICYHOLDERS - EMPLOYMENT PRACTICES LIABILITY COVERAGE

Thank you for being a customer of The Hartford.

You are receiving this Notice because on renewal, your Employment Practices Liability Coverage Part will be replaced with a new and updated Employment Practices Liability Coverage Part. This Notice describes the major changes that apply to your Employment Practices Liability Coverage Part.

These changes, explained below, include broadening, clarifications and reductions of coverage. This Notice is provided to explain the changes to you but it is not a policy form and does not grant coverage. Please read your policy carefully to understand the full detail of these changes.

I.   **Changes Applicable To The Employment Practices Liability Coverage Form  SS 09 01 12 14**

**SECTION I – INSURING AGREEMENT**

The Insuring Agreement has been modified to remove the language about the making, reporting, defense, and investigation of "claims" to separate sections of the policy. The new wording simply states:

We shall pay "loss" on behalf of the "insureds" resulting from an "employment practices claim" first made against the "insureds" during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" by the "insureds".

**SECTION II – DEFINITIONS**

The following definitions have been modified or are new, to clarify coverage grants and limitations:

1.   "Application" now means the application for this Coverage Part, including any materials or information submitted therewith or made available to us during the underwriting process, which application shall be on file with us. Such **"application"** shall be deemed a part of this Coverage Part and attached hereto. In addition, "application" includes any warranty, representation or other statement provided to us within the past three years in connection with any policy or coverage part of which this Coverage Part is a renewal or replacement.

2.   "Claim" now means an "employment practices claim" which includes written demands for civil non-monetary relief. The defininition of "claim" may be modified further to include coverage for "third party claims" by adding the Third Party Liability Endorsement – Employment Practices Liability endorsement.

3.   "Claims Expenses" now include "extradition costs", which are reasonable and necessary fees and expenses directly resulting from a "claim" in which an "insured person" lawfully opposes, challenges, resists or defends against any request for the extradition of such "insured person" from his or her current country of employ and domicile to any other country for trial or otherwise to answer any criminal accusation, including the appeal of any order or other grant of extradition of such "insured person". "Claims expenses" continue to erode the limits of liability and do not include fees, expenses or costs which are incurred by or on behalf of a party which is not a covered "insured" or prior to the date on which the we received written notice of "claim", nor do they include costs to investigate a "claim".

4.   "Damages" now expressly does not include "benefits", "stock benefits" and future compensation for any person hired, promoted, or reinstated pursuant to a judgment, settlement, order or other resolution of a "claim". "Benefits" and "stock benefits" are newly added definitions to this Coverage Part and are defined as:

"Benefits" means perquisites, fringe benefits, deferred compensation, severance pay and any other form of compensation (other than salaries, wages, or bonuses as a component of a front or back pay award)."

"Stock benefits" means any offering, plan or agreement between an "insured entity" and any "employee" that grants stock, stock options or stock appreciation rights in the "insured entity" to such person, including, without limitation, restricted stock or any other stock grant. "Stock benefits" shall not include employee stock ownership plans or employee stock purchase plans.

5.   "Insured" is now broken down into two subsets: "Insured Entities" and "Insured Persons." "Insured Person" may now include any natural person working in the capacity of an independent contractor pursuant to an "independent contractor agreement".

©2014, The Hartford

6. "Notice Manager" is a new term that means the natural persons in the offices of the chief executive officer, chief financial officer, general counsel, risk manager, human resources manager or any equivalent position to the foregoing, of an "Insured Entity".

7. "Loss" is a new term and is defined to include "damages" and "claims expenses".

8. "Wage and Hour Violation" is a new term and means any actual or alleged violation of the duties and responsibilities that are imposed upon an "insured" by any federal, state or local law or regulation any where in the world, including but not limited to the Fair Labor Standards Act or any similar law (except the Equal Pay Act), which govern wage, hour and payroll practices. Such practices include but are not limited to: the calculation and payment of wages, overtime wages, minimum wages and prevailing wage rates; the calculation and payments of benefits; the classification of any person or organization for wage and hour purposes; reimbursing business expenses; the use of child labor; or garnishments, withholdings and other deductions from wages.

9. "Wrongful act" now means an "employment practices wrongful act". It may be amended to include "third party wrongful acts" by adding the Third Party Liability Endorsement – Employment Practices Liability endorsement. In the definition of "employment practices wrongful act", wrongful deprivation of career opportunity, bullying in the workplace, and employment discrimination based upon gender identity or expression, genetic makeup, HIV or other health status, or military status are all expressly included. Certain "employee data privacy wrongful acts" may also be covered. This coverage includes insurance for the failure to prevent unauthorized access to or use of data containing "private employment information" of any "employee" or applicant and the failure to notify any "employee" or applicant of unauthorized access to or use of "private employment information". Therefore, "claims" by an "employee" or applicant due to the loss of an "employee's" personal information may now be covered. Some "employment practices wrongful act", are required to be alleged in addition to or as part of any "employment practices wrongful act" described in sections L.1. – L.6. to qualify as an "employment practices wrongful act". These items include, but are not limited to, a. employment-related wrongful infliction of emotional distress, b. failure to create, provide or enforce adequate employment-related policies and procedures, and d. employment-related invasion of privacy, defamation, or misrepresentation.

## SECTION III - EXCLUSIONS

1. The following exclusions have been deleted from your Coverage Part, which may broaden coverage in certain circumstances:

   a. relating to injury or damage arising from pollutants;

   b. relating to any dishonest, fraudulent, criminal, or malicious act or omission committed by or at the direction of the insured; and

   c. relating to the insured's activities and or capacity as an officer, director, partner, trustee or employee of a charitable organization or pension, welfare profit sharing, mutual or investment fund or trust.

2. The following exclusions, which reduce coverage in certain circumstances, have been added to your Coverage Part:

   a. in connection with any "claim" based upon, arising from, or in any way related to liability incurred for breach of any oral, written, or implied employment contract; provided, however, that this exclusion shall not apply to liability that would have been incurred in the absence of such contract nor shall it apply to the portion of "loss" representing "claim expenses" incurred to defend against such liability; and

   b. in connection with any "claim" based upon, arising from, or in any way related to any prior or pending demand, suit, or proceeding against any "insured" as of, or audit initiated by the United States Office of Federal Contract Compliance Programs before, the effective date of the first Employment Practices Liability Coverage Part issued and continuously renewed by us, or the same or substantially similar fact, circumstance, or situation underlying or alleged in such demand, suit, proceeding, or audit.

3. The exclusion relating to any breach of contract, which had applied to all contracts other than contracts creating or continuing an employer-employee relationship among the parties to the contract, has been deleted and replaced with exclusions that apply to the breach of an "independent contractor agreement" and to any "claim" based upon, arising from, or in any way related to liability incurred for breach of any oral, written, or implied employment contract; provided, however, that this latter exclusion shall not apply to liability that would have been incurred in the absence of such contract nor shall it apply to the portion of "loss" representing "claim expenses" incurred to defend against such liability.

4. The exclusion relating to bodily injury and destruction of tangible property now excludes false arrest or imprisonment, abuse of process, malicious prosecution, trespass, nuisance or wrongful entry or eviction, and diminution of value.

5. The exclusion relating to laws governing wage and hour, overtime wages, or minimum wages, has been modified. "Wage and hour violations" are still not covered. However, the new exclusion contains an exception for certain "retailiation" claims. Please also note, if the Wage And Hour Claims Expenses – Employment Practices Liability endorsement is on your policy, we will pay a certain amount of "claims expenses" in relation to certain "claims" containing a "wage and hour violation".

## SECTION VII – LIMITS OF LIABILITY AND DEDUCTIBLE

The Limits Of Liability And Deductible section now contains a provision stating that if the applicable Limit of Liability for this Coverage Part is exhausted, the premium for this Coverage Part shall be deemed fully earned.

## SECTION VIII – DUTIES IN THE EVENT OF CLAIM; DEFENSE AND SETTLEMENT

1. We now have the right and duty to defend "claims" covered under this Coverage Part even if such "claim" is groundless, false or fraudulent, provided that such "claim" does not involve allegations, in whole or in part, of a "wage and hour violation". For any "claim" involving allegations, in whole or in part, of a "wage and hour violation", it shall be the duty of the "insureds", and not our duty, to defend such "claim". With respect to a covered "claim" for which we does not have the duty to defend, we shall advance "claims expenses" based on the relative legal exposure of all parties to such matters that the Insurer believes to be covered under this Policy. However, please note that if the Wage And Hour Claims Expenses – Employment Practices Liability endorsement is on your policy, we will pay a certain amount of "claims expenses" in relation to certain "claims" containing a "wage and hour violation".

2. There now needs to be insurer and insured consent to settle any "claims". In your old form, there were provisions that contained substantially similar language. You shall not now admit or assume any liability, make any settlement offer or enter into any settlement agreement, stipulate to any judgment, or incur any "claims expense" regarding any "claim" without the prior written consent of the Insurer, such consent not to be unreasonably withheld. We shall not be liable for any admission, assumption, settlement offer or agreement, stipulation, or "claims expense" to which we have not consented.

3. However, your old form contained a provision relating to consent to settle, that stated that if the "insured" refuses to consent to any settlement or compromise recommended by us and acceptable to the claimant, then our liability to pay "damages" and "claims expenses" shall not exceed the amount which we would have paid for "damages" and "claims expenses" at the time the "claim" could have been settled or compromised, less any deductible. This provision has been removed from your new Coverage Part, which may broaden coverage in certain circumstances.

4. The obligations with respect to your providing us with notice of "claims" made against you now contemplate the different types of employment practices-related claims that the "insureds" may typically become involved in, which may require the reporting of a "claim" within 180 days after a "notice manager" becomes aware of it.

## SECTION IX – CONDITIONS

1. The Other Insurance section now states that the coverage provided for any "employment practices claims" shall be primary, with certain exceptions. In your old form, the Other Insurance clause stated that the insurance would apply in excess of any other valid and collectible insurance available. This may broaden your coverage in certain circumstances.

2. If the "named insured" is taken over, such transaction must be reported to us with full written details as soon as practicable (but, in all cases, within 90 days of such transaction). If such transaction occurs, we will not be obligated to offer any renewal or replacement of this Policy.

II. **New Endorsements That May Be Part Of Your Policy And Amend Your Employment Practices Liability Coverage Part..**

1. **Third Party Liability Endorsement – Employment Practices Liability, SS 09 70 12 14**

   If **Third Party Liability Endorsement – Employment Practices Liability** is attached to your Coverage Part, we will provide coverage for "loss" resulting from a "third party claim" for a "third party wrongful act". A "third party claim" is a claim brought by a "third party", which means any person who is a customer, vendor, service provider or other business invitee of an "insured entity" (does not include "employees"). This coverage will be provided for certain discrimination or harassment claims brought by a "third party". This endorsement results in a broadening of coverage.

2. **Wage And Hour Claims Expenses – Employment Practices Liability, SS 09 67 09 14**

   If **Wage And Hour Claims Expenses – Employment Practices Liability** is attached to your Coverage Part, we will provide coverage for "claims expenses" incurred to defend certain "wage and hour violations" subject to a sub-limit of liability, the Wage And Hour Defense Costs Sub-Limit). "Wage and hour violation" is defined in the Coverage Part to include claims relating to violations in connection with wage, hour, and payroll practices. This endorsement results in a broadening of coverage.

3. **Retroactive Date Endorsement  - Employment Practices Liability, SS 09 71 12 14**

   **Retroactive Date Endorsement  - Employment Practices Liability** shall be attached to your new Coverage Part.  This endorsement contains language relating to the "retroactive date".  The provisions addressing the "retroactive date" that appeared in your old Employment Practices Liability Coverage Form now appear in this endorsement.  This endorsement does not change coverage relating to the usage of the "retroactive date".

## III.  STATE AMENDATORY ENDORSEMENTS APPLICABLE TO YOUR EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

Please be advised that certain State Amendatory Endorsments may apply to your Coverage Part.  Some of these endorsements have been revised and updated in your new Employment Practices Liability Coverage Part.  New State Amendatory Endorsements may have also been added to your Coverage Part. These State Amendatory Endorsements are on your Coverage Part primarily to comply with state laws.  Please note that the above-referenced changes may have certain state exceptions addressed in your State Amendatory Endorsements. Please review your State Amendatory Endorsements for state-specific language that may apply to your Coverage Part.

## IV.  REMOVAL OF CERTAIN EMPLOYMENT PRACTICES LIABILITY FORMS

Please be advised that if any of the following forms were on your previous policy, they will be removed upon renewal and no longer apply to your policy:

**Definition of Damages – Amended, SS 09 47 07 99**;  This form amended the definition of damages.

**Employment Practices - Exclusion – Prior Acts, SS 09 42 07 99**;  This form amended the insuring agreement.

**Employment Practices – Contractual Liability,  SS 09 41 07 99**; This form amended the definition of "wrongful act" and amended item I, Section III, Exclusions.

**Definition Of Insured (Independent Contractor), SS 09 43 07 99** This form amended the definition of "insured".


While this Notice identifies the substantive changes that will be made on your renewal to your Employment Practices Liability Coverage Part, this Notice does not include every reduction or expansion in coverage made by this update. Please be sure to read your renewal Employment Practices Liability Coverage Part carefully. Should you have any questions, please contact your insurance agent, broker or you may contact us directly.

We appreciate your business and look forward to being of continued service to you.



# IMPORTANT NOTICE TO POLICYHOLDERS

This Notice provides you with a summary of changes to endorsements that may be part of your policy.   Please be aware that no coverage is provided by this summary.  If there is any conflict between the policy and this summary, the provisions of the policy will prevail.  Please read your policy carefully.

## BUSINESS LIABILITY COVERAGE FORM

If Business Liability coverage is part of your Hartford policy, this Notice applies to you.   Please read it carefully.

**SS 00 60 09 15 - BUSINESS LIABILITY COVERAGE FORM AMENDATORY ENDORSEMENT**

When this endorsement is attached to your policy, Your Business Liability Form is amended as follows:

Exclusion B.1.p.15 regarding Discrimination and Humiliation has been removed.

A new exclusion, B.1.p.15 has been added to your policy. This exclusion explains our intent is to not cover Data Breach losses under the Personal and Advertising coverage part. This is a clarification of coverage.
Please be advised: Data Breach Coverage is available by adding optional endorsements, Data Breach - Amendment of Limits of Insurance - Defense and Liability SS 41 72 and/or Data Breach - Amendment of Limits of Insurance - Response Expense SS 41 73.

Exclusion B.1.q Electronic Data has been replaced with "Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability". This exclusion broadens the exclusion for Data breach claims but clarifies there is coverage for Bodily Injury and Property Damage as long as it is not caused by access or disclosure of confidential information.

Section E Liability and Medical Expenses General Conditions 7.b. (1) has been amended to clarify that this policy will be in excess of any Owner Controlled Insurance Policies, or OCIP's.

The definition under Personal and Advertising Injury for Discrimination and Humiliation has been removed from the policy. This definition was previously located in Section G.17.h.  This may be a reduction in coverage.

© 2015, The Hartford

# IMPORTANT NOTICE TO POLICYHOLDERS-

# SPECIAL PROPERTY COVERAGE

**YOUR POLICY HAS CHANGED.  PLEASE READ THIS NOTICE CAREFULLY AS IT PERTAINS TO YOUR POLICY.**

**CONTACT YOUR AGENT, BROKER OR HARTFORD REPRESENTATIVE FOR QUESTIONS REGARDING THIS NOTICE**

**A.**  If Form **SS 00 07**, **Special Property Coverage Form**, applies to your policy, then the following changes apply:

  **1.**  The Exclusion for "Earth Movement" B.1.a has been revised to clarify that the exclusion applies if the earth movement was caused by a man made or other cause. This can result in a reduction of coverage.

  **2.**  Exclusion  B.1.h- Electronic Vandalism or Corruption of "Electronic Data" or Corruption of "Computer Equipment" has been added to your policy. This exclusion will not apply if you have the optional Electronic Vandalism form (SS 14 29 or SS 40 08) on your policy.

  **3.**  The definition of "Data" in Paragraph G.4  has been revised to read "Electronic Data". This change is intended to provide clarification of the defined term.

Form SS 89 55 09 15                                                                                    Page 1 of 1

© 2015, The Hartford

# IMPORTANT NOTICE TO POLICYHOLDERS

To help your insurance keep pace with increasing costs, we have increased your amount of insurance . . . giving you better protection in case of either a partial, or total loss to your property.

If you feel the new amount is not the proper one, please contact your agent or broker.

**Form PC-374-0**   Printed in U.S.A.

# NEW JERSEY EARTHQUAKE INSURANCE AVAILABILITY NOTICE

All insureds and applicants are cautioned that commercial fire and extended coverage insurance policies do not provide coverage for earthquake damage.

The definition of an *earthquake* :

   o   is a shaking or trembling of the earth that is geologic or tectonic in nature;

   o   includes shock waves or tremors before, during or after a volcanic eruption;  and

   o   can also include after shocks that occur within a seventy-two hour period following an *earthquake* .

A typical commercial fire and extended coverage insurance policy:

   o   **does not** cover the cost to replace or repair your damaged dwelling, premises or structures, such as garages, resulting from an *earthquake* .

   o   **does not** cover the cost to replace or repair the contents of your business if the damages result from an *earthquake* ; and

   o   **does not** pay for any additional business expenses if your property is badly damaged or destroye d by an *earthquake* .

*Earthquake* **insurance is available through an endorsement to your policy for an additional premium.  The decision to purchase earthquake insurance is one that should be carefully considered based on individual circumstances.**

Historically, an earthquake in New Jersey is a rare event, although the possibility exists that it could happen.  Over the five year period from 1997 to 2002, for every $1 of *earthquake* insurance premium, 3/10 of one cent has been paid out for losses.

**Please contact your Hartford agent or broker if you have any questions or want additional information on how you can obtain** *earthquake* **insurance.**

**This notice is a general description of coverage and does not change, modify or invalidate any of the provisions, terms or conditions of your policy or endorsements.**

This Spectrum Policy consists of the Declarations, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy. This insurance is provided by the stock insurance company of The Hartford Insurance Group shown below.

**INSURER:**   SENTINEL INSURANCE COMPANY, LIMITED
ONE HARTFORD PLAZA, HARTFORD, CT 06155
COMPANY CODE: A

**Policy Number:** ▬▬▬▬▬▬  ▬

# SPECTRUM POLICY DECLARATIONS

**Named Insured and Mailing Address:**        HUMA BEAUTY SALON,LLC
(No., Street, Town, State, Zip Code)

1191 GREEN ST
ISELIN               NJ    08830

**Policy Period:**        **From**    12/17/15    **To**    12/17/16    1    YEAR
12:01 a.m., Standard time at your mailing address shown above. **Exception:** 12 noon in New Hampshire.

**Name of Agent/Broker:** COMM INSURE LLC/PHS
**Code:**  653395

**Previous Policy Number:** ▬▬▬▬▬▬▬

**Named Insured is:** LIMITED LIAB CORP

**Audit Period:** NON-AUDITABLE

**Type of Property Coverage:** SPECIAL

**Insurance Provided:** In return for the payment of the premium and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy.

**TOTAL ANNUAL PREMIUM IS:**        ▬▬▬▬
IN RECOGNITION OF THE MULTIPLE COVERAGES INSURED WITH THE HARTFORD, YOUR
POLICY PREMIUM INCLUDES AN ACCOUNT CREDIT.

NJPLGA SURCHARGE:        $        ▬▬▬

Countersigned by    *Susan L. Castaneda*                10/28/15
Authorized Representative                Date

Form SS 00 02 12 06                                    Page 001 (CONTINUED ON NEXT PAGE)
Process Date: 10/28/15                            Policy Expiration Date: 12/17/16

**SPECTRUM POLICY DECLARATIONS  (Continued)**
**POLICY NUMBER:** ███████████

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:**  001          **Building:**  001

1191 GREEN ST
ISELIN              NJ 08830

**Description of Business:**
Barber Shops & Beauty Parlors


**Deductible:**  $ 1,000 PER OCCURRENCE



**BUILDING AND BUSINESS PERSONAL PROPERTY    LIMITS OF INSURANCE**

  **BUILDING**

                                        NO COVERAGE




  **BUSINESS PERSONAL PROPERTY**

    **REPLACEMENT COST**              $     26,100


  **PERSONAL PROPERTY OF OTHERS**

    **REPLACEMENT COST**              NO COVERAGE

MONEY AND SECURITIES

  INSIDE THE PREMISES                $    10,000
  OUTSIDE THE PREMISES               $     5,000



**Form SS 00 02 12 06**                    **Page** 002 (CONTINUED ON NEXT PAGE)
**Process Date:** 10/28/15                 **Policy Expiration Date:** 12/17/16

**SPECTRUM POLICY DECLARATIONS (Continued)**
POLICY NUMBER: ▓▓▓▓▓▓▓▓▓▓▓

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 001        **Building:** 001

**PROPERTY OPTIONAL COVERAGES APPLICABLE    LIMITS OF INSURANCE**
**TO THIS LOCATION**

STRETCH COVERAGES
FORM: SS 04 08
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES. A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

TENANT IMPROVEMENTS AND                    $  50,000
BETTERMENTS:

LIMITED FUNGI, BACTERIA OR VIRUS           $  50,000
COVERAGE:
FORM SS 40 93
THIS IS THE MAXIMUM AMOUNT OF
INSURANCE FOR THIS COVERAGE,
SUBJECT TO ALL PROPERTY LIMITS
FOUND ELSEWHERE ON THIS
DECLARATION.
INCLUDING BUSINESS INCOME AND EXTRA
EXPENSE COVERAGE FOR:                          30 DAYS

Form SS 00 02 12 06                    **Page** 003 (CONTINUED ON NEXT PAGE)
Process Date: 10/28/15                 **Policy Expiration Date:** 12/17/16

**SPECTRUM POLICY DECLARATIONS  (Continued)**
POLICY NUMBER: ███████████

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 002      **Building:** 001

777 WASHINGTON ROAD
PARLIN                NJ 08859

**Description of Business:**
Barber Shops & Beauty Parlors


**Deductible:** $ 1,000 PER OCCURRENCE



**BUILDING AND BUSINESS PERSONAL PROPERTY    LIMITS OF INSURANCE**

  **BUILDING**

                                 NO COVERAGE




  **BUSINESS PERSONAL PROPERTY**

    **REPLACEMENT COST**                    $     26,100


  **PERSONAL PROPERTY OF OTHERS**

    **REPLACEMENT COST**                    NO COVERAGE

MONEY AND SECURITIES

  INSIDE THE PREMISES                    $     10,000
  OUTSIDE THE PREMISES                   $      5,000

**SPECTRUM POLICY DECLARATIONS (Continued)**
POLICY NUMBER: ▓▓▓▓▓▓▓▓▓▓

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 002    **Building:** 001

| PROPERTY OPTIONAL COVERAGES APPLICABLE TO THIS LOCATION | LIMITS OF INSURANCE |
|---|---|

STRETCH COVERAGES
FORM: SS 04 08
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES. A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

TENANT IMPROVEMENTS AND                     $   50,000
BETTERMENTS:

LIMITED FUNGI, BACTERIA OR VIRUS            $   50,000
COVERAGE:
FORM SS 40 93
THIS IS THE MAXIMUM AMOUNT OF
INSURANCE FOR THIS COVERAGE,
SUBJECT TO ALL PROPERTY LIMITS
FOUND ELSEWHERE ON THIS
DECLARATION.
INCLUDING BUSINESS INCOME AND EXTRA
EXPENSE COVERAGE FOR:                           30 DAYS

---

**SPECTRUM POLICY DECLARATIONS (Continued)**

POLICY NUMBER: ▇▇▇▇▇▇▇▇▇▇

| PROPERTY OPTIONAL COVERAGES APPLICABLE TO ALL LOCATIONS | LIMITS OF INSURANCE |
|---|---|
| BUSINESS INCOME AND EXTRA EXPENSE COVERAGE | 12 MONTHS ACTUAL LOSS SUSTAINED |
| COVERAGE INCLUDES THE FOLLOWING COVERAGE EXTENSIONS: | |
| ACTION OF CIVIL AUTHORITY: | 30 DAYS |
| EXTENDED BUSINESS INCOME: | 30 CONSECUTIVE DAYS |
| EQUIPMENT BREAKDOWN COVERAGE COVERAGE FOR DIRECT PHYSICAL LOSS DUE TO: MECHANICAL BREAKDOWN, ARTIFICIALLY GENERATED CURRENT AND STEAM EXPLOSION | |
| THIS ADDITIONAL COVERAGE INCLUDES THE FOLLOWING EXTENSIONS | |
| HAZARDOUS SUBSTANCES | $ 50,000 |
| EXPEDITING EXPENSES | $ 50,000 |
| MECHANICAL BREAKDOWN COVERAGE ONLY APPLIES WHEN BUILDING OR BUSINESS PERSONAL PROPERTY IS SELECTED ON THE POLICY | |
| IDENTITY RECOVERY COVERAGE FORM SS 41 12 | $ 15,000 |

| BUSINESS LIABILITY | LIMITS OF INSURANCE |
|---|---|
| **LIABILITY AND MEDICAL EXPENSES** | $2,000,000 |
| **MEDICAL EXPENSES - ANY ONE PERSON** | $    10,000 |
| **PERSONAL AND ADVERTISING INJURY** | $2,000,000 |
| **DAMAGES TO PREMISES RENTED TO YOU ANY ONE PREMISES** | $1,000,000 |
| **AGGREGATE LIMITS PRODUCTS-COMPLETED OPERATIONS** | $4,000,000 |
| **GENERAL AGGREGATE** | $4,000,000 |

**EMPLOYMENT PRACTICES LIABILITY COVERAGE:** FORM SS 09 01

| | |
|---|---|
| **EACH CLAIM LIMIT** | $    10,000 |
| **DEDUCTIBLE - EACH CLAIM LIMIT** NOT APPLICABLE | |
| **AGGREGATE LIMIT** | $    10,000 |

**RETROACTIVE DATE:** 12172009

This **Employment Practices Liability Coverage** contains claims made coverage. Except as may be otherwise provided herein, specified coverages of this insurance are limited generally to liability for injuries for which claims are first made against the insured while the insurance is in force. Please read and review the insurance carefully and discuss the coverage with your Hartford Agent or Broker.

The Limits of Insurance stated in this Declarations will be reduced, and may be completely exhausted, by the payment of "defense expense" and, in such event, The Company will not be obligated to pay any further "defense expense" or sums which the insured is or may become legally obligated to pay as "damages".

AMENDMENT OF LIQUOR LIABILITY
EXCLUSION: FORM SS 40 34
DESCRIPTION OF ACTIVITY:
NONE

BUSINESS LIABILITY OPTIONAL
COVERAGES

## SPECTRUM POLICY DECLARATIONS (Continued)
**POLICY NUMBER:** ▮▮▮▮▮▮▮▮▮▮▮

**BUSINESS LIABILITY OPTIONAL COVERAGES** **LIMITS OF INSURANCE**
   **(Continued)**

BARBER AND BEAUTY SHOP PROFESSIONAL
LIABILITY                                      $2,000,000

CYBERFLEX COVERAGE
FORM SS 40 26

-

**SPECTRUM POLICY DECLARATIONS (Continued)**
POLICY NUMBER: ▓▓▓▓▓▓▓▓▓▓

**ADDITIONAL INSUREDS:  THE FOLLOWING ARE ADDITIONAL INSUREDS FOR BUSINESS**
**LIABILITY COVERAGE IN THIS POLICY.**

```
LOCATION   002 BUILDING   001

    TYPE   MANAGER LESSOR

    NAME   SEE FORM IH 12 00
```

**SPECTRUM POLICY DECLARATIONS (Continued)**
POLICY NUMBER: ████████

**Form Numbers of Forms and Endorsements that apply:**

```
SS 00 01 03 14      SS 00 05 10 08      SS 00 07 07 05      SS 00 08 04 05
SS 00 60 09 15      SS 00 61 09 15      SS 84 01 09 07      SS 01 30 04 08
SS 10 39 07 05      SS 04 08 09 07      SS 04 19 04 09      SS 04 22 07 05
SS 04 30 07 05      SS 04 37 10 08      SS 04 39 07 05      SS 04 41 04 09
SS 04 42 09 07      SS 04 44 07 05      SS 04 45 07 05      SS 04 46 09 14
SS 04 47 04 09      SS`04 80 03 00      SS 04 86 03 00      SS 40 18 07 05
SS 40 26 06 11      SS 40 34 03 00      SS 40 93 07 05      SS 41 12 12 07
SS 41 51 10 09      SS 41 63 06 11      IH 10 01 09 86      SS 05 05 04 08
SS 05 47 09 15      SS 09 01 12 14      SS 09 67 09 14      SS 09 71 12 14
SS 50 19 01 15      IH 99 40 04 09      IH 99 41 04 09      SS 38 25 12 07
SS 83 76 01 15
       IH 12 00 11 85 ADDITIONAL  INSURED  -  MANAGER/LESSOR
```



# STRETCH SUMMARY

**SUMMARY OF COVERAGE LIMITS**

This is a summary of the Coverages and the Limits of Insurance provided by the Stretch Coverage form SS 04 08 which is included in this policy. No coverage is provided by this summary. Refer to coverage form SS 04 08 to determine the scope of your insurance protection.

The Limit of Insurance for the following Additional Coverages are in addition to any other limit of insurance provided under this policy:

| Coverage | Limit |
|---|---|
| Accounts Receivable – On/Off-Premises | $ 25,000 |
| Brands and Labels | Up to Business Personal Property Limit |
| Claim Expenses | $ 10,000 |
| Computer Fraud | $ 5,000 |
| Computers and Media | $ 10,000 |
| Debris Removal | $ 25,000 |
| Employee Dishonesty (including ERISA) | $ 10,000 |
| Fine Arts | $ 10,000 |
| Forgery | $ 10,000 |
| Laptop Computers – World-Wide Coverage | $ 5,000 |
| Off Premises Utility Services – Direct Damage | $ 10,000 |
| Outdoor Signs | Full Value |
| Pairs or Sets | Up to Business Personal Property Limit |
| Personal Property of Others | $ 10,000 |
| Property at Other Premises | $ 10,000 |
| Salespersons' Samples | $ 1,000 |
| Sewer and Drain Back Up | Included up to Covered Property Limits |
| Sump Overflow or Sump Pump Failure | $ 15,000 |
| Temperature Change | $ 10,000 |
| Tenant Building and Business Personal Property Coverage-Required by Lease | $ 20,000 |
| Transit Property in the Care of Carriers for Hire | $ 10,000 |
| Unauthorized Business Card Use | $ 2,500 |
| Valuable Papers and Records – On/Off-Premises | $ 25,000 |

The Limits of Insurance for the following Coverage Extensions are a replacement of the Limit of Insurance provided under the Standard Property Coverage Form or the Special Property Coverage Form, whichever applies to the policy:

| Coverage | Limit |
|---|---|
| Newly Acquired or Constructed Property – 180 Days | |
|     Building | $1,000,000 |
|     Business Personal Property | $ 500,000 |
|     Business Income and Extra Expense | $ 500,000 |
| Outdoor Property | $ 20,000 aggregate/ $1,000 per item |
| Personal Effects | $ 25,000 |
| Property Off-Premises | $ 15,000 |

Form SS 84 01 09 07

© 2007, The Hartford

The following changes apply only if Business Income and Extra Expense are covered under this policy.  The Limits of Insurance for the following Business Income and Extra Expense Coverages are in addition to any other Limit of Insurance provided under this policy:

| Coverage | Limit |
|---|---|
| Business Income Extension for Off-Premises Utility Services | $ 25,000 |
| Business Income Extension for Web Sites | $ 10,000/7 days |
| Business Income from Dependent Properties | $ 25,000 |

The following Limit of Insurance for the following Business Income Coverage is a replacement of the Limit of Insurance provided under the Standard Property Coverage Form or the Special Property Coverage Form, whichever applies to the policy:

| Coverage | Limit |
|---|---|
| Extended Business Income | 60 Days |

The following changes apply to Loss Payment Conditions:

| Coverage | Limit |
|---|---|
| Valuation Changes | |
| Commodity Stock | Included |
| "Finished Stock" | Included |
| Mercantile Stock - Sold | Included |

Form SS 84 01 09 07

# COMMON POLICY CONDITIONS

© 2008, The Hartford

## QUICK REFERENCE - SPECTRUM POLICY

### DECLARATIONS
### and
### COMMON POLICY CONDITIONS

### I.   DECLARATIONS

Named Insured and Mailing Address
Policy Period
Description and Business Location
Coverages and Limits of Insurance

<table>
<tr><td><strong>II.</strong></td><td colspan="2"><strong>COMMON POLICY CONDITIONS</strong></td><td><strong>Beginning on Page</strong></td></tr>
<tr><td></td><td><strong>A.</strong></td><td>Cancellation</td><td>1</td></tr>
<tr><td></td><td><strong>B.</strong></td><td>Changes</td><td>1</td></tr>
<tr><td></td><td><strong>C.</strong></td><td>Concealment, Misrepresentation Or Fraud</td><td>2</td></tr>
<tr><td></td><td><strong>D.</strong></td><td>Examination Of Your Books And Records</td><td>2</td></tr>
<tr><td></td><td><strong>E.</strong></td><td>Inspections And Surveys</td><td>2</td></tr>
<tr><td></td><td><strong>F.</strong></td><td>Insurance Under Two Or More Coverages</td><td>2</td></tr>
<tr><td></td><td><strong>G.</strong></td><td>Liberalization</td><td>2</td></tr>
<tr><td></td><td><strong>H.</strong></td><td>Other Insurance - Property Coverage</td><td>2</td></tr>
<tr><td></td><td><strong>I.</strong></td><td>Premiums</td><td>2</td></tr>
<tr><td></td><td><strong>J.</strong></td><td>Transfer Of Rights Of Recovery Against Others To Us</td><td>2</td></tr>
<tr><td></td><td><strong>K.</strong></td><td>Transfer Of Your Rights And Duties Under This Policy</td><td>3</td></tr>
<tr><td></td><td><strong>L.</strong></td><td>Premium Audit</td><td>3</td></tr>
</table>

Form SS 00 05 10 08

# COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started; and

         (b) Have not been contracted for,

         within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. Such refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

© 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission)

**COMMON POLICY CONDITIONS**

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to the policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

1. We have the right but are not obligated to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. Any inspections, surveys, reports or recommendations will relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of any person. We do not represent or warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to, or at any time during, the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance - Property Coverage**

If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**I. Premiums**

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. If applicable, on each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   a. Paid to us prior to the anniversary date; and

   b. Determined in accordance with Paragraph 2. above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Changes in exposures or changes in your business operation, acquisition or use of locations that are not shown in the Declarations may occur during the policy period. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Transfer Of Rights Of Recovery Against Others To Us**

Applicable to Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property; or

2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

COMMON POLICY CONDITIONS

    a.  Someone insured by this insurance;

    b.  A business firm:

        (1)  Owned or controlled by you; or

        (2)  That owns or controls you; or

    c.  Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**K.  Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**L.  Premium Audit**

    a.  We will compute all premiums for this policy in accordance with our rules and rates.

    b.  The premium amount shown in the Declarations is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Any additional premium found to be due as a result of the audit are due and payable on notice to the first Named Insured. If the deposit premium paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

    c.  The first Named Insured must maintain all records related to the coverage provided by this policy and necessary to finalize the premium audit, and send us copies of the same upon our request.

Our President and Secretary have signed this policy. Where required by law, the Declarations page has also been countersigned by our duly authorized representative.

Lisa Levin, Secretary

Douglas Elliot, President

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUSINESS LIABILITY COVERAGE FORM
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

**A.** Sub-subparagraphs 1.p. (7), (8), (15) of Paragraph 2., of Section B. **Exclusions** are deleted and replaced with the following:

**p.  Personal and Advertising Injury:**

**(7) (a)** Arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

**(b)** Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

**(1)** Infringement, in your "advertisement", of:

**(a)** Copyright;

**(b)** Slogan; or

**(c)** Title of any literary or artistic work; or

**(2)** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

**(8)** Arising out of an offense committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of web sites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs a., b. and c. of the definition of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(15)** Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**B.** Subparagraph 1.r. of Section B. **Exclusions** is deleted and replaced with the following:

**r.  Employment-Related Practices**

"Personal and advertising injury" to:

**(1)** A person arising out of any "employment–related practices"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies:

(a) Whether the injury-causing event described in the definition of "employment-related practices" occurs before employment, during employment or after employment of that person;

(b) Whether the insured may be liable as an employer or in any other capacity; and

(c) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**C.** Subparagraph 1.q. "Electronic Data" of Section B. **Exclusions** is deleted and replaced with the following:

**q.** **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

(1) Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**D.** Sub-subparagraph 7.b.(1) Other Insurance of Section E. **Liability and Medical Expenses General Conditions** is deleted and replaced with the following:

**b.** **Excess Insurance**

(1) **Your Work**

That is Fire, Extended Coverage, Builder's Risk, Installation Risk, Owner Controlled Insurance Program or OCIP, Wrap Up Insurance or similar coverage for "your work".

**E.** Subparagraph 17. c. "Personal and Advertising Injury" of Section G, **Liability and Medical Expenses Definitions** is deleted and replaced with the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;

**F.** Subparagraph 17.h. of Section G, **Liability and Medical Expenses Definitions** deleted.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROPERTY COVERAGE
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**

I.  The following provisions modify the **Special Property Coverage Form.**

A.  **Property Definitions**

**"Data" G.4.** is deleted and replaced with the following.

4.  "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

B.  **Exclusions**

1.  **Earth Movement B.1.a** is amended to add the following:

This Exclusion applies regardless of whether any of the following is caused by weather, an act of nature, by an artificial, man-made or other cause.

2.  The following is added to **Exclusions B.1**:

h.  **Electronic Vandalism or Corruption of "Electronic Data" or Corruption of "Computer Equipment"**

This exclusion does not apply if SS 14 29 Electronic Vandalism  or SS 40 08 Electronic Vandalism has been made part of this policy.

Electronic Vandalism or Corruption of "Electronic Data" or Corruption of "Computer Equipment" which means:

(1)  A virus, malicious code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

(2)  Unauthorized viewing, copying or use of electronic data (or any proprietary or confidential information or intellectual property in any form) by any person, even if such activity is characterized as "theft";

(3)  Errors or omissions in programming or processing "electronic data";

(4)  Errors or deficiency in design, installation, maintenance, repair or modification of your computer system or any computer system or network to which your system is connected or on which your system depends (including "electronic data");

(5)  Manipulation of your computer system, including "electronic data", by an employee, volunteer worker or contractor, for the purpose of diverting or destroying "electronic data" or causing fraudulent or illegal transfer of any property;

Form SS 00 61 09 15

© 2015, The Hartford

Page 1 of 2

**(6)** Interruption in normal computer function or network service or function due to insufficient capacity to process transactions or to an overload of activity on the system or network;

**(7)** Unexplained or indeterminable failure, malfunction or slowdown of a computer system, including "electronic data" and the inability to access or properly manipulate the "electronic data";

**(8)** Complete or substantial failure, disablement or shutdown of the Internet, regardless of the cause;

**(9)** The inability of a computer system to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

Form SS 00 61 09 15



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUILDING LIMIT- AUTOMATIC INCREASE REVISION

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**
**STANDARD PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A.** Paragraph **C.5 Building Limit-Automatic Increase** of the **SPECIAL PROPERTY COVERAGE FORM** or **STANDARD PROPERTY COVERAGE FORM** is deleted.

**B.** The following is added to **Additional Coverages,** paragraph **A.5** of the **SPECIAL PROPERTY COVERAGE FORM** or paragraph **A.4.** of the **STANDARD PROPERTY COVERAGE FORM**:

**Building Limit - Automatic Increase**

**a.** If the covered loss or damage to Building property at a "scheduled premises" exceeds the Limit of Insurance stated in the Declarations, the Limit of Insurance available for the covered loss or damage in that occurrence will automatically increase by up to 8%.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance for Buildings that applied on the most recent of the policy inception date, policy anniversary date, or the date of any other policy change amending the Building limit, multiplied by

**(2)** The 8% annualized percentage of Automatic Increase, expressed as a decimal

(08), multiplied by

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance for Buildings, divided by 365.

Example:

The applicable Limit of Insurance for Buildings is $100,000. The automatic increase percentage is 8%. The number of days since the beginning of the policy period (or last policy change) is 146.

The amount of increase is:

$100,000 X .08 X 146 divided by 365 = $3,200

Form SS 41 51 10 09

Page 1 of 1

© 2009, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - NUCLEAR ENERGY LIABILITY

1. This insurance does not apply:

   a. To any injury or damage:

      (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

         (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

         (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under any Medical Payments or Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   c. To any injury or damage resulting from the "hazardous properties" of "nuclear material"; if:

      (1) The "nuclear material":

         (a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

         (b) Has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      (3) The injury or damage arises out of the furnishing by any insured of any "technology services" in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; or

      (4) The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (4) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this exclusion:

   a. "Byproduct material", "source material" and "special nuclear material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   b. "Computer system and network" means:

      (1) Leased or owned computer hardware including mobile, networked, and data storage computing equipment;

      (2) Owned or licensed software;

      (3) Owned websites;

      (4) Leased or owned wireless input and output devices; and

      (5) Electronic backup facilities and data storage repositories employed in conjunction with items 1 through 4 above.

   c. "Hazardous properties" include radioactive, toxic or explosive properties.

   d. "Nuclear facility" means:

      (1) Any "nuclear reactor";

      (2) Any equipment or device designed or used for:

         (a) Separating the isotopes of uranium or plutonium;

         (b) Processing or utilizing "spent fuel"; or

         (c) Handling, processing or packaging "waste",

© 2015, The Hartford

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

e. "Nuclear material" means "byproduct material", "source material" or "special nuclear material".

f. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

g. Injury or damage and "property damage" include all forms of radioactive contamination of property.

h. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

i. "Technology services" means:

1. the following services performed for others:

   a. Consulting, analysis, design, installation, training, maintenance, support and repair of or on: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

   b. Integration of systems;

   c. Processing of, management of, mining or warehousing of data;

   d. Administration, management, operation or hosting of: another party's systems, technology or computer facilities;

   e. Website development; website hosting;

   f. Internet access services; intranet, extranet or electronic information connectivity services; software application connectivity services;

   g. Manufacture, sale, licensing, distribution, or marketing of: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

   h. Design and development of: code, software or programming;

   i. Providing software application: services, rental or leasing;

   j. Screening, selection, recruitment or placement of candidates for temporary or permanent employment by others as information technology professionals;

   k. "Telecommunication services"; and

   l. "Telecommunication products".

2. web-related software and connectivity services performed for others; and

3. activities on the "named insured's" "computer system and network".



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM
STANDARD PROPERTY COVERAGE FORM
UMBRELLA LIABILTY PROVISIONS**

**A.  Disclosure Of Federal Share Of Terrorism Losses**

The United States Department of the Treasury will reimburse insurers for a portion of such insured losses, as indicated in the table below that exceeds the applicable insurer deductible:

| Calendar Year | Federal Share of Terrorism Losses |
|---------------|-----------------------------------|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate industry insured losses, attributable to "certified acts of terrorism" under the federal Terrorism Risk Insurance Act, as amended (TRIA), exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

**B.  Cap On Insurer Liability for Terrorism Losses**

A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of federal Terrorism Risk Insurance Act, to be an act of terrorism under TRIA. The criteria contained in TRIA for a "certified act of terrorism" include the following:

1.  The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2.  The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

3.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate industry insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year, and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceed $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**C.  Application Of Exclusions**

The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of terrorism coverage, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form or Policy, such as losses excluded by the Pollution Exclusion, Nuclear Hazard Exclusion and the War And Military Action Exclusion.

**Form SS 50 19 01 15**

© 2015, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission)

**Page 1 of 1**

POLICY NUMBER: ███████████ 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ADDITIONAL INSURED - MANAGER/LESSOR

LOC 002/BLDG 001
TRINITY DEVELOPMENT COMPANY LLC
PO BOX 562
GOOSENECK, NJ 07722



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# WAGE AND HOUR CLAIMS EXPENSES - EMPLOYMENT PRACTICES LIABILITY

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

Exclusion **B.** in **SECTION III - EXCLUSIONS** is deleted and replaced by the following:

**B.** We shall not pay "loss" in connection with any "claim" based upon, arising from, or in any way related to:

1. any claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, or social security benefits;

2. any actual or alleged violation of the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, "ERISA", or any similar law; or

3. any "wage and hour violation".

Provided, however, that this Exclusion B. shall not apply to that portion of "loss" that represents:

   a. a specific amount the "insureds" become legally obligated to pay solely for a "wrongful act" of "retaliation"; or

   b. "Claims expenses" incurred to defend a "wage and hour violation" referenced in sub-paragraph **3.** above subject to a Sub-Limit of Liability of $ 0010000 that is part of, and not in addition to, the Limits of Liability applicable to this Coverage Part (the Wage and Hour Defense Costs Sub-Limit).  Moreover:

1. SECTION VIII.I.2. of this Coverage Part notwithstanding, 100% of the "insured's" "claims expenses" covered pursuant to this sub-paragraph b. shall be allocated to covered "loss" until the Wage and Hour Defense Costs Sub-Limit is exhausted.  Once the Wage and Hour Defense Costs Sub-Limit is exhausted, allocation shall continue in accordance with SECTION VIII.I.2.;

2. the Wage and Hour Defense Costs Sub-Limit is available notwithstanding the fact that a "wage and hour violation" is not an "employment practices wrongful act"; and

3. the Wage and Hour Defense Costs Sub-Limit is only available for "claim expenses" incurred to defend a "wage and hour violation" that occurred on or after the "retroactive date" and before the end of the "policy period", regardless of whether any such "claim" for a "wage and hour violation" is made during the "policy period" or the Extended Reporting Period, if applicable.

All other terms and conditions of this Coverage Part remain unchanged.

© 2014, The Hartford

# EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM (CLAIMS MADE)

© 2014, The Hartford

# QUICK REFERENCE

## EMPLOYMENT PRACTICES LIABILITY
## COVERAGE FORM (CLAIMS MADE)

## READ YOUR POLICY CAREFULLY

|  | Beginning on Page |
|---|---|
| SECTION I:  INSURING AGREEMENT | 1 |
| SECTION II:  DEFINITIONS | 1 |
| SECTION III:  EXCLUSIONS | 5 |
| SECTION IV:  DISCOVERY CLAUSE | 6 |
| SECTION V:  EXTENDED REPORTING PERIOD | 6 |
| SECTION VI:  COVERAGE TERRITORY | 6 |
| SECTION VII:  LIMITS OF LIABILITY AND DEDUCTIBLE | 6 |
| SECTION VIII:  DUTIES IN THE EVENT OF CLAIM; DEFENSE AND SETTLEMENT | 7 |
| SECTION IX:  CONDITIONS | 9 |

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM



# EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM (CLAIMS MADE)

---

**NOTICE**: COVERAGE PROVIDED BY THIS COVERAGE PART IS CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO US IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE DEDUCTIBLE. PAYMENTS OF CLAIM EXPENSES ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMITS OF LIABILITY. PLEASE READ THE COVERAGE PART CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER. UPON TERMINATION OF THIS COVERAGE PART, EXTENDED REPORTING PERIOD COVERAGE IS AVAILABLE.

---

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine your rights, duties and what is and is not covered.

Throughout this Coverage Part the words you and your refer to the "Named Insured" in the Declarations. The words we, us and our refer to the stock insurance company member of THE HARTFORD shown on the Declarations Page.

Words and phrases that appear in quotation marks are defined in **SECTION II - DEFINITIONS** of this Coverage Part.

In consideration of, and subject to, the payment of the premium by you and in reliance upon the accuracy and completeness of the "application", including but not limited to the statements, attachments and exhibits contained in and submitted with the "application", we agree with you, subject to all terms, exclusions and conditions of this Coverage Part, as follows:

## SECTION I - INSURING AGREEMENT

### Employment Practices Liability

We shall pay "loss" on behalf of the "insureds" resulting from an "employment practices claim" first made against the "insureds" during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" by the "insureds".

## SECTION II - DEFINITIONS

A. "Application" means the application for this Coverage Part, including any materials or information submitted therewith or made available to us during the underwriting process, which application shall be on file with us. Such "application" shall be deemed a part of this Coverage Part and attached hereto. In addition, "application" includes any warranty, representation or other statement provided to us within the past three years in connection with any policy or coverage part of which this Coverage Part is a renewal or replacement.

B. "Benefits" means perquisites, fringe benefits, deferred compensation, severance pay and any other form of compensation (other than salaries, wages, or bonuses as a component of a front or back pay award).

C. "Claim" means any "employment practices claim".

D. "Claims expenses" means:

   1. reasonable and necessary legal fees and expenses, including, but not limited to, e-discovery expenses, incurred in the defense or appeal of a "claim";

   2. "Extradition costs"; or

   3. the costs of appeal, attachment or similar bonds, provided that we shall have no obligation to furnish such bonds.

   However, "claim expenses" shall not include:

   a. salaries, wages, remuneration, overhead or benefit expenses associated with any "insureds";

   b. any fees, expenses or costs which are incurred by or on behalf of a party which is not a covered "insured"; or

   c. any fees, expenses or costs which were incurred prior to the date on

---

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

which we received written notice of the "claim" from the "insured".

E. "Controlled partnership" means a limited partnership in which and so long as the "named insured" owns or controls, directly or indirectly, more than 50% of the limited partnership interest and an "insured entity" is the sole general partner.

F. "Damages" means the amounts, other than "claim expenses", that the "insureds" are legally liable to pay solely as a result of a "claim" covered by this Coverage Part, including:

1. compensatory damages, including front pay and back pay;

2. settlement amounts;

3. pre- and post-judgment interest;

4. costs awarded pursuant to judgments;

5. punitive and exemplary damages;

6. the multiple portion of any multiplied damage award; or

7. liquidated damages under the Age Discrimination in Employment Act and the Family and Medical Leave Act.

However, "damages" shall not include:

a. taxes, fines or penalties imposed by law;

b. non-monetary relief;

c. "Benefits";

d. future compensation for any person hired, promoted, or reinstated pursuant to a judgment, settlement, order or other resolution of a "claim";

e. "Stock benefits";

f. costs associated with providing any accommodations required by the Americans with Disabilities Act or any similar law; or

g. any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive and exemplary damages, or the multiple portion of any multiplied damage award, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

G. "Debtor in possession" means a "debtor in possession" as such term is defined in Chapter 11 of the United States Bankruptcy Code as well as any equivalent status under any similar law.

H. "Domestic partner" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or any domestic partner relationship arrangement recognized outside of the United States and under the Human Resource policy of the "insured entity".

I. "Employee" means any natural person who was, is or shall become a(n):

1. employee of an "insured entity" including any part time, seasonal, temporary, leased, or loaned employee; or

2. volunteer or intern with an "insured entity".

J. "Employee data privacy wrongful act" means:

1. the failure to prevent any unauthorized access to or use of data containing "Private Employment Information" of any "Employee" or applicant for employment with the "Insured Entity" including any such failure that directly results in a violation with respect to the privacy of such "Employee's" or applicant's medical information under the Health Insurance Portability and Accountability Act (HIPAA) or credit information under the Fair Credit Reporting Act (FCRA); or

2. the failure to notify any "employee" or applicant for employment with the "insured entity" of any actual or potential unauthorized access to or use of "private employment information" of any "employee" or applicant for employment with the "insured entity", if such notice was required by state or federal regulation or statute.

K. "Employment practices claim" means any:

1. written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

2. civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

3. formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;

by or on behalf of an "employee", an applicant for employment with an "insured entity", or an "independent contractor".

Form SS 09 01 12 14

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

"Employment practices claim" also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the United States Office of Federal Contract Compliance Programs.

"Employment practices claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "Employment practices claim" as described above. Such "claim" shall be commenced by the receipt of such request.

However, **"employment practices claim"** shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.

L.  "Employment practices wrongful act" means:

1.  wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

2.  sexual or other workplace harassment, including bullying in the workplace, quid pro quo and hostile work environment;

3.  employment discrimination, including discrimination based upon age, gender, race, color, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

4.  "Retaliation";

5.  breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

6.  violation of the Family and Medical Leave Act.

"Employment practices wrongful act" also means the following, but only when alleged in addition to or as part of any "employment practices wrongful act" described above:

a.  employment-related wrongful infliction of mental anguish or emotional distress;

b.  failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

c.  negligent retention, supervision, hiring or training;

d.  employment-related invasion of privacy, defamation, or misrepresentation; or

e.  an "employee data privacy wrongful act".

M.  "ERISA" means the Employee Retirement Income Security Act of 1974.

N.  "Extradition costs" means reasonable and necessary fees and expenses directly resulting from a "claim" in which an "insured person" lawfully opposes, challenges, resists or defends against any request for the extradition of such "insured person" from his or her current country of employ and domicile to any other country for trial or otherwise to answer any criminal accusation, including the appeal of any order or other grant of extradition of such "insured person".

O.  "Financial insolvency" means the status of an "insured entity" as a result of:

1.  the appointment of any conservator, liquidator, receiver, rehabilitator, trustee, or similar official to control, supervise, manage or liquidate such "insured entity"; or

2.  such "insured entity" becoming a "debtor in possession".

P.  "Independent contractor" means any natural person working in the capacity of an independent contractor pursuant to an "independent contractor agreement".

Q.  "Independent contractor agreement" means any express contract or agreement between an "independent contractor" and an "insured entity" specifying the terms of the "insured entity's" engagement of such "independent contractor".

R.  "Insured entity" means:

1.  the "named insured"; or

2.  any "subsidiary".

"Insured entity" shall include any such entity as a "debtor in possession".

"Insured entity" shall also include any such entity in its capacity as a general partner of a "controlled partnership".

S.  "Insured person" means any:

1.  "Employee";

2.  "Manager"; or

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

3. regarding the Employment Practices Liability Insuring Agreement, an "independent contractor" provided that within 30 days of an "employment practices claim" having been made against such "independent contractor" that the "insured entity" agrees in writing to indemnify such "independent contractor" for any "loss" arising out of such "claim".

**T.** "Insureds" means any:

   1. "Insured entity"; or

   2. "Insured person".

**U.** "Interrelated wrongful acts" means "wrongful acts" that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes.

**V.** "Loss" means "claim expenses" and "damages".

**W.** "Manager" means any natural person who was, is or shall become a(n):

   1. duly elected or appointed director, advisory director, board observer, advisory board member, officer, member of the board of managers or management committee member of an "insured entity";

   2. "Employee" in his/her capacity as legal counsel to an "insured entity"; or

   3. executive of an "insured entity" created outside the United States to the extent that such executive holds a position equivalent to those described in **1.** or **2.** above.

**X.** "Named insured" means the individuals, partnerships or corporations designated in the Declarations.

**Y.** "Notice manager" means the natural persons in the offices of the chief executive officer, chief financial officer, general counsel, risk manager, human resources manager or any equivalent position to the foregoing, of an "Insured Entity".

**Z.** "Policy period" means the period from the Effective Date to the Expiration Date set forth in the Declarations or any earlier cancellation date.

**AA.** "Private employment information" means any information regarding an "employee" or applicant for employment with the "insured entity", which is collected or stored by an "insured" for the purposes of establishing, maintaining or terminating an employment relationship.

**BB.** "Retaliation" means adverse treatment of an "employee" or "independent contractor" based upon such person:

   1. exercising any rights under law, including, without limitation, rights under any workers compensation laws, the Family and Medical Leave Act, "ERISA", or the Americans with Disabilities Act;

   2. refusing to violate any law;

   3. assisting, testifying, or cooperating with a proceeding or investigation regarding alleged violations of law by any "insured";

   4. disclosing or threatening to disclose alleged violations of law to a superior or to any governmental agency; or

   5. filing any *whistle blower* claim against any "insured" under the federal False Claims Act, the Sarbanes-Oxley Act of 2002, or any similar law.

**CC.** "Stock benefits" means any offering, plan or agreement between an "insured entity" and any "employee" that grants stock, stock options or stock appreciation rights in the "insured entity" to such person, including, without limitation, restricted stock or any other stock grant. "Stock benefits" shall not include employee stock ownership plans or employee stock purchase plans.

**DD.** "Subsidiary" means any:

   1. corporation in which and so long as the "named insured" owns or controls, directly or indirectly, more than 50% of the outstanding securities representing the right to vote for the election of the board of directors of such corporation;

   2. limited liability company in which and so long as the "named insured" owns or controls, directly or indirectly, the right to elect, appoint or designate more than 50% of such entity's managing members;

   3. a "controlled partnership";

   4. corporation operated as a joint venture in which and so long as the "named insured" owns or controls, directly or indirectly, exactly 50% of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such corporation, the "named insured" solely controls the management and operation of such corporation; or

   5. foundation, charitable trust or political action committee in which and so long as such entity or organization is controlled by the "named insured" or any "subsidiary" as defined in **1.** through **4.** above.

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

EE. "Wage and hour violation" means any actual or alleged violation of the duties and responsibilities that are imposed upon an "insured" by any federal, state or local law or regulation anywhere in the world, including but not limited to the Fair Labor Standards Act or any similar law (except the Equal Pay Act), which govern wage, hour and payroll practices. Such practices include but are not limited to:

1. the calculation and payment of wages, overtime wages, minimum wages and prevailing wage rates;

2. the calculation and payments of benefits;

3. the classification of any person or organization for wage and hour purposes;

4. reimbursing business expenses;

5. the use of child labor; or

6. garnishments, withholdings and other deductions from wages.

FF. "Wrongful act" means any actual or alleged "employment practices wrongful act".

## SECTION III - EXCLUSIONS

A. We shall not pay "Loss":

1. for bodily injury, sickness, disease, death, false arrest or imprisonment, abuse of process, malicious prosecution, trespass, nuisance or wrongful entry or eviction, or for injury to or destruction of any tangible property including loss of use or diminution of value thereof; provided, however, that this exclusion shall not apply to that portion of "loss" that directly results from mental anguish or emotional distress when alleged in connection with an otherwise covered "employment practices wrongful act";

2. for any actual or alleged "wrongful act" by "insured persons" of any "subsidiary" in their capacities as such, or by any "subsidiary", if such "wrongful act" actually or allegedly occurred when such entity was not a "subsidiary";

3. in connection with any "claim" based upon, arising from, or in any way related to any:

   a. prior or pending demand, suit, or proceeding against any "insured" as of, or

   b. audit initiated by the United States Office of Federal Contract Compliance Programs before,

   the effective date of the first Employment Practices Liability Coverage Part issued and continuously renewed by us, or the same or substantially similar fact, circumstance, or situation underlying or alleged in such demand, suit, proceeding, or audit;

4. in connection with any "claim" based upon, arising from, or in any way related to any fact, circumstance, or situation that, before the Effective Date in the Declarations, was the subject of any notice given under any other employment practices liability policy, management liability policy or other insurance policy which insures "wrongful acts" covered under this Coverage Part;

5. in connection with any "claim" based upon, arising from, or in any way related to the liability of others assumed by an "insured" under any contract or agreement; provided, however, this exclusion shall not apply to liability that would have been incurred in the absence of such contract or agreement;

6. for breach of any "independent contractor agreement"; or

7. for a lockout, strike, picket line, hiring of replacement workers or similar action in connection with any labor dispute, labor negotiation or collective bargaining agreement.

B. We shall not pay "loss" in connection with any "claim" based upon, arising from, or in any way related to:

1. any claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, or social security benefits;

2. any actual or alleged violation of the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, "ERISA", or any similar law; or

3. any "wage and hour Violation"

   Provided, however, that this exclusion B. shall not apply to that portion of "loss" that represents a specific amount the "insureds" become legally obligated to pay solely for a "wrongful act" of "retaliation".

C. We shall not pay "loss" in connection with any "claim" based upon, arising from, or in any way related to liability incurred for breach of any oral, written, or implied employment contract; provided, however, that this exclusion shall not apply to liability that would have been incurred in the absence of such contract nor shall it apply to the portion of "loss" representing "claim expenses" incurred to defend against such liability.

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

## SECTION IV - DISCOVERY CLAUSE

If, during the "policy period", the "insureds" become aware of a "wrongful act" that may reasonably be expected to give rise to a "claim", and, if written notice of such "wrongful act" is given to us during the "policy period", including the reasons for anticipating such a "claim", the nature and date of the "wrongful act", the identity of the "insureds" allegedly involved, the alleged injuries or damages sustained, the names of potential claimants, and the manner in which the "insureds" first became aware of the "wrongful act", then any "claim" subsequently arising from such "wrongful act" shall be deemed to be a "claim" first made during the "policy period" on the date that we receive the above notice.

## SECTION V - EXTENDED REPORTING PERIOD

Subject to provisions **A.** through **G.** below, if this Coverage Part is canceled or non-renewed other than for non-payment of premium, you shall have the right to purchase an extended period to report "claims" under this Coverage Part for any "claim" first made during the period of time set forth in the Supplemental Extended Reporting Period Endorsement, and following the effective date of such cancellation or nonrenewal and reported in writing during such period or within sixty (60) days thereafter, but only with respect to any "wrongful act" which takes place prior to the effective date of such cancellation or nonrenewal.

**A.** The Extended Reporting Period shall be effective only upon the payment of an additional premium. The additional premium will be 200% of the annual advance premium for this coverage. At the commencement of the Extended Reporting Period, the entire premium thereof shall be deemed fully earned and non-refundable.

**B.** The quotation of a different premium or deductible or limit of liability for renewal is not a cancellation or refusal to renew for the purposes of this provision.

**C.** You shall have no right to purchase the Extended Reporting Period, unless you have satisfied all conditions of the Coverage Part and all premiums and deductibles outstanding have been paid.

**D.** Your right to purchase the Extended Reporting Period shall terminate unless written notice together with full payment of the premium for the Extended Reporting Period is given to us no later than sixty (60) days following the effective date of cancellation or nonrenewal.

**E.** The fact that the period of time to report "claims" is extended by virtue of the Extended Reporting Period shall not increase or reinstate the Limit of Liability stated in the Declarations.

**F.** Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided. They apply only to "wrongful acts" that occur before the end of the "policy period".

"Claims" for such injury which are first received within sixty (60) days after the "policy period", or during the Extended Reporting Period if in effect, will be deemed to have been made on the last date of the "policy period".

**G.** Once in effect, Extended Reporting Periods may not be canceled by us.

## SECTION VI -COVERAGE TERRITORY

Coverage under this Coverage Part applies worldwide, provided that the "claim" is made and any legal action is pursued within the Unites States, its territories, possessions or commonwealths, or Canada.

## SECTION VII - LIMITS OF LIABILITY AND DEDUCTIBLE

**A.** The maximum we will pay for each "claim" under this Coverage Part is the Each Claim Limit of Liability stated in the Declarations, subject to the Annual Aggregate Limit of Liability stated in the Declarations.

The maximum we will pay for all "claims" under this Coverage Part is the Annual Aggregate Limit of Liability stated in the Declarations, regardless of the number of "claims".

If the applicable Limit of Liability for this Coverage Part is exhausted, the premium for this Coverage Part shall be deemed fully earned. "Claim expenses" shall be part of, and not in addition to, the Limits of Liability. Payment of "claim expenses" by us shall reduce each Limit of Liability.

**B.** We shall pay "loss" in excess of the Deductible applicable to each "claim" as specified on the Declarations.

**C.** All Deductibles shall be borne by the "insureds" at their own risk; they shall not be insured.

**D.** The Deductible shall apply to "claim expenses" covered hereunder. If, any "claim expenses" are incurred by us prior to the "insured's" complete payment of the Deductible, then the "insureds" shall reimburse us therefor upon our request.

**E.** No Deductible shall apply to "loss" incurred by any "insured person" that an "insured entity" is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is not able to do so by reason of "financial insolvency".

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

F.  If an "insured entity" is permitted or required by common or statutory law to indemnify an "insured person" for any "loss", or to advance "claim expenses" on their behalf, and does not do so other than because of "financial insolvency", then such "insured entity" and the "named insured" shall reimburse and hold us harmless for our payment or advancement of such "loss" up to the amount of the Deductible that would have applied if such indemnification had been made.

G.  If a "subsidiary" is unable to indemnify an "insured person" for any "loss", or to advance "claim expenses" on their behalf, because of "financial insolvency", then the "named insured" shall reimburse and hold us harmless for our payment or advancement of such "loss" up to the amount of the applicable Deductible that would have applied if such indemnification had been made.

The Limit of Liability for this Coverage Part applies separately to each consecutive annual period and to any remaining period of less than twelve (12) months starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Liability.

## SECTION VIII - DUTIES IN THE EVENT OF CLAIM; DEFENSE AND SETTLEMENT

A.  We shall have the right and duty to defend "claims" covered under this Coverage Part, even if such "claim" is groundless, false or fraudulent, provided that:

1.  the "insureds" give notice to us in accordance with the applicable notice provisions; and

2.  such "claim" does not involve allegations, in whole or in part, of a "wage and hour violation".

For any "claim" involving allegations, in whole or in part, of a "wage and hour violation", it shall be the duty of the "insureds", and not our duty, to defend such "claim".

B.  If we have the duty to defend a "claim", our duty to defend such "claim" shall cease upon exhaustion of any applicable Limit of Liability.

C.  The "insureds" shall not admit or assume any liability, make any settlement offer or enter into any settlement agreement, stipulate to any judgment, or incur any "claim expenses" regarding any "claim" without our prior written consent, such consent not to be unreasonably withheld.  We shall not be liable for any

admission, assumption, settlement offer or agreement, stipulation, or "claim expenses" to which we have not consented.

D.  We shall have the right to associate ourself in the defense and settlement of any "claim" that appears reasonably likely to involve this Coverage Part.  We may make any investigation we deem appropriate in connection with any "claim".  We may, with the written consent of the "insureds", settle any "claim" for a monetary amount that we deem reasonable.

E.  The "insureds" shall give to us all information and cooperation as we may reasonably request.  However, if we are, in our sole discretion, able to determine coverage for cooperating "insureds", the failure of one "insured person" to cooperate with us shall not impact coverage provided to cooperating "insureds".

F.  With respect to a covered "claim" for which we do not have the duty to defend, we shall advance "claim expenses" in accordance with Section VIII I. that we believe to be covered under this Coverage Part until a different allocation is negotiated, arbitrated or judicially determined.

G.  **Required Notice to Us**

As a condition precedent to coverage under this Coverage Part, the "insureds" shall give us written notice of any "claim" as soon as practicable after a "notice manager" becomes aware of such "claim", but in no event later than:

1.  if this Coverage Part expires or is otherwise terminated without being renewed with us, ninety (90) days after the effective date of said expiration or termination; or

2.  subject to **SECTION V**, the expiration of the Extended Reporting Period, if applicable;

provided, however, that if the Coverage Part is cancelled for non-payment of premium, the "insured" will give us written notice of such "claim", prior to the effective date of cancellation.

However, with regard to any "employment practices claim" which is brought as a formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document, as a condition precedent to coverage under this Coverage Part the

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

"insureds" shall give us written notice of any "claim" as soon as practicable after a "notice manager" becomes aware of such "claim", but in no event later than:

3. if this Coverage Part is renewed, no more than 180 days after a "notice manager" becomes aware of such "claim"; or

4. if this Coverage Part expires or is otherwise terminated without being renewed with us, ninety (90) days after the effective date of said expiration or termination; or

5. subject to **SECTION V**, the expiration of the Extended Reporting Period, if applicable;

provided, if the Coverage Part is cancelled for non-payment of premium, the "insured" will give us written notice of such "claim", prior to the effective date of cancellation.

H. **Subrogation**

1. We shall be subrogated to all of the "insureds'" rights of recovery regarding any payment of "loss" by us under this Coverage Part. The "insureds" shall execute all papers required and do everything necessary to secure and preserve such rights, including the execution of any documents necessary to enable us to effectively bring suit in the name of the "insureds". The "insureds" shall do nothing to prejudice our position or any potential or actual rights of recovery.

2. We shall not exercise our rights of subrogation against an "insured person" under this Coverage Part unless such "insured person" has:

   a. obtained any personal profit, remuneration or advantage to which such "insured person" was not legally entitled, or

   b. committed a criminal or deliberately fraudulent act or omission or any willful violation of law,

   if a judgment or other final adjudication establishes such personal profit, remuneration, advantage, act, omission, or violation.

I. **Allocation**

Where "insureds" who are afforded coverage for a "claim" incur an amount consisting of both "loss" that is covered by this Coverage Part and also loss that is not covered by this Coverage Part, because such "claim" includes both covered and uncovered matters, then coverage shall apply as follows:

1. with respect to a covered "claim" for which we have the duty to defend:

   a. 100% of the "insured's" "claim expenses" shall be allocated to covered "loss"; and

   b. All other "loss" shall be allocated between covered "loss" and non-covered "loss" based upon the relative legal exposure of all parties to such matters.

2. with respect to a covered "claim" for which we do not have the duty to defend, all "loss" shall be allocated between covered "loss" and non-covered loss based upon the relative legal exposure of all parties to such matters.

**SECTION IX - CONDITIONS**

A. **Coverage Part Priority; Headings**

If any provision in this Coverage Part is inconsistent or in conflict with the terms and conditions of any provisions in this Policy, the terms and conditions of this Coverage Part shall control only for purposes of determining coverage hereunder. The headings of the various sections of this Coverage Part are intended for reference only and shall not be part of the terms and conditions of coverage.

B. **Notice Addresses**

1. All notices to the "insureds" shall be sent to the first "named insured" at the address specified in the Declarations.

2. All notices to us shall be sent to the address specified in the Declarations. Any such notice shall be effective upon receipt by us at such address.

C. **Spousal/Domestic Partner Liability Coverage**

Coverage shall apply to the lawful spouse or "domestic partner" of an "insured person" for a "claim" made against such spouse or "domestic partner", provided that:

1. such "claim" arises solely out of:

   a. such person's status as the spouse or "domestic partner" of an "insured person"; or

   b. such spouse or "domestic partner's" ownership of property sought as recovery for a "wrongful act";

2. the "insured person" is named in such "claim" together with the spouse or "domestic partner"; and

3. coverage of the spouse or "domestic partner" shall be on the same terms and conditions, including any applicable

EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

Deductible , that applies to coverage of the "insured person" for such "claim".

No coverage shall apply to any "claim" for a "wrongful act" of such spouse or "domestic partner".

### D. Estates and Legal Representatives

In the event of the death, incapacity or bankruptcy of an "insured person", any "claim" made against the estate, heirs, legal representatives or assigns of such "insured person" for a "wrongful act" of such "insured person" shall be deemed to be a "claim" made against such "insured person". No coverage shall apply to any "claim" for a "wrongful act" of such estate, heirs, legal representatives or assigns.

### E. Minimum Standards

In the event that there is an inconsistency between:

1. the terms and conditions that are required to meet minimum standards of a state's law (pursuant to a state amendatory endorsement attached to this Coverage Part ), and

2. any other term or condition of this Coverage Part,

it is understood and agreed that, where permitted by law, we shall apply those terms and conditions of **1.** or **2.** above that are more favorable to the "insured".

### F. Other Insurance

1. The coverage provided under this Coverage Part for any "employment practices claim" shall be primary.

2. Notwithstanding the above, the coverage provided under this Coverage Part for any "employment practices claim" made against a temporary, leased or loaned "employee" or an "independent contractor" shall be excess of the amount of any deductible, retention and limits of liability under any other policy or policies applicable to such "claim", whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number.

### G. Interrelationship of Claims

All "claims" based upon, arising from or in any way related to the same "wrongful act" or "interrelated wrongful acts" shall be deemed to be a single "claim" for all purposes under this Coverage Part  first made on the earliest date that:

1. any of such "claims" was first made, regardless of whether such date is before or during the "policy period";

2. notice of any "wrongful act" described above was given to us under this Coverage Part pursuant to Sections IV or VIII; or

3. notice of any "wrongful act" described above was given under any prior insurance policy.

### H. Deductible Waiver

Regarding a "claim" that is a class action civil proceeding, no Deductible shall apply to "claim expenses" incurred in connection with such "claim", and we shall reimburse the "insureds" for any covered "claim expenses" paid by the "insureds" within the Deductible otherwise applicable to such "claim", if a:

1. final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

2. complete and final settlement with prejudice;

establishes that none of the "insureds" in such "claim" are liable for any "loss".

### I. Application

1. The "insureds" represent that the Declarations and statements contained in the "application" are true, accurate and complete. This Coverage Part is issued in reliance upon the "application".

2. If the "application" contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by us no coverage shall be afforded under this Coverage Part for any "insureds" who knew on the Effective Date of this Coverage Part of the facts that were so misrepresented, provided that:

   a. knowledge possessed by any "insured person" shall not be imputed to any other "insured person"; and

   b. knowledge possessed by any of your chief executive officer, general counsel, chief financial officer, human resources director or any position equivalent to the foregoing of the "named insured", or anyone signing the "application", shall be imputed to all "insured entities". No other person's knowledge shall be imputed to an "insured entity".

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

J.  **Changes in Exposure**

1.  **Acquisitions or Created Subsidiaries**

    If, before or during the "policy period", any "insured entity" acquires or creates a "subsidiary", then such acquired or created entity and its subsidiaries, and any natural persons that would qualify as "insured persons" thereof, shall be "insureds" to the extent such entities and persons would otherwise qualify as "insureds" under this Coverage Part,, but only for "wrongful acts" occurring after such acquisition or creation. No coverage shall be available for any "wrongful act" of such "insureds" occurring before such acquisition or creation, or for any "interrelated wrongful acts" thereto.

    However, if the fair value of the assets of any such acquired or created entity exceed 25% of the total assets of the "named insured" as reflected in its most recent consolidated financial statements prior to such acquisition or creation, then, as a condition precedent to coverage hereunder, the "insureds" shall give us written notice and full, written details of the acquisition or creation as soon as practicable (but, in all cases, within ninety (90) days of such acquisition or creation). There shall be no coverage under any renewal or replacement of this Coverage Part for any such new "subsidiary" and its subsidiaries, and any natural persons that would qualify as "insured persons" thereof, unless the "insureds" comply with the terms of this provision.

2.  **Mergers**

    If, before or during the "policy period", any "insured entity" merges with another entity such that the "insured entity" is the surviving entity, then such merged entity and its subsidiaries, and any natural persons that would qualify as "insured persons" thereof, shall be "insureds" to the extent such entities and persons would otherwise qualify as "insureds" under this Coverage Part, but only for "wrongful acts" occurring after such merger. No coverage shall be available for any "wrongful act" of such "insureds" occurring before such merger or for any "interrelated wrongful acts" thereto.

    However, if the fair value of the assets of any newly merged entity exceed 25% of the total assets of the "named insured" as reflected in its most recent consolidated financial statements prior to such merger,

    then, as a condition precedent to coverage hereunder, the "insureds" shall give us written notice and full, written details of the merger as soon as practicable (but, in all cases, within ninety (90) days of such merger). There shall be no coverage under any renewal or replacement of this Coverage Part for any newly merged entity or any of its subsidiaries, and any natural persons that would qualify as "insured persons" thereof, unless the "insureds" comply with the terms of this provision.

3.  **Takeover of Named Insured**

    If, before or during the "policy period":

    a.  the "named insured" merges into or consolidates with another entity such that the "named insured" is not the surviving entity; or

    b.  more than 50% of the securities representing the right to vote for the "named insured's" board of directors or managers is acquired by another person or entity, group of persons or entities, or persons and entities acting in concert,

    then coverage shall continue under this Coverage Part, but only for "wrongful acts" occurring before any such transaction. No coverage shall be available for any "wrongful act" occurring after such transaction. Upon such transaction, this Coverage Part shall not be cancelled and the entire premium for this Coverage Part shall be deemed fully earned. The "insured" shall give us written notice and full, written details of such transaction as soon as practicable (but, in all cases, within ninety (90) days of such transaction). If any transaction described herein occurs, then we will not be obligated to offer any renewal or replacement of this Coverage Part.

4.  **Loss of Subsidiary Status**

    If, before or during the "policy period", any entity ceases to be a "subsidiary", then coverage shall be available under this Coverage Part for such "subsidiary" and its "insured persons", but only for a "wrongful act" of such "insureds" occurring before such transaction. No coverage shall be available for any "wrongful act" of such "insureds" occurring after such transaction.

K.  **References To Laws**

1.  Wherever this Coverage Part mentions any law, including, without limitation, any statute, Act or Code of the United States,

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

such mention shall be deemed to include all amendments of, and all rules or regulations promulgated under, such law.

2. Wherever this Coverage Part mentions any law or laws, including, without limitation, any statute, Act or Code of the United States, and such mention is followed by the phrase "or any similar law", such phrase shall be deemed to include all similar laws of all jurisdictions throughout the world, including, without limitation, statutes and any rules or regulations promulgated under such statutes as well as common law.

**L.  Action Against Us**

1. No action shall be taken against us unless there shall have been full compliance with all the terms and conditions of this Coverage Part.

2. No person or organization shall have any right under this Coverage Part to join us as a party to any "claim" against the "insureds" nor shall we be impleaded by the "insureds" in any such "claim".

**M.  Entire Agreement**

This Coverage Part, the "application" and any written endorsements attached hereto, along with the Declarations constitute the entire agreement between you and us relating to this Coverage Part's insurance.

**N.  Bankruptcy or Insolvency**

Bankruptcy or insolvency of any "insureds" shall not relieve us of any of our obligations under this Coverage Part.

**O.  Authorization of First Named Insured**

The first "named insured" shall act on behalf of all "Insureds" with respect to all matters under this Coverage Part, including, without limitation, giving and receiving of notices regarding "claims", cancellation, election of the Extended Reporting Period, payment of premiums, receipt of any return premiums, and acceptance of any endorsements to this Coverage Part.

**P.  When We Do Not Renew**

1. If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date.

2. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. Any state amendatory endorsement changing Nonrenewal Conditions for any part of this policy shall also apply to this Coverage Part.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# RETROACTIVE DATE ENDORSEMENT - EMPLOYMENT PRACTICES LIABILITY

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

I.  **SECTION I - INSURING AGREEMENT** of this Coverage Part is amended to include the following:

This Coverage Part applies only to "claims" for "wrongful acts" that occurred on or after the "retroactive date" set forth in the Declarations and before the end of the "policy period", regardless of whether such "claim" is made during the "policy period" or the Extended Reporting Period, if applicable.

II.  The following definition is added to **SECTION II - DEFINITIONS** of this Coverage Part:

"Retroactive date" means the date specified in the Declarations.  If no date is specified, the "retroactive date" will be the same as the Effective Date of this Coverage Part.

All other terms and conditions of this Coverage Part remain unchanged.

© 2014, The Hartford



# U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States. **Please read this Notice carefully.**

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States. OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction. OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific. Collectively, such individuals and companies are called "Specially Designated Nationals and Blocked Persons" or "SDNs". Their assets are blocked and U.S. persons are generally prohibited from dealing with them. This list can be located on OFAC's web site at – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.



THE
HARTFORD

**Named Insured**:    HUMA BEAUTY SALON,LLC

**Policy Number**:    ███████████

**Effective Date**:    12/17/15                    **Expiration Date**:    12/17/16

**Company Name**:    SENTINEL INSURANCE COMPANY, LIMITED

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions remain unchanged.



Select Customer Insurance Center

301 WOODS PARK DRIVE

CLINTON                         NY 13323
Policyholder, please call us at: (866) 467-8730

Agent, please call us at: (866) 467-8730
SCIC.NEWHARTFORD@THEHARTFORD.COM

# INSURANCE ENDORSEMENT
# ATTACHED

## *** PLEASE REVIEW THE CHANGE ***

Enclosed is an endorsement for your business insurance policy.  Please review it at your convenience. If you have questions or need to make further changes:

Policyholder, please call us at: (866) 467-8730

Agent, please call us at: (866) 467-8730    between 7 A.M. and 7 P.M. CST .

The premium billing will be mailed to you separately.  You can expect to receive it soon.

Thank you for allowing us to service your business needs.


COMM INSURE LLC/PHS

THE HARTFORD SELECT CUSTOMER INSURANCE CENTER

The Hartford
Hartford Fire Insurance Company and its Affiliates
One Hartford Plaza, Hartford, Connecticut 06155



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGE

This endorsement changes the policy effective on the Inception Date of the policy unless another date is indicated below:

**Policy Number:** ██████████ ██

**Named Insured and Mailing Address;**   HUMA BEAUTY SALON,LLC

                                    777 WASHINGTON RD
                                    PARLIN              NJ  08859

**Policy Change Effective Date:**   08/02/16          **Effective hour is the same as stated in the Declarations Page of the Policy.**

**Policy Change Number:** 002

**Agent Name:** COMM INSURE LLC/PHS
**Code:**       653395

## POLICY CHANGES:
          SENTINEL INSURANCE COMPANY, LIMITED

ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT.IF YOU ARE ENROLLED IN REPETITIVE EFT DRAWS FROM YOUR BANK
ACCOUNT, CHANGES IN PREMIUM WILL CHANGE FUTURE DRAW AMOUNTS.
                    THIS IS NOT A BILL.

RETURN PREMIUM DUE AT POLICY CHANGE EFFECTIVE DATE:          $██00
*INCLUDES RETURN TERRORISM PREMIUM OF:                       $██0

STATE SURCHARGE(S) SHOWN BELOW NOT INCLUDED IN ABOVE TOTALS:
   DATE DUE  08/02/16

          RETURN NJPLGA                                 $██0

MAILING ADDRESS IS CHANGED TO READ:  777 WASHINGTON RD
                                     PARLIN, MIDDLESEX
                                     NJ. 08859

PRO RATA FACTOR: 0.375

THIS ENDORSEMENT DOES NOT CHANGE THE POLICY EXCEPT AS SHOWN.

**Form SS 12 11 04 05 T**         **Page** 001  (CONTINUED ON NEXT PAGE)
**Process Date:** 08/08/16              **Policy Effective Date:** 12/17/15
                                   **Policy Expiration Date:** 12/17/16

# POLICY CHANGE  (Continued)

**Policy Number:** ▮▮▮▮▮▮▮▮

**Policy Change Number:** ▮▮▮

RATES AND PREMIUMS ARE CHANGED.


LOCATION 001 BUILDING 001 IS DELETED

  1191 GREEN ST
  ISELIN, NJ. 08830


  DEDUCTIBLE:   $1,000


  BUSINESS PERSONAL PROPERTY
            LIMIT OF INSURANCE:        ▮▮▮▮▮▮0
            REPLACEMENT COST COVERAGE IS DELETED

  MONEY AND SECURITIES
            LIMIT OF INSURANCE:     $10,000  INSIDE THE PREMISES
                                    $5,000 OUTSIDE THE PREMISES

  PROPERTY OPTIONAL COVERAGES APPLICABLE TO THIS LOCATION:

     STRETCH COVERAGES ARE DELETED:    FORM SS 04 08

     TENANT IMPROVEMENTS AND BETTERMENTS IS DELETED


     LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE IS DELETED: FORM SS 40 93


Form SS 12 11 04 05 T                Page 002
Process Date: 08/08/16                        Policy Effective Date: 12/17/15
                                              Policy Expiration Date: 12/17/16



Select Customer Insurance Center

301 WOODS PARK DRIVE

CLINTON                              NY 13323
Policyholder, please call us at: (866) 467-8730

Agent, please call us at: (866) 467-8730
SCIC.NEWHARTFORD@THEHARTFORD.COM

# INSURANCE ENDORSEMENT
# ATTACHED

## *** PLEASE REVIEW THE CHANGE ***

Enclosed is an endorsement for your business insurance policy. Please review it at your convenience. If you have questions or need to make further changes:

Policyholder, please call us at: (866) 467-8730

Agent, please call us at: (866) 467-8730      between 7 A.M. and 7 P.M. CST .

The premium billing will be mailed to you separately. You can expect to receive it soon.

Thank you for allowing us to service your business needs.

COMM INSURE LLC/PHS

THE HARTFORD SELECT CUSTOMER INSURANCE CENTER

The Hartford
Hartford Fire Insurance Company and its Affiliates
One Hartford Plaza, Hartford, Connecticut 06155



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGE

This endorsement changes the policy effective on the Inception Date of the policy unless another date is indicated below:

**Policy Number:** ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓

**Named Insured and Mailing Address;**   HUMA BEAUTY SALON,LLC

                     777 WASHINGTON RD
                     PARLIN                NJ  08859

**Policy Change Effective Date:**   08/07/16        **Effective hour is the same as stated in the Declarations Page of the Policy.**

**Policy Change Number:** 001

**Agent Name:** COMM INSURE LLC/PHS
**Code:**     653395

## POLICY CHANGES:
            SENTINEL INSURANCE COMPANY, LIMITED

ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT.IF YOU ARE ENROLLED IN REPETITIVE EFT DRAWS FROM YOUR BANK
ACCOUNT, CHANGES IN PREMIUM WILL CHANGE FUTURE DRAW AMOUNTS.
                THIS IS NOT A BILL.

NO PREMIUM DUE AS OF POLICY CHANGE EFFECTIVE DATE

MAILING ADDRESS IS CHANGED TO READ:   777 WASHINGTON RD
                       PARLIN, MIDDLESEX
                       NJ. 08859

PRO RATA FACTOR: 1.000

THIS ENDORSEMENT DOES NOT CHANGE THE POLICY EXCEPT AS SHOWN.

**Form SS 12 11 04 05 T**              **Page** 001
**Process Date:** 08/08/16                      **Policy Effective Date:** 12/17/15
                                  **Policy Expiration Date:** 12/17/16

# SPECIAL PROPERTY COVERAGE FORM

© 2005, The Hartford

# QUICK REFERENCE

### SPECIAL PROPERTY COVERAGE FORM
### READ YOUR POLICY CAREFULLY

**SPECIAL PROPERTY COVERAGE FORM**                          **Beginning on Page**

**A.    COVERAGES**                                              **1**

      Covered Property                                          **1**
      Property Not Covered                                      **1**
      Covered Causes of Loss                                    **2**
      Limitations                                               **2**
      Additional Coverages                                      **3**
      Coverage Extensions                                      **13**

**B.    EXCLUSIONS**                                            **16**

**C.    LIMITS OF INSURANCE**                                   **18**

**D.    DEDUCTIBLES**                                           **19**

**E.    PROPERTY LOSS CONDITIONS**                              **19**

      Abandonment                                              **20**
      Appraisal                                                **20**
      Duties in the Event of Loss or Damage                    **20**
      Legal Action Against Us                                  **20**
      Loss Payment                                             **20**
      Recovered Property                                       **22**
      Resumption of Operations                                 **22**
      Vacancy                                                  **22**

**F.    PROPERTY GENERAL CONDITIONS**                           **23**

      Control of Property                                      **23**
      Mortgage Holders                                         **23**
      No Benefit to Bailee                                     **24**
      Policy Period, Coverage Territory                        **24**

**G.    PROPERTY DEFINITIONS**                                  **24**

Form SS 00 07 07 05



# SPECIAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to the SECTION G - PROPERTY DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.

1. **Covered Property**

   Covered Property as used in this policy, means the following types of property for which a Limit of Insurance is shown in the Declarations:

   a. **Buildings,** meaning only building(s) and structure(s) described in the Declarations, including:

      (1) Completed additions;

      (2) Permanently installed:

         (a) Fixtures;

         (b) Machinery; and

         (c) Equipment;

      (3) Outdoor fixtures;

      (4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

      (5) Building Glass, meaning glass that is part of a building or structure;

      (6) Personal property owned by you that is used to maintain or service the buildings or structures on the premises, including:

         (a) Fire extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings; and

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering; and

      (7) If not covered by other insurance:

         (a) Additions under construction, alterations and repairs to the buildings or structures;

         (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "scheduled premises", used for making additions, alterations or repairs to the buildings or structures.

   b. **Business Personal Property** located in or on the building(s) described in the Declarations at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", including:

      (1) Property you own that is used in your business;

      (2) Tools and equipment owned by your employees, which are used in your business operations;

      (3) Property of others that is in your care, custody or control;

      (4) "Tenant Improvements and Betterments"; and

      (5) Leased personal property for which you have contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

2. **Property Not Covered**

   Covered Property does not include:

   a. Aircraft, automobiles, motor trucks and other vehicles subject to motor vehicle registration;

   b. Automobiles held for sale;

   c. "Money", bullion, numismatic and philatelic property and bank notes or "securities" except as provided in any Additional Coverages or Optional Coverages. Lottery tickets held for sale and postage stamps in current use and having face value are not "securities".

   d. Contraband, or property in the course of illegal transportation or trade;

e. Land (including land on which the property is located), water, growing crops or lawns;

f. Outdoor fences, radio or television antennas (including satellite dishes), including their lead in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than those held for sale or sold but not delivered), except as any of these may be provided in the:

   (1) Outdoor Property Coverage Extension; or

   (2) Outdoor Signs Optional Coverage;

g. Watercraft (including motors, equipment and accessories) while afloat;

h. The cost to research, replace or restore the information on "valuable papers and records", except as may be provided in any Coverage Extensions or Optional Coverages.

i. "Data" and "software" which exists on electronic "media" including the cost to research, replace or restore them, except as may be provided for in any Additional Coverages or Optional Coverages.

j. Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided for in this policy.

3. **Covered Causes of Loss**

   RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

   a. Excluded in Section **B., EXCLUSIONS;** or

   b. Limited in Paragraph **A.4.** Limitations; that follow.

4. **Limitations**

   a. We will not pay for direct loss of or damage to:

   (1) Property that is missing, where the only evidence of the direct physical loss or physical damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Additional Coverage for "Money" and "Securities".

   (2) Property that has been transferred to a person or to a place outside the "scheduled premises" on the basis of unauthorized instructions.

   (3) The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (a) The building or structure first sustains physical damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (b) The direct physical loss or physical damage is caused by or results from thawing of snow, sleet, or ice on the building or structure.

   b. Pets and animals are covered only if:

   (1) They are inside the building; and

   (2) They are owned by others and boarded by you, or owned by you and held for sale or sold but not delivered.

   And then we will pay only if they are killed, stolen, or their destruction is made necessary by a "specified cause of loss".

   c. For direct physical loss or physical damage by "theft", the following types of property are covered only up to the limits shown:

   (1) $2,500 for furs, fur garments and garments trimmed with fur;

   (2) $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $500 or less per item;

   (3) $2,500 for patterns, dies, molds and forms; and

   (4) $500 for stamps, lottery tickets held for sale and letters of credit.

   d. Unless specifically provided under a separate endorsement and with a specific Limit of Insurance indicated in the Declarations, we will not pay for direct physical loss of or physical damage to "perishable stock" caused by or resulting from:

   (1) A change in temperature or humidity resulting from:

      (a) Mechanical breakdown or failure of:

         (i) Stationary heating plants; or

         (ii) Refrigerating, cooling, or humidity control apparatus or equipment;

      (b) Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires; or

      (c) Complete or partial failure of electric power on your "scheduled premises".

   (2) Contamination by refrigerant.

**5. Additional Coverages**

**a. Collapse**

(1) With respect to Buildings:

(a) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building cannot be occupied for its intended purpose;

(b) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

(c) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

(d) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

(2) We will pay for direct physical loss or physical damage caused by or resulting from risks of collapse of a building or any part of a building that is insured by this policy caused only by one or more of the following:

(a) "Specified cause of loss" or breakage of building glass, if such loss or breakage was covered by this policy;

(b) Decay that is hidden from view, unless the presence of such decay was known to an insured prior to collapse;

(c) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

(d) Weight of people or personal property;

(e) Weight of rain that collects on a roof; and

(f) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

The criteria set forth in Paragraphs **(1)(a)** through **(1)(d)** do not limit the coverage otherwise provided under this Additional Coverage for the Causes of Loss listed in Paragraph **(2)(a)**, **(2)(d)**, and **(2)(e)**.

(3) If the collapse is caused by a Covered Cause of Loss listed in Paragraphs **(2)(b)** through **(2)(f)**, we will pay for direct physical loss of or physical damage to the property listed below, but only if such physical loss or physical damage is a direct result of the collapse of a building insured under this policy, and the property is property covered under this policy:

(a) Awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

(4) If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if

(a) The collapse was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(f)** of this Additional Coverage;

(b) The personal property which collapses is inside a building; and

(c) The property which collapses is not of a kind listed in Paragraph **(3)** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(4)** does not apply to personal property if marring or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(5) This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this policy.

**b. Debris Removal**

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

    (a) The date of direct physical loss or physical damage; or

    (b) The end of the policy period.

(2) The most we will pay under this additional Coverage is 25% of the amount we pay for the direct loss of or physical damage to Covered Property plus the deductible in this policy applicable to that physical loss or physical damage.

But this limitation does not apply to any additional Debris Removal limit provided in the Limits of Insurance section.

(3) This Additional Coverage does not apply to costs to:

    (a) Extract "pollutants and contaminants" from land; or

    (b) Remove, restore or replace polluted or contaminated land or water.

**c. Equipment Breakdown**

(1) We will pay for direct physical loss or physical damage caused by or resulting from an Equipment Breakdown Accident to Equipment Breakdown Property.

Equipment Breakdown Accident means:

    (a) Mechanical breakdown, including rupture or bursting caused by centrifugal force.

    (b) Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.

    (c) Explosion of steam boilers, steam piping, steam engines or steam turbines owned or leased by you, or operated under your control.

    (d) Physical loss or physical damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such boilers or equipment.

    (e) Physical loss or physical damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

Equipment Breakdown Property means Covered Property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy.

The following is not Equipment Breakdown Property:

(a) Any structure, foundation, cabinet, compartment or air supported structure building;

(b) Any insulating or refractory material;

(c) Any sewer piping, any underground vessels or piping, any piping forming a part of a sprinkler system, water piping other than boiler feed water piping, boiler condensate return piping, or water piping forming a part of a refrigerating or air conditioning system;

(d) Any vehicle or any equipment mounted on a vehicle. As used here, vehicle means any machine or apparatus that is used for transportation or moves under its own power. Vehicle includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester. However, any property that is stationary, permanently installed at a "scheduled premises" and that receives electrical power from an external power source will not be considered a vehicle.

(e) Any equipment manufactured by you for sale.

(2) **Coverage Extensions**

The following coverage extensions apply only to direct physical loss or physical damage caused by or resulting from an Equipment Breakdown Accident:

**(a) Hazardous Substances**

We will pay in any one occurrence for the additional cost, not to exceed $50,000, to repair or replace Covered Property because of contamination by a hazardous substance. This includes the expenses to clean up or dispose of such property. Hazardous substance means any substance that is hazardous to human health or that has been declared by a government agency to be hazardous to human health.

Additional cost in this extension means those beyond what would have been required had no hazardous substance been involved.

This limit is part of and not in addition to the Limits of Insurance for Covered Property.

**(b) Expediting Expenses**

With respect to your damaged Covered Property, we will pay in any one occurrence, up to $50,000, for the reasonable and necessary additional expenses you incur to:

**(i)** Make temporary repairs; or

**(ii)** Expedite permanent repairs or permanent replacement.

**(c) Defense**

If a claim or "suit" is brought against you alleging that you are liable for damage to property of another in your care, custody or control directly caused by Equipment Breakdown we will either:

**(i)** Settle the claim or "suit"; or

**(ii)** Defend you against the claim or "suit," but keep for ourselves the right to settle it at any point.

**(d) Supplementary Payments**

We will pay, with respect to any claim or "suit" we defend:

**(i)** All expenses we incur;

**(ii)** The cost of bonds to release attachments, but only for bond

amounts within the Limit of Insurance. We do not have to furnish these bonds;

**(iii)** All reasonable expenses incurred by you at our request to assist us in the investigation or defense of the claim or "suit" including actual loss of earnings up to $100 a day because of time off from work;

**(iv)** All costs taxed against you in any "suit" we defend;

**(v)** Prejudgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; and

**(vi)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the Limit of Insurance shown in the Declarations.

These payments will not reduce the Limit of Insurance shown in the Declarations.

**(e) Business Income and Extra Expense Extension**

The Business Income and Extra Expense Additional Coverages are extended to provide coverage for a tenant who has a loss of income from the lack of heating, cooling or power as a result of equipment breakdown to mechanical, electrical or pressure equipment of the building owner.

**(f)** If Equipment Breakdown Property requires replacement due to an Equipment Breakdown Accident, we will pay your additional cost to replace it with equipment that is better for the environment, safer or more efficient than the equipment being replaced. However, we will not pay more than 125% of what the cost would have been to repair or replace with property of

comparable material and quality. This coverage does not increase any of the applicable limits. This coverage does not apply to any property indicated as being valued on an Actual Cash Value basis.

If you wish to retrofit air conditioning or refrigeration equipment that utilizes a refrigerant containing CFC (chlorofluorocarbon) substances to accept a non-CFC refrigerant or replace the system with a system using a non-CFC refrigerant, we will consider this better for the environment. Any associated Business Income or Extra Expense will be included in determining the additional cost, if Business Income and Extra Expense apply to this policy.

**(3) Additional Condition - Bankruptcy**

The bankruptcy or insolvency of you or your estate will not relieve us of any obligation under this Additional Coverage.

**(4) Jurisdictional Inspections:**

If any boiler or pressure vessel requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

**d. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 in any one occurrence for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**e. Fire Extinguisher Recharge**

We will pay to cover your expenses for recharge of your hand fire extinguishers when they are emptied while fighting fire.

**f. Forgery**

**(1)** We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or similar written promises, orders or directions to pay a sum certain in "money" that you or your

agent has issued, or that was issued by someone who impersonates you or your agent. This includes written instruments required in conjunction with any credit, debit, or charge card issued to you or any "employee" for business purposes.

**(2)** If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the "suit", we will pay for any reasonable expenses that you incur and pay in that defense.

**(3)** We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(a)** Money orders, including counterfeit money orders, of any United States or Canadian post office, express company or national or state (or Canadian) chartered bank that are not paid upon presentation; and

**(b)** Counterfeit United States or Canadian paper currency.

**(4)** The most we will pay in any one occurrence, including legal expenses, under this Additional Coverage is $5,000, unless a higher Limit of Insurance is shown in the Declarations.

**g. Glass Expense**

We will pay for necessary expenses incurred to:

**(1)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(2)** Repair or replace encasing frames; and

**(3)** Remove or replace obstructions when repairing or replacing glass that is part of a building.

This does not include removing or replacing window displays.

**h. Lock and Key Replacement**

We will pay up to $1,000 in any one occurrence for the re-keying of locks or the repair or replacement of locks at "scheduled premises" following the theft or the attempted theft of keys by burglars.

**i. Money and Securities**

**(1)** We will pay for loss of "money" and "securities" used in your business while

at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the "scheduled premises", or in transit between any of these places, resulting directly from:

    **(a)** "Theft";

    **(b)** Disappearance; or

    **(c)** Destruction.

**(2)** In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

    **(a)** Resulting from accounting or arithmetical errors or omissions;

    **(b)** Due to the giving or surrendering of property in any exchange or purchase; or

    **(c)** Of property contained in any "money"-operated device unless a continuous recording instrument in the device records the amount of "money" deposited in the "money"-operated device.

**(3)** The most we will pay for loss in any one occurrence is:

    **(a)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

        **(i)** In or on the "scheduled premises"; or

        **(ii)** Within a bank or savings institution; and

    **(b)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

**(4)** All loss:

    **(a)** Caused by one or more persons; or

    **(b)** Involving a single act or series of related acts;

is considered one occurrence.

**(5)** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**j.** **Ordinance or Law**

**(1)** If a Covered Cause of Loss occurs to covered Building property, we will pay on a "scheduled premises" any of the following costs that are caused by enforcement of an ordinance or law:

**Undamaged Part**

    **(a)** For loss to the undamaged portion of the Building that requires the demolition of parts of the same property not damaged by a Covered Cause of Loss provided that any such ordinance or law resulting in this type of loss:

        **(i)** Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the "scheduled premises"; and

        **(ii)** Is in force at the time of the loss.

    The most we will pay in any one occurrence for this coverage is $25,000 as a Limit of Insurance.

**Demolition Cost**

    **(b)** The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of a building, zoning or land use ordinance or law.

    The most we will pay in any one occurrence for this coverage is $25,000 as a Limit of Insurance.

**Increased Cost of Construction**

    **(c)** The increased cost to repair, rebuild or reconstruct the covered property, caused by enforcement of a building, zoning or land use ordinance or law.

    The most we will pay in any one occurrence for this coverage is $25,000 as a Limit of Insurance.

**"Tenants Improvements and Betterment"**

    **(d)** The increased cost to repair, rebuild or reconstruct "tenant's improvements and betterments" caused by enforcement of building, zoning or land use ordinance or law.

    The most we will pay in any one occurrence for this coverage is $25,000 as a Limit of Insurance.

**(2)** **Additional Exclusions**

We will not pay under this Additional Coverage for:

    **(a)** The enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or

remediation of property due to contamination by "pollutants and contaminants" or due to the presence, growth, proliferation, spread of any activity of "fungi", wet or dry rot, bacteria or virus; or

**(b)** The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants or contaminants", "fungi", wet or dry rot, bacteria or virus.

**(c)** Loss caused by, resulting from, contributed to or aggravated by earthquake or volcanic eruption.

**(d)** Loss due to an ordinance or law that:

**(i)** You were required to comply with before the loss even if the building was undamaged; and

**(ii)** You failed to comply with.

**(3) Additional Limitations – Loss to Undamaged Portion of Building**

Subject to the limit stated in Paragraph **A.5.j.(1)(a)**, the insurance provided under this Additional Coverage for loss in value to the undamaged portion of the building is limited as follows:

**(a)** If Replacement Cost applies and the property is repaired or replaced on the same or another premises, we will not pay more for physical loss of or physical damage to designated Building property, including loss caused by enforcement of an ordinance or law, than:

**(i)** The amount you actually spend to repair, rebuild or reconstruct the Building, but not for more than the amount it would cost to restore the Building on the same premises; and

**(ii)** The amount it would cost to restore the undamaged portion to the same height, floor area, style and comparable quality of the original property insured.

**(b)** If the Building(s) Full Value Endorsement applies and the property is repaired or replaced on the same or another premises, we will not pay more for physical loss of or physical damage to designated Building property, including loss caused by enforcement of an ordinance or law, than:

**(i)** The amount you actually spend to repair, rebuild or reconstruct the Building, but not for more than the amount it would cost to restore the Building on the same premises; and

**(ii)** The amount it would cost to restore the undamaged portion to the same height, floor area, style and comparable quality of the original property insured.

**(c)** If Replacement Cost or the Building(s) Full Value Endorsement applies and the property is not repaired or replaced, or if Actual Cash Value applies, then we will not pay more for physical loss of or physical damage to designated Building property, including loss caused by enforcement of an ordinance or law, than the lesser of:

**(i)** The Actual Cash Value of the Building at the time of loss; or

**(ii)** The Limit of Insurance applicable to the covered Building property stated in Paragraph **A.5.j.(1)(a)**.

**(4) Additional Limitation – Demolition Cost**

We will not pay more than the lesser of:

**(a)** The amount actually spent to demolish and clear the site of the "scheduled premises"; or

**(b)** The applicable Demolition Cost Limit of Insurance as stated in Paragraph **A.5.j.(1)(b)**.

**(5) Additional Limitation – Increased Cost of Construction**

The insurance provided under this Additional Coverage for increased cost of construction is limited as follows:

**(a)** We will not pay:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacements are made as soon as reasonably possible after the physical loss or physical damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the Building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay is the lesser of:

(i) The increased cost of construction at the same premises; or

(ii) The applicable Increased Cost of Construction Limit of Insurance stated in Paragraph **A.5.j.(1)(c)**.

(c) If the ordinance or law requires relocation to another premises, the most we will pay is the lesser of:

(i) The Increased Cost of Construction at the new premises; or

(ii) The applicable Increased Cost of Construction Limit of Insurance stated in Paragraph **A.5.j.(1)(c)**.

k. **"Pollutants and Contaminants" Clean Up and Removal**

We will pay your expense to extract "pollutants and contaminants" from land or water at the "scheduled premises" if the discharge, dispersal, seepage, migration, release or escape of the "pollutants and contaminants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(1) The date of direct physical loss or physical damage; or

(2) The end of the policy period.

The most we will pay in any one occurrence for each location under this Additional Coverage is $15,000 for the sum of all such expenses arising out of Covered Causes of Loss.

l. **Preservation of Property**

If it is necessary to move Covered Property from the "scheduled premises" to preserve it from direct physical loss or physical damage by a Covered Cause of Loss, we will pay for any direct physical loss of or physical damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the direct physical loss or physical damage occurs within 45 days after the property is first moved.

m. **Theft Damage to Building**

This Additional Coverage applies only to premises where you are a tenant and are responsible in the lease for physical loss or physical damage to the building you lease, rent, or occupy that is caused by or results from "theft", burglary or robbery.

We will pay for direct physical loss or physical damage directly resulting from "theft", burglary or robbery (except loss by fire or explosion) to a building:

(1) You occupy, including personal property that is used to maintain or service the building; or

(2) Containing covered personal property if you are legally liable for such physical loss or physical damage.

But we will not pay for such physical loss of or physical damage to property that is away from the "scheduled premises".

n. **Water Damage, Other Liquid, Powder or Molten Material Damage**

If direct physical loss or physical damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the direct physical loss or physical damage except as provided in paragraph **A.5.c., Equipment Breakdown** of this coverage form. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

**o. Business Income**

(1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

(2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the "scheduled premises" are located, your "scheduled premises" also means:

    (a) The portion of the building which you rent, lease or occupy; and

    (b) Any area within the building or on the site at which the "scheduled premises" are located, but only if that area services, or is used to gain access to, the "scheduled premises".

(3) We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or physical damage.

This Additional Coverage is not subject to the Limits of Insurance.

(4) Business Income means the:

    (a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and

    (b) Continuing normal operating expenses incurred, including payroll.

(5) With respect to the coverage provided in this Additional Coverage, suspension means:

    (a) The partial slowdown or complete cessation of your business activities; or

    (b) That part or all of the "scheduled premises" is rendered untentantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy.

**p. Extra Expense**

(1) We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

(2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the "scheduled premises" are located, your "scheduled premises" also means:

    (a) The portion of the building which you rent, lease or occupy; and

    (b) Any area within the building or on the site at which the "scheduled premises" are located, but only if that area services, or is used to gain access to, the "scheduled premises".

(3) Extra Expense means expense incurred:

    (a) To avoid or minimize the suspension of business and to continue "operations":

      (i) At the "scheduled premises"; or

      (ii) At replacement premises or at temporary locations, including:

        (aa) Relocation expenses; and

        (bb) Cost to equip and operate the replacement or temporary location, other than those costs necessary to repair or to replace damaged stock and equipment.

    (b) To minimize the suspension of business if you cannot continue "operations".

    (c) (i) To repair or replace any property; or

(ii) To research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **o.**, Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or physical damage. This Additional Coverage is not subject to the Limits of Insurance.

**(4)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That part or all of the "scheduled premises" is rendered untentantable as a result of a Covered Cause of Loss if coverage for Extra Expense applies to the policy.

**(5) Limitation**

This Extra Expense Coverage does not apply to:

**(a)** Any deficiencies in insuring building or business personal property; or

**(b)** Any expense related to any recall of products you manufacture, handle or distribute.

**q. Civil Authority**

**(1)** This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

**(2)** The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:

**(a)** When access is permitted to your "scheduled premises"; or

**(b)** 30 consecutive days after the order of the civil authority.

**r. Extended Business Income**

**(1)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

(i) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(ii) 30 consecutive days after the date determined in **(1)(a)** above.

Loss of Business Income must be caused by direct physical loss or physical damage at the "scheduled premises" caused by or resulting from a Covered Cause of Loss.

**(2)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; and

**(b)** That a part or all of the "scheduled premises" is rendered untenantable as a result of a Covered Cause of Loss.

**s. Business Income from Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss.

The most we will pay under this Additional Coverage is $5,000 in any one occurrence unless a higher Limit of Insurance is indicated in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)** Dependent Property means property owned, leased or operated by others whom you depend on to:

**(a)** Deliver materials or services to you or to others for your account. But services do not include:

**(i)** Water, communication, power services or any other utility services; or

**(ii)** Any type of web site, or Internet service.

**(b)** Accept your products or services;

**(c)** Manufacture your products for delivery to your customers under contract for sale; or

**(d)** Attract customers to your business premises.

The dependent property must be located in the coverage territory of this policy.

**(5)** The coverage period for Business Income under this Additional Coverage:

**(a)** Begins 72 hours after the time of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the premises of the dependent property; and

**(b)** Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(6)** The Business Income coverage period, as stated in Paragraph **(5)**, does not include any increased period required due to the enforcement of any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects "pollutants."

**(7)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**t.    Tenant Glass**

This Additional Coverage applies only to premises where you are a tenant and are responsible in the lease for such damage.

We will cover loss to glass, which is in your care, custody or control and for which the lease holds you responsible. The glass must be part of a building described in the Declarations or at a location that would be included in Coverage Extension **b.** Newly Acquired or Constructed Property.

The most that we will pay in any one occurrence for each location under this Additional Coverage is $25,000.

**u.    Leasehold Improvements**

If your lease is cancelled in accordance with a valid lease provision as the direct result of a Covered Cause of Loss to property at the location in which you are a tenant, and you cannot legally remove "Tenant Improvements and Betterments", we will extend Business Personal Property coverage to apply to the unamortized value of "Tenants Improvement and Betterment" that remain and that you were forced to abandon.

The most we will pay in any one occurrence for loss under this Additional Coverage is $25,000.

**v.    Lease Assessment**

Your Business Personal Property is extended to apply to your share of any assessment charged to all tenants by the building owner as a result of direct physical damage caused by or resulting from a Covered Cause of Loss to building property you occupy as agreed to in your written lease agreement.

We will pay no more than $2,500 in any one occurrence for this Additional Coverage.

6. **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises". All Coverage Extensions are subject to the terms, conditions and exclusions of this policy, except as otherwise provided.

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as follows:

a. **Accounts Receivable**

(1) You may extend the insurance that applies to your Business Personal Property, to apply to your accounts receivable.

We will pay for:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the physical loss or physical damage; and

(d) Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss of or physical damage to your records of accounts receivable.

(2) Paragraph **A.3.**, Covered Causes of Loss, and Section **B.**, Exclusions, do not apply to this Additional Coverage except for:

(a) Paragraph **B.1.b.**, Governmental Action;

(b) Paragraph **B.1.c.**, Nuclear Hazard; and

(c) Paragraph **B.1.e.**, War and Military Action.

(3) Additional Exclusions

(a) Dishonest acts by you, anyone else with an interest in the records of accounts receivable, or your or their employees or authorized

representatives, or anyone entrusted with the records of accounts receivable, whether or not acting alone or in collusion with other persons or occurring during the hours of employment.

This exclusion does not apply to a carrier for hire.

(b) Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money," "securities," or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(c) Bookkeeping, accounting or billing errors or omissions.

(d) Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct physical loss or physical damage caused by Lightning.

(e) Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(f) Unauthorized instructions to transfer property to any person or to any place.

(4) We will not pay for direct physical loss or physical damage that requires an audit of records or any inventory computation to prove its factual existence.

(5) The most we will pay in any one occurrence for direct physical loss of or physical damage to your accounts receivable at each "scheduled premises" is $25,000.

(6) The most we will pay in any one occurrence for direct physical loss of or physical damage to accounts receivables away from the "scheduled premises", including while in transit, is $25,000.

b. **Arson and "Theft" Reward**

(1) In the event that a covered fire loss was the result of an act of arson, we will reimburse you for rewards you pay for information leading to convictions for that act of arson.

**(2)** In the event of a covered "theft" loss, we will reimburse you for rewards you pay for information leading to convictions for the "theft" loss.

The most we will pay to reimburse you in any one occurrence for arson or "theft" rewards is $10,000.

This is additional insurance. The deductible does not apply to these reimbursements.

**c. Data and Software**

We will pay up to $10,000 in any one occurrence to cover your costs to research, replace or restore "data" or "software" which exists or existed on electronic or magnetic "media" that is lost or damaged as a result of direct physical loss or physical damage to "computer equipment" at the "scheduled premises".

**d. Garages, Storage Buildings and Other Appurtenant Structures**

**(1)** You may extend the insurance that applies to Building to apply to garages, storage buildings and other appurtenant structures, except outdoor fixtures, at the "scheduled premises".

The most we will pay in any one occurrence for direct physical loss or physical damage under this Extension is $50,000 at each "scheduled premises".

**(2)** You may extend the insurance that applies to Business Personal Property in garages, storage buildings and other appurtenant structures at the "scheduled premises".

The most we will pay in any one occurrence for direct physical loss or physical damage under this Extension is $5,000 at each "scheduled premises".

**e. Newly Acquired or Constructed Property**

**(1)** You may extend the insurance that applies to Building to apply to:

**(a)** Your new buildings while being built on the "scheduled premises"; and

**(b)** Buildings you acquire at locations other than the "scheduled premises", intended for:

**(i)** Similar use as the Building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay in any one occurrence for loss or damage under this Extension is 25% of the Limit of Insurance for Building shown in the Declarations, but not more than $500,000 at each premises.

**(2)** You may extend the insurance that applies to Business Personal Property to apply to:

**(a)** Property at any premises you acquire or construct;

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed building, or

**(c)** Business Personal Property that you newly acquire, located at the "scheduled premises".

This extension does not apply to:

**(a)** Personal Property that you temporarily acquire in the course of installing or performing work on such property;

**(b)** Personal property of others that you temporarily acquire in the course of your wholesaling activity.

**(c)** Merchandise held for sale, except as provided under Paragraph **C.6.** Business Personal Property Limit – Seasonal Increase.

The most we will pay in any one occurrence for direct physical loss or physical damage under this Extension is $250,000 at each premises.

**(3)** You may extend the insurance that applies to Business Income and Extra Expense to apply to newly acquired or constructed locations.

The most we will pay in any one occurrence under this Extension is $50,000.

**(4)** If Covered Property is moved to a new premises endorsed onto this policy, from a "scheduled premises" being endorsed off this policy, the Limit of Insurance applicable to that vacated premises will apply proportionately to both premises as the property is moved. This coverage applies to up to 180 days after the move begins or upon completion of the move, whichever is sooner. This coverage does not apply to Business Personal Property while in transit.

(5) Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

(a) This policy expires;

(b) 180 days after you acquire or begin to construct the property, or

(c) You report values to us.

We will charge you additional premium for values reported from the day construction begins or you acquire the property.

**f.  Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor:

(1) Fences, signs (other than signs attached to buildings), trees, shrubs and plants caused by or resulting from any of the following causes of loss:

(a) Fire;

(b) Lightning;

(c) Explosion;

(d) Riot or Civil Commotion; and

(e) Aircraft.

The most we will pay in any one occurrence for direct physical loss or physical damage, including debris removal expense, under this Extension is $10,000 but not more than $1,000 for any one tree, shrub or plant.

(2) Radio and television antennas (including satellite dishes) caused by or resulting from any of the following causes of loss:

(a) Fire;

(b) Lightning;

(c) Windstorm;

(d) Ice, Snow, Sleet or Hail;

(e) Explosion;

(f) Riot or Civil Commotion; and

(g) Aircraft.

The most we will pay in any one occurrence for direct physical loss or physical damage, including debris removal expense, under this Extension is $2,000.

**g.  Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners, "managers", "members", or your employees.

The most we will pay in any one occurrence for physical loss or physical damage under this Extension is $10,000 at each "scheduled premises".

**h.  Property Off-Premises**

(1) You may extend the insurance that applies to Building to apply to such property that is temporarily at a location you do not own, lease or operate. This Extension applies only if physical loss or physical damage is caused by or resulting from a Covered Cause of Loss. This Extension does not apply to property in course of transit.

The most we will pay in any one occurrence under this coverage extension is $5,000.

(2) You may extend the insurance that applies to Business Personal Property to apply to such property, other than Accounts Receivable, "money" and "securities" while:

(a) In the course of transit and more than 1,000 feet from the "scheduled premises". Property must be in or on, but not permanently attached to or installed in, a motor vehicle you own, lease or operate while between points in the coverage territory; or

(b) Temporarily at a premises you do not own, lease or operate.

(c) At a premises owned, leased, operated or used by you and the Business Personal Property is a vending machine.

(d) In or on, but not permanently attached to or installed in, motor vehicles operated by your employees in the course of your business operations.

(e) On temporary public display, or while being used at fairs, exhibitions, expositions, or trade shows or while in transit to and from these temporary sites.

The most we will pay in any one occurrence under this Extension is $2,500.

**i.  Valuable Papers and Records - Cost of Research**

You may extend the insurance that applies to Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged "valuable papers and records", for which duplicates do not exist.

The most we will pay in any one occurrence under this Extension is $25,000 at each "scheduled premises". For "valuable papers and records" not at the "scheduled premises", including while in transit, the most we will pay in any one occurrence is $25,000.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Earth Movement**

   (1) Earthquake, meaning a shaking or trembling of the earth's crust, caused by underground tectonic forces resulting in breaking, shifting, rising, settling, sinking or lateral movement;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface;

   But if Earth Movement, as described in Paragraphs (1) through (4) above, results in fire or explosion, we will pay for the physical loss or physical damage caused by that fire or explosion.

   (5) Volcanic eruption, meaning the eruption, explosion or effusion of a volcano. But if physical loss or physical damage by fire or volcanic action results, we will pay for that resulting physical damage.

   Volcanic action means direct physical loss or physical damage resulting from the eruption of a volcano when the physical loss or physical damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust, or particulate matter; or

   (c) Lava flow.

   (d) All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust, or particulate matter. That does not cause direct physical loss or physical damage to Covered Property.

   **b. Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

   **c. Nuclear Hazard**

   Nuclear reaction or radiation, or radioactive contamination however caused.

   But if physical loss or physical damage by fire results, we will pay for that resulting physical loss or physical damage.

   **d. Power Failure**

   The failure of power or other utility service supplied to the "scheduled premises", however caused, if the failure occurs away from the "scheduled premises". Failure includes lack of sufficient capacity and reduction in supply necessary to maintain normal operations.

   But if physical loss or physical damage by a Covered Cause of Loss results, we will pay for that resulting physical loss or physical damage.

   **e. War and Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

   **f. Water**

   (1) Flood, including the accumulation of surface water, waves, tides, tidal waves, overflow of streams or any other bodies of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mud flow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

    (a) Foundations, walls, floors or paved surfaces;

    (b) Basements, whether paved or not; or

    (c) Doors, windows or other openings.

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting physical loss or physical damage.

(5) Water damage caused by or resulting from earthquake or volcanic eruption:

    (a) Earthquake means a shaking or trembling of the earth's crust, caused by underground tectonic forces resulting in breaking, shifting, rising, settling, sinking or lateral movement or other movement;

    (b) Volcanic eruption means the eruption, explosion or effusion of a volcano.

**g. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

2. We will not pay for physical loss or physical damage caused by or resulting from:

  **a. Consequential Losses:** Delay, loss of use or loss of market.

  **b Smoke, Vapor, Gas:** Smoke, vapor or gas from agricultural smudging or industrial operations.

  **c. Miscellaneous Types of Loss:**

    (1) Wear and tear;

    (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

    (3) Smog;

    (4) Settling, cracking, shrinking or expansion;

    (5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, mold, spore or other animals;

(6) The following causes of loss to personal property:

    (a) Dampness or dryness of atmosphere;

    (b) Changes in or extremes of temperature; or

    (c) Marring or scratching.

But if physical loss or physical damage by the "specified causes of loss", building glass breakage or Equipment Breakdown Accident results, we will pay for that resulting physical loss or physical damage.

**d. Frozen Plumbing:** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    (1) You do your best to maintain heat in the building or structure; or

    (2) You drain the equipment and shut off the supply if the heat is not maintained.

**e. Dishonesty:** Dishonest or criminal act by you, any of your partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

    (1) Acting alone or in collusion with others; or

    (2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

**f. False Pretense:** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**g. Exposed Property:** Rain, snow, ice or sleet to personal property in the open, except as provided in the Coverage Extension for Outdoor Property.

**h. Collapse:** Collapse, except as provided in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the "scheduled premises", we will pay for that resulting loss or damage.

**i. Pollution:** We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants and

contaminants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if physical loss or physical damage by the "specified causes of loss" results, we will pay for the resulting physical loss or physical damage caused by the "specified cause of loss."

3. We will not pay for loss or damage caused by or resulting from any of the following. But if physical loss or physical damage by a Covered Cause of Loss results, we will pay for that resulting physical loss or physical damage.

   a. **Weather conditions:** Weather conditions. This exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the physical loss or physical damage.

   b. **Acts or Decisions:** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   c. **Negligent Work:** Faulty, inadequate or defective:

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or

      (4) Maintenance of part or all of any property on or off the "scheduled premises".

4. **Business Income and Extra Expense Exclusions.** We will not pay for:

   a. Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

      (1) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

      (2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations', we will cover such loss that affects your Business Income during the "period of restoration".

   b. Any other consequential loss.

5. **Equipment Breakdown Exclusion**

   We will not pay for physical loss or physical damage caused by or resulting from any of the following tests:

   (a) A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

   (b) An insulation breakdown test of any type of electrical equipment.

C. **LIMITS OF INSURANCE**

1. The most we will pay for physical loss or physical damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2. The most we will pay for physical loss of or physical damage to outdoor signs attached to buildings is $5,000 per sign in any one occurrence.

3. The limits applicable to:

   a. Coverage Extensions; and

   b. The following Additional Coverages:

      (1) Accounts Receivable,

      (2) Fire Department Service Charges,

      (3) Fire Extinguisher Recharge, and

      (4) "Pollutants and Contaminants" Clean Up and Removal

   are in addition to the Limits of Insurance.

4. Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

   a. Preservation of Property; or

   b. Debris Removal; but if:

      (1) The sum of direct physical loss or physical damage and Debris Removal expense exceeds the Limit of Insurance; or

      (2) The Debris Removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage.

   We will pay up to an additional $10,000 for each location stated in the Declarations in any one occurrence under the Debris Removal Additional Coverage.

5. **Building Limit - Automatic Increase**

   a. The Limit of Insurance for Buildings will automatically increase annually by 8%.

   b. The amount of increase will be:

      (1) The Limit of Insurance for Buildings that applied on the most recent of the policy

inception date, policy anniversary date, or the date of any other policy change amending the Buildings limit, times

(2) The percentage of annual increase shown above, expressed as a decimal (.08); times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance for Buildings, divided by 365.

Example: The applicable Limit of Insurance for Buildings is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy period (or last policy change) is 146.

The amount of increase is:

$100,000 X .08 X 146 divided by 365 = $3,200

6. **Business Personal Property Limit - Seasonal Increase**

a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

b. This increase will apply only if all Limits of Insurance shown in the Declarations for Business Personal Property at the "scheduled premises" is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the physical loss or physical damage occurs; or

(2) The period of time you have been in business as of the date the physical loss or physical damage occurs.

D. **DEDUCTIBLES**

1. We will not pay for physical loss or physical damage in any one occurrence until the amount of physical loss or physical damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. Except as otherwise listed, the deductible applicable to Additional Coverages and Coverage Extensions is the Special Property Coverage Form is $250.

3. A $250 deductible applies to the following Glass Coverages, unless Glass Coverage is provided under a separate coverage form:

a. Building Glass

b. Glass Expense

c. Tenant Glass

4. Unless a separate deductible is shown in the Declarations, the deductible applicable to the following Additional Coverages or Coverage Extensions is $250, whether the coverage is provided under this coverage form, provided on a separate coverage form or the coverage is provided in a form that includes a package of coverages, such as a Stretch endorsement:

a. Accounts Receivable;

b. Fine Arts

c. Outdoor Signs; and

d. "Valuable Papers and Records";

5. Unless a separate deductible is shown in the Declarations, the deductible applicable to the following Additional Coverages or Coverage Extensions is $100, whether the coverage is provided under this coverage form, provided on a separate coverage form or the coverage is provided in a form that includes a package of coverages, such as a Stretch endorsement:

a. Employee Dishonesy; and

b. Temperature Change.

6. No deductible applies to the following Coverage Extensions and Additional Coverages:

a. Fire Extinguisher Recharge;

b. Preservation of Property;

c. Fire Department Service Charge;

d. Business Income, Extra Expense, Civil Authority and Extended Business Income;

e. Arson Reward; and

f. Lock and Key Replacement

7. The Deductible applicable to the following Additional Coverages is the policy deductible or the deductible shown in the Declarations for the following coverage:

a. Equipment Breakdown;

b. Ordinance or Law Coverage; and

c. Leasehold Improvements.

8. Each deductible applicable to this policy shall be applied separately but only to the coverage specified, and the total deductible for all losses in any one occurrence shall be the highest deductible amount that applies to the occurrence.

E. **PROPERTY LOSS CONDITIONS**

1. **Abandonment**
   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In that event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss.

   If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

   You must see that the following are done in the event of loss of or damage to Covered Property:

   a. Notify the police if a law may have been broken.

   b. Give us prompt notice of the physical loss or physical damage. Include a description of the property involved.

   c. As soon as possible, give us description of how, when and where the physical loss or physical damage occurred.

   d. Take all reseasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside in the best possible order for examination. Also, keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim.

      This will not increase the Limits of Insurance.

   e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

   f. Permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.

   g. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

   h. Send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

   i. Cooperate with us in the investigation or settlement of the claim.

   j. Resume part or all of your "operations" as quickly as possible.

4. **Legal Action Against Us**

   No one may bring a legal action against us under this insurance unless:

   a. There has been full compliance with all of the terms of this insurance; and

   b. The action is brought within 2 years after the date on which the direct physical loss or physical damage occurred.

5. **Loss Payment**

   In the event of physical loss or physical damage covered by this policy:

   a. At our option we will either:

      (1) Pay the value of physically lost or physically damaged property, as described in paragraph **d.** below;

      (2) Pay the cost of repairing or replacing the physically lost or physically damaged property, plus any reduction in value of repaired items;

      (3) Take all or any part of the property at an agreed or appraised value; or

      (4) Repair, rebuild or replace the property with other property of like kind and quality.

   b. We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

   c. We will not pay you more than your financial interest in the Covered Property.

   d. We will determine the value of Covered Property as follows:

      (1) At replacement cost (without deduction for depreciation), except as provided in (2) through (7) below.

         (a) You may make a claim for physical loss or physical damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have physical loss or physical damage settled on an actual cash value basis, you may still make a claim on a

replacement cost basis if you notify us of your intent to do so within 180 days after the physical loss or physical damage.

**(b)** We will not pay on a replacement cost basis for any physical loss or physical damage:

**(i)** Until the physically lost or physically damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the physical loss or physical damage.

However, if the cost to repair or replace the damaged property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(c)** We will not pay more for physical loss or physical damage on a replacement cost basis than the least of:

**(i)** The cost to replace, on the same premises, the physically lost or physically damaged property with other property of comparable material and

quality and which is used for the same purpose; or

**(ii)** The amount you actually spend that is necessary to repair or replace the physically lost or physically damaged property.

**(2)** If the **Actual Cash Value - Buildings** option applies, as shown in the Declarations, paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Manuscripts;

**(b)** Works of art, antiques or rare articles, including etchings, pictures, statuary, objects of marble, bronzes, porcelains and bric-a-brac.

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** "Tenants' Improvements and Betterments" at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the physical loss or physical damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing, if others pay for repairs or replacement.

**(6)** "Valuable Papers and Records", at the cost of:

**(a)** Blank materials for reproducing the records; and

**(b)** Labor to transcribe or copy the records.

**(7)** "Money" and "Securities":

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(8)** The value of United States Government Internal Revenue taxes and custom duties and refundable state and local taxes paid or fully determined on the following property held for sale will not be considered in determining the value of Covered Property:

**(a)** Distilled spirits;

**(b)** Wines;

(c) Rectified products; or

(d) Beer.

(9) Applicable to Accounts Receivable:

(a) If you can not accurately establish the amount of the accounts receivable outstanding as of the time of physical loss or physical damage the following method will be used:

(i) Determine the total of the average monthly value of accounts receivable for 12 months immediately preceding the month in which the direct physical loss or physical damage occurred; and

(ii) Adjust the total determined in paragraph **(i)** above for any normal fluctuations in the value of accounts receivable for the month in which the direct physical loss or physical damage occurred for any demonstrated variance from the average of that month.

(b) The following will be deducted from the total value of accounts receivable, however that value is established:

(i) The value of the accounts for which there is no physical loss or physical damage;

(ii) The value of the accounts that you are able to re-establish or collect;

(ii) A value to allow for probable bad debts that you are normally unable to collect; and

(iv) All unearned interest and services charged.

e. Our payment for physical loss of or physical damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of physically lost or physically damaged property if other than you. If we pay the owners, such payment will satisfy your claims against us for the owners' property.

We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered physical loss or physical damage within 30 days after we receive the sworn statement of loss, if:

(1) You have complied with all of the terms of this policy; and

(2) (a) We have reached agreement with you on the amount of loss, or

(b) An appraisal award has been made.

h. The following condition applies to any loss payment for Extra Expense:

We will deduct from the total Extra Expense to be paid:

(1) The salvage value that remains of any property bought for temporary use during the Period of Restoration, once business operations are resumed; and

(2) Any Extra Expense that is paid for by other insurance.

6. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance.

7. **Resumption of Operations**

In the event of physical loss or physical damage at the "scheduled premises" you must resume all or part of your "operations" as quickly as possible.

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "scheduled premises" or elsewhere.

b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

8. **Vacancy**

a. **Description of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs.

(a) and (b) below:

    (a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

    (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

        (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

        (ii) Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where physical loss or physical damage occurs has been vacant for more than 60 consecutive days before that physical loss or physical damage occurs:

**(1)** We will not pay for any physical loss or physical damage caused by any of the following even if they are Covered Causes of Loss:

    (a) Vandalism;

    (b) Sprinkler leakage, unless you had protected the system against freezing;

    (c) Building glass breakage;

    (d) Water damage;

    (e) Theft; or

    (f) Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the physical loss or physical damage by 15%.

**F. PROPERTY GENERAL CONDITIONS**

**1. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at one or more locations will not affect coverage at any location where, at the time of physical loss or physical damage, the breach of condition does not exist.

**2. Mortgage Holders**

  **a.** The term mortgage holder includes trustee.

  **b.** We will pay for covered physical loss of or physical damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

  **c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

  **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

    **(1)** Pays any premium due under this policy at our request if you have failed to do so;

    **(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this policy will then apply directly to the mortgage holder.

  **e.** If we pay the mortgage holder for any physical loss or physical damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    **(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    **(2)** The mortgage holder's rights to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If we cancel this policy, we will give written notice to the mortgage holder at least:

   (1) 10 days before the effective date of cancellation if we cancel for your non payment of premium; or

   (2) 30 days before the effective date of cancellation if we cancel for any other reason.

g.  If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

**3. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under this form:

a.  We cover physical loss or physical damage commencing:

   (1) During the policy period shown in the Declarations; and

   (2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

But we do not cover physical loss or physical damage that is also covered by a preceding policy.

b.  The coverage territory is:

   (1) The United States of America (including its territories and possessions);

   (2) Puerto Rico; and

   (3) Canada.

**5. Additional Conditions**

The following conditions apply to paragraph **A.5.u.**, Forgery Additional Coverage:

a.  We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

b.  You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

c.  The Coverage Territory is revised to cover loss you sustain anywhere in the world.

# G. PROPERTY DEFINITIONS

1.  "Computer" means a programmable electronic device that can store, retrieve and process "data".

2.  "Computer Equipment" means "computers", "peripheral devices", "media", and manuals that are purchased to be used in conjunction with hardware and "software".

3.  "Counterfeit" means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

4.  "Data" means information or facts stored in a "computer's" memory, on "software" or on "media".

5.  "Finished Stock" means stock you have manufactured.

"Finished Stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this policy.

6.  "Manager" means a person serving in a directorial capacity for a limited liability company.

7.  "Media" means the material used solely with the "computer" or "peripheral device" upon which "software" or "data" is stored, such as tapes, CD-ROMs or disks.

8.  "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

9.  "Messenger" means you, any any of your partners or any employee while having care and custody of the property outside your premises.

10. "Money" means:

a.  Currency, coins and bank notes whether or not in current use; and

b.  Travelers checks, registered checks and money orders held for sale to the public.

11. "Operations" means your business activities occurring at the "scheduled premises" and tenantability of the "scheduled premises".

12. "Period of Restoration" means the period of time that:

a.  Begins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the "scheduled premises", and

b.  Ends on the date when:

   (1) The property at the "scheduled premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality;

   (2) The date when your business is resumed at a new, permanent location.

"Period of Restoration" does not include any increased period required due to enforcement of any law that:

a. Regulates the construction, use or repair, or required the tearing down of any property; or

b. Regulates the prevention, control, repair, clean up or restoration of environmental damage.

The expiration date of this policy will not cut short the "period of restoration".

13. "Peripheral Device" means any physical unit used to operate the "computer' that cannot be used for purposes other than as part of the computer's system, such as tape or disk drives, printers, or modems.

14. "Perishable Stock" means personal property:

a. Maintained under controlled conditions for its preservation; and

b. Susceptible to physical loss or physical damage if the controlled conditions change.

15. "Pollutants and Contaminants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste, or any other material which causes or threatens to cause physical loss, physical damage, impurity to property, unwholesomeness, undesirability, loss of marketability, loss of use of property, or which threatens human health or welfare. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Scheduled Premises" means any premises listed by location address in the Scheduled Premises section of the Declarations.

17. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets except Lottery Tickets, revenue and other non-postage stamps whether or not in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which are not of your own issue;

but does not include "money."

18. "Software" means instructions or programs that are stored on "media" and which instruct the hardware as to how to process "data".

19. "Specified Cause of Loss" means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. It does not include the cost of filling sinkholes.

b. Falling objects does not include loss of or damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

20. "Suit" means a civil proceeding and includes:

a. An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our consent.

21. "Tenant Improvements and Betterments" means fixtures, alterations, installations or additions made a part of the Building you occupy but do not own and that you cannot legally remove; and

a. Which are made at your expense; or

b. That you acquired from the prior tenant at your expense.

22. "Theft" means the act of stealing.

23. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" and "securities", "data" and "software" or the materials on which the "data" and "software" is recorded.

# BUSINESS LIABILITY COVERAGE FORM

© 2005, The Hartford

# QUICK REFERENCE
# BUSINESS LIABILITY COVERAGE FORM
# READ YOUR POLICY CAREFULLY

**BUSINESS LIABILITY COVERAGE FORM**                               **Beginning on Page**

**A.**   **COVERAGES**                                                    **1**
     Business Liability                                     1
     Medical Expenses                                       2
     Coverage Extension - Supplementary Payments            2

**B.**   **EXCLUSIONS**                                                   **3**

**C.**   **WHO IS AN INSURED**                                           **10**

**D.**   **LIABILITY AND MEDICAL EXPENSES**
     **LIMITS OF INSURANCE**                                **14**

**E.**   **LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**            **15**

     **1.**   Bankruptcy                                **15**

     **2.**   Duties In The Event Of Occurrence, Offense, Claim Or Suit   **15**

     **3.**   Financial Responsibility Laws             **16**

     **4.**   Legal Action Against Us                   **16**

     **5.**   Separation Of Insureds                    **16**

     **6.**   Representations                           **16**

     **7.**   Other Insurance                          **16**

     **8.**   Transfer Of Rights Of Recovery Against Others To Us   **17**

**F.**   **OPTIONAL ADDITIONAL INSURED COVERAGES**                        **18**

     Additional Insureds                                    **18**

**G.**   **LIABILITY AND MEDICAL EXPENSES DEFINITIONS**                   **20**



# BUSINESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the stock insurance company member of The Hartford providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **C.** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **G.** - Liability And Medical Expenses Definitions.

## A. COVERAGES

1.  **BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

    **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

        We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.  But:

        **(1)** The amount we will pay for damages is limited as described in Section **D.** - Liability And Medical Expenses Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses to which this insurance applies.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

    b.  This insurance applies:

        **(1)** To "bodily injury" and "property damage" only if:

            **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

            **(c)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **C.** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

        **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

    c.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **C.** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

© 2005, The Hartford

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**d.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**e. Incidental Medical Malpractice**

**(1)** "Bodily injury" arising out of the rendering of or failure to render professional health care services as a physician, dentist, nurse, emergency medical technician or paramedic shall be deemed to be caused by an "occurrence", but only if:

**(a)** The physician, dentist, nurse, emergency medical technician or paramedic is employed by you to provide such services; and

**(b)** You are not engaged in the business or occupation of providing such services.

**(2)** For the purpose of determining the limits of insurance for incidental medical malpractice, any act or omission together with all related acts or omissions in the furnishing of these services to any one person will be considered one "occurrence".

**2. MEDICAL EXPENSES**

**Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within three years of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**3. COVERAGE EXTENSION - SUPPLEMENTARY PAYMENTS**

**a.** We will pay, with respect to any claim or "suit" we investigate or settle, or any "suit" against an insured we defend:

**(1)** All expenses we incur.

**(2)** Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(3)** The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**(4)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**(5)** All costs taxed against the insured in the "suit".

**(6)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(7)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

Any amounts paid under **(1)** through **(7)** above will not reduce the limits of insurance.

b.  If we defend an insured against a "suit"
    and an indemnitee of the insured is also
    named as a party to the "suit", we will
    defend that indemnitee if all of the
    following conditions are met:

    **(1)**  The "suit" against the indemnitee
        seeks damages for which the insured
        has assumed the liability of the
        indemnitee in a contract or agreement
        that is an "insured contract";

    **(2)**  This insurance applies to such liability
        assumed by the insured;

    **(3)**  The obligation to defend, or the cost of
        the defense of, that indemnitee, has
        also been assumed by the insured in
        the same "insured contract";

    **(4)**  The allegations in the "suit" and the
        information we know about the
        "occurrence" are such that no conflict
        appears to exist between the interests
        of the insured and the interest of the
        indemnitee;

    **(5)**  The indemnitee and the insured ask
        us to conduct and control the defense
        of that indemnitee against such "suit"
        and agree that we can assign the
        same counsel to defend the insured
        and the indemnitee; and

    **(6)**  The indemnitee:

        **(a)**  Agrees in writing to:

            **(i)**  Cooperate with us in the
                investigation, settlement or
                defense of the "suit";

            **(ii)**  Immediately send us copies of
                any demands, notices,
                summonses or legal papers
                received in connection with
                the "suit";

            **(iii)**  Notify any other insurer whose
                coverage is available to the
                indemnitee; and

            **(iv)**  Cooperate with us with
                respect to coordinating other
                applicable insurance available
                to the indemnitee; and

        **(b)**  Provides us with written
            authorization to:

            **(i)**  Obtain records and other
                information related to the
                "suit"; and

            **(ii)**  Conduct and control the
                defense of the indemnitee in
                such "suit".

So long as the above conditions are met,
attorneys' fees incurred by us in the
defense of that indemnitee, necessary
litigation expenses incurred by us and
necessary litigation expenses incurred
by the indemnitee at our request will be
paid as Supplementary Payments.

Notwithstanding the provisions of
Paragraph **1.b.(b)** of Section **B.** –
Exclusions, such payments will not be
deemed to be damages for "bodily
injury" and "property damage" and will
not reduce the Limits of Insurance.

Our obligation to defend an insured's
indemnitee and to pay for attorneys' fees
and necessary litigation expenses as
Supplementary Payments ends when:

**(1)**  We have used up the applicable limit
    of insurance in the payment of
    judgments or settlements; or

**(2)**  The conditions set forth above, or the
    terms of the agreement described in
    Paragraph **(6)** above, are no longer met.

**B. EXCLUSIONS**

1.  **Applicable To Business Liability Coverage**

    This insurance does not apply to:

    a.  **Expected Or Intended Injury**

        **(1)**  "Bodily injury" or "property damage"
            expected or intended from the
            standpoint of the insured. This
            exclusion does not apply to "bodily
            injury" or "property damage" resulting
            from the use of reasonable force to
            protect persons or property; or

        **(2)**  "Personal and advertising injury" arising
            out of an offense committed by, at the
            direction of or with the consent or
            acquiescence of the insured with the
            expectation of inflicting "personal and
            advertising injury".

    b.  **Contractual Liability**

        **(1)**  "Bodily injury" or "property damage"; or

        **(2)**  "Personal and advertising injury"

        for which the insured is obligated to pay
        damages by reason of the assumption of
        liability in a contract or agreement.

        This exclusion does not apply to liability
        for damages because of:

            **(a)**  "Bodily injury", "property damage" or
                "personal and advertising injury" that
                the insured would have in the
                absence of the contract or
                agreement; or

(b) "Bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purpose of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

(i) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

(ii) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business, or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    **(i)** Any insured; or

    **(ii)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or

released as part of the operations being performed by such insured, contractor or subcontractor;

    **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g.  **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1)  A watercraft while ashore on premises you own or rent;

(2)  A watercraft you do not own that is:

(a)  Less than 51 feet long; and

(b)  Not being used to carry persons for a charge;

(3)  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

(5)  "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment"; or

(6)  An aircraft that is not owned by any insured and is hired, chartered or loaned with a paid crew.  However, this exception does not apply if the insured has any other insurance for such "bodily injury" or "property damage", whether the other insurance is primary, excess, contingent or on any other basis.

h.  **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1)  The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2)  The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

i.  **War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1)  War, including undeclared or civil war;

(2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j.  **Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional service.  This includes but is not limited to:

(1)  Legal, accounting or advertising services;

(2)  Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications;

(3)  Supervisory, inspection, architectural or engineering activities;

(4)  Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

(5)  Any health or therapeutic service treatment, advice or instruction;

(6)  Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7)  Optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Optometry or optometric services including but not limited to examination of the eyes and the prescribing, preparation, fitting,demonstration or distribution of ophthalmic lenses and similar products;

(9) Any:

   (a) Body piercing (not including ear piercing);

   (b) Tattooing, including but not limited to the insertion of pigments into or under the skin; and

   (c) Similar services;

(10) Services in the practice of pharmacy; and

(11) Computer consulting, design or programming services, including web site design.

Paragraphs **(4)** and **(5)** of this exclusion do not apply to the Incidental Medical Malpractice coverage afforded under Paragraph **1.e.** in Section **A.** - Coverages.

**k.  Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Section **D.** - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to the use of elevators.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" to borrowed equipment while not being used to perform operations at a job site.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**  "Your product";

**(2)**  "Your work"; or

**(3)**  "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p.  Personal And Advertising Injury**

"Personal and advertising injury":

**(1)**  Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)**  Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

**(3)**  Arising out of a criminal act committed by or at the direction of the insured;

**(4)**  Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement";

**(5)**  Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(6)**  Arising out of the wrong description of the price of goods, products or services;

**(7)**  Arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your "advertisement", of

**(a)**  Copyright;

**(b)**  Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

**(c)**  Title of any literary or artistic work;

**(8)**  Arising out of an offense committed by an insured whose business is:

**(a)**  Advertising, broadcasting, publishing or telecasting;

**(b)**  Designing or determining content of web sites for others; or

**(c)**  An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **a.**, **b.** and **c.** under the definition of "personal and advertising injury" in Section **G.** – Liability And Medical Expenses Definitions.

For the purposes of this exclusion, placing an "advertisement" for or linking to others on your web site, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

**(9)**  Arising out of an electronic chat room or bulletin board the insured hosts, owns, or over which the insured exercises control;

**(10)**  Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers;

**(11)**  Arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;

**(12)**  Arising out of:

**(a)**  An "advertisement" for others on your web site;

**(b)**  Placing a link to a web site of others on your web site;

**(c)**  Content from a web site of others displayed within a frame or border on your web site.  Content includes information, code, sounds, text, graphics or images; or

**(d)**  Computer code, software or programming used to enable:

**(i)**  Your web site; or

**(ii)**  The presentation or functionality of an "advertisement" or other content on your web site;

**(13)** Arising out of a violation of any anti-trust law;

**(14)** Arising out of the fluctuation in price or value of any stocks, bonds or other securities; or

**(15)** Arising out of discrimination or humiliation committed by or at the direction of any "executive officer", director, stockholder, partner or member of the insured.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**r. Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to the person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**s. Asbestos**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the "asbestos hazard".

**(2)** Any damages, judgments, settlements, loss, costs or expenses that:

**(a)** May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard";

**(b)** Arise out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

**(c)** Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard".

**t. Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**Damage To Premises Rented To You – Exception For Damage By Fire, Lightning or Explosion**

Exclusions **c.** through **h.** and **k.** through **o.** do not apply to damage by fire, lightning or explosion to premises rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in Section **D.** - Liability And Medical Expenses Limits Of Insurance.

2. **Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

f. **Products-Completed Operations Hazard**

Included with the "products-completed operations hazard".

g. **Business Liability Exclusions**

Excluded under Business Liability Coverage.

## C. WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. **Employees And Volunteer Workers**

Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or that "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

If you are not in the business of providing professional health care services, Paragraph **(d)** does not apply to any nurse, emergency medical technician or paramedic employed by you to provide such services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b. Real Estate Manager**

Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c. Temporary Custodians Of Your Property**

Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d. Legal Representative If You Die**

Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this insurance.

**e. Unnamed Subsidiary**

Any subsidiary and subsidiary thereof, of yours which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this Coverage Part.

The insurance afforded herein for any subsidiary not shown in the Declarations as a named insured does not apply to injury or damage with respect to which an insured under this insurance is also an insured under another policy or would be an insured under such policy but for its termination or upon the exhaustion of its limits of insurance.

**3. Newly Acquired Or Formed Organization**

Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain financial interest of more than 50% of the voting stock, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage under this provision does not apply to:

**(1)** "Bodily injury" or "property damage" that occurred; or

**(2)** "Personal and advertising injury" arising out of an offense committed

before you acquired or formed the organization.

**4. Operator Of Mobile Equipment**

With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**5. Operator of Nonowned Watercraft**

With respect to watercraft you do not own that is less than 51 feet long and is not being used to carry persons for a charge, any person is an insured while operating such watercraft with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the watercraft, and only if no other insurance of any kind is available to that person or organization for this liability.

However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person operating the watercraft; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**6. Additional Insureds When Required By Written Contract, Written Agreement Or Permit**

The person(s) or organization(s) identified in Paragraphs **a.** through **f.** below are additional insureds when you have agreed, in a written

contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement, or the issuance of the permit.

A person or organization is an additional insured under this provision only for that period of time required by the contract, agreement or permit.

However, no such person or organization is an additional insured under this provision if such person or organization is included as an additional insured by an endorsement issued by us and made a part of this Coverage Part, including all persons or organizations added as additional insureds under the specific additional insured coverage grants in Section F. – Optional Additional Insured Coverages.

**a. Vendors**

Any person(s) or organization(s) (referred to below as vendor), but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business and only if this Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

**(1)** The insurance afforded to the vendor is subject to the following additional exclusions:

This insurance does not apply to:

**(a)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**(b)** Any express warranty unauthorized by you;

**(c)** Any physical or chemical change in the product made intentionally by the vendor;

**(d)** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**(e)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**(f)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**(g)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**(h)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(i)** The exceptions contained in Subparagraphs **(d)** or **(f)**; or

**(ii)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**(2)** This insurance does not apply to any insured person or organization from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**b. Lessors Of Equipment**

**(1)** Any person or organization from whom you lease equipment; but only with respect to their liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

(2) With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after you cease to lease that equipment.

**c. Lessors Of Land Or Premises**

(1) Any person or organization from whom you lease land or premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land or premises leased to you.

(2) With respect to the insurance afforded to these additional insureds, this insurance does not apply to:

(a) Any "occurrence" which takes place after you cease to lease that land or be a tenant in that premises; or

(b) Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

**d. Architects, Engineers Or Surveyors**

(1) Any architect, engineer, or surveyor, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

(a) In connection with your premises; or

(b) In the performance of your ongoing operations performed by you or on your behalf.

(2) With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

(a) The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

(b) Supervisory, inspection, architectural or engineering activities.

**e. Permits Issued By State Or Political Subdivisions**

(1) Any state or political subdivision, but only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

(2) With respect to the insurance afforded to these additional insureds, this insurance does not apply to:

(a) "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality; or

(b) "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**f. Any Other Party**

(1) Any other person or organization who is not an insured under Paragraphs **a.** through **e.** above, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

(a) In the performance of your ongoing operations;

(b) In connection with your premises owned by or rented to you; or

(c) In connection with "your work" and included within the "products-completed operations hazard", but only if

(i) The written contract or written agreement requires you to provide such coverage to such additional insured; and

(ii) This Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

(2) With respect to the insurance afforded to these additional insureds, this insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

(a) The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

(b) Supervisory, inspection, architectural or engineering activities.

The limits of insurance that apply to additional insureds are described in Section **D.** – Limits Of Insurance.

How this insurance applies when other insurance is available to an additional insured is described in the Other Insurance Condition in Section **E.** – Liability And Medical Expenses General Conditions.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE

**1. The Most We Will Pay**

The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2. Aggregate Limits**

The most we will pay for:

**a.** Damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" is the Products-Completed Operations Aggregate Limit shown in the Declarations.

**b.** Damages because of all other "bodily injury", "property damage" or "personal and advertising injury", including medical expenses, is the General Aggregate Limit shown in the Declarations.

This General Aggregate Limit applies separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway or right-of-way of a railroad.

This General Aggregate limit does not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of fire, lightning or explosion.

**3. Each Occurrence Limit**

Subject to **2.a.** or **2.b** above, whichever applies, the most we will pay for the sum of all damages because of all "bodily injury", "property damage" and medical expenses arising out of any one "occurrence" is the Liability and Medical Expenses Limit shown in the Declarations.

The most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses Limit shown in the Declarations.

**4. Personal And Advertising Injury Limit**

Subject to **2.b.** above, the most we will pay for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization is the Personal and Advertising Injury Limit shown in the Declarations.

**5. Damage To Premises Rented To You Limit**

The Damage To Premises Rented To You Limit is the most we will pay under Business Liability Coverage for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning or explosion, while rented to you or temporarily occupied by you with permission of the owner.

In the case of damage by fire, lightning or explosion, the Damage to Premises Rented To You Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning or explosion or any combination of these.

**6. How Limits Apply To Additional Insureds**

The most we will pay on behalf of a person or organization who is an additional insured under this Coverage Part is the lesser of:

**a.** The limits of insurance specified in a written contract, written agreement or permit issued by a state or political subdivision; or

**b.** The Limits of Insurance shown in the Declarations.

Such amount shall be a part of and not in addition to the Limits of Insurance shown in the Declarations and described in this Section.

If more than one limit of insurance under this policy and any endorsements attached thereto applies to any claim or "suit", the most we will pay under this policy and the endorsements is the single highest limit of liability of all coverages applicable to such claim or "suit". However, this paragraph does not apply to the Medical Expenses limit set forth in Paragraph **3.** above.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

# E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a. Notice Of Occurrence Or Offense**

You or any additional insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b. Notice Of Claim**

If a claim is made or "suit" is brought against any insured, you or any additional insured must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You or any additional insured must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

**c. Assistance And Cooperation Of The Insured**

You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d. Obligations At The Insured's Own Cost**

No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**e. Additional Insured's Other Insurance**

If we cover a claim or "suit" under this Coverage Part that may also be covered by other insurance available to an additional insured, such additional insured must submit such claim or "suit" to the other insurer for defense and indemnity.

However, this provision does not apply to the extent that you have agreed in a written contract, written agreement or permit that this insurance is primary and non-contributory with the additional insured's own insurance.

**f. Knowledge Of An Occurrence, Offense, Claim Or Suit**

Paragraphs **a.** and **b.** apply to you or to any additional insured only when such "occurrence", offense, claim or "suit" is known to:

**(1)** You or any additional insured that is an individual;

**(2)** Any partner, if you or an additional insured is a partnership;

**(3)** Any manager, if you or an additional insured is a limited liability company;

**(4)** Any "executive officer" or insurance manager, if you or an additional insured is a corporation;

**(5)** Any trustee, if you or an additional insured is a trust; or

**(6)** Any elected or appointed official, if you or an additional insured is a political subdivision or public entity.

This Paragraph **f.** applies separately to you and any additional insured.

**3. Financial Responsibility Laws**

**a.** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

**b.** With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Form:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom a claim is made or "suit" is brought.

**6. Representations**

**a. When You Accept This Policy**

By accepting this policy, you agree:

**(1)** The statements in the Declarations are accurate and complete;

**(2)** Those statements are based upon representations you made to us; and

**(3)** We have issued this policy in reliance upon your representations.

**b. Unintentional Failure To Disclose Hazards**

If unintentionally you should fail to disclose all hazards relating to the conduct of your business at the inception date of this Coverage Part, we shall not deny any coverage under this Coverage Part because of such failure.

**7. Other Insurance**

If other valid and collectible insurance is available for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If other insurance is also primary, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1) Your Work**

That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2) Premises Rented To You**

That is fire, lightning or explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(3) Tenant Liability**

That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(4) Aircraft, Auto Or Watercraft**

If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **A.** – Coverages.

**(5) Property Damage To Borrowed Equipment Or Use Of Elevators**

If the loss arises out of "property damage" to borrowed equipment or the use of elevators to the extent not subject to Exclusion **k.** of Section **A.** – Coverages.

**(6) When You Are Added As An Additional Insured To Other Insurance**

That is other insurance available to you covering liability for damages arising out of the premises or operations, or products and completed operations, for which you have been added as an additional insured by that insurance; or

**(7) When You Add Others As An Additional Insured To This Insurance**

That is other insurance available to an additional insured.

However, the following provisions apply to other insurance available to any person or organization who is an additional insured under this Coverage Part:

**(a) Primary Insurance When Required By Contract**

This insurance is primary if you have agreed in a written contract, written agreement or permit that this insurance be primary. If other insurance is also primary, we will share with all that other insurance by the method described in **c.** below.

**(b) Primary And Non-Contributory To Other Insurance When Required By Contract**

If you have agreed in a written contract, written agreement or permit that this insurance is primary and non-contributory with the additional insured's own insurance, this insurance is primary and we will not seek contribution from that other insurance.

Paragraphs **(a)** and **(b)** do not apply to other insurance to which the additional insured has been added as an additional insured.

When this insurance is excess, we will have no duty under this Coverage Part to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**8. Transfer Of Rights Of Recovery Against Others To Us**

**a. Transfer Of Rights Of Recovery**

If the insured has rights to recover all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**b. Waiver Of Rights Of Recovery (Waiver Of Subrogation)**

If the insured has waived any rights of recovery against any person or organization for all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, we also waive that right, provided the insured waived their rights of recovery against such person or organization in a contract, agreement or permit that was executed prior to the injury or damage.

## F. OPTIONAL ADDITIONAL INSURED COVERAGES

If listed or shown as applicable in the Declarations, one or more of the following Optional Additional Insured Coverages also apply. When any of these Optional Additional Insured Coverages apply, Paragraph **6.** (Additional Insureds When Required by Written Contract, Written Agreement or Permit) of Section **C.**, Who Is An Insured, does not apply to the person or organization shown in the Declarations. These coverages are subject to the terms and conditions applicable to Business Liability Coverage in this policy, except as provided below:

1. **Additional Insured - Designated Person Or Organization**

   WHO IS AN INSURED under Section **C.** is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

   **a.** In the performance of your ongoing operations; or

   **b.** In connection with your premises owned by or rented to you.

2. **Additional Insured - Managers Or Lessors Of Premises**

   **a.** WHO IS AN INSURED under Section **C.** is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured - Designated Person Or Organization; but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Declarations.

   **b.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

   This insurance does not apply to:

   **(1)** Any "occurrence" which takes place after you cease to be a tenant in that premises; or

   **(2)** Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

3. **Additional Insured - Grantor Of Franchise**

   WHO IS AN INSURED under Section **C.** is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured - Grantor Of Franchise, but only with respect to their liability as grantor of franchise to you.

4. **Additional Insured - Lessor Of Leased Equipment**

   **a.** WHO IS AN INSURED under Section **C.** is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured – Lessor of Leased Equipment, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

   **b.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after you cease to lease that equipment.

5. **Additional Insured - Owners Or Other Interests From Whom Land Has Been Leased**

   **a.** WHO IS AN INSURED under Section **C.** is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured – Owners Or Other Interests From Whom Land Has Been Leased, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land leased to you and shown in the Declarations.

   **b.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

   This insurance does not apply to:

   **(1)** Any "occurrence" that takes place after you cease to lease that land; or

   **(2)** Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

6. **Additional Insured - State Or Political Subdivision – Permits**

   **a.** WHO IS AN INSURED under Section **C.** is amended to include as an additional insured the state or political subdivision shown in the Declarations as an Additional

Insured – State Or Political Subdivision - Permits, but only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

**b.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality; or

**(2)** "Bodily injury" or "property damage" included in the "product-completed operations" hazard.

**7. Additional Insured – Vendors**

**a.** WHO IS AN INSURED under Section **C.** is amended to include as an additional insured the person(s) or organization(s) (referred to below as vendor) shown in the Declarations as an Additional Insured - Vendor, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business and only if this Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

**b.** The insurance afforded to the vendor is subject to the following additional exclusions:

**(1)** This insurance does not apply to:

**(a)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**(b)** Any express warranty unauthorized by you;

**(c)** Any physical or chemical change in the product made intentionally by the vendor;

**(d)** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**(e)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**(f)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**(g)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**(h)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(i)** The exceptions contained in Subparagraphs **(d)** or **(f)**; or

**(ii)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**(2)** This insurance does not apply to any insured person or organization from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**8. Additional Insured – Controlling Interest**

WHO IS AN INSURED under Section **C.** is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured – Controlling Interest, but only with respect to their liability arising out of:

**a.** Their financial control of you; or

**b.** Premises they own, maintain or control while you lease or occupy these premises.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

9. **Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization**

    a. WHO IS AN INSURED under Section **C.** is amended to include as an additional insured the person(s) or organization(s) shown in the Declarations as an Additional Insured – Owner, Lessees Or Contractors, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

       (1) In the performance of your ongoing operations for the additional insured(s); or

       (2) In connection with "your work" performed for that additional insured and included within the "products-completed operations hazard", but only if this Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

    b. With respect to the insurance afforded to these additional insureds, this insurance does not apply to "bodily injury", "property damage" or "personal an advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

       (1) The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

       (2) Supervisory, inspection, architectural or engineering activities.

10. **Additional Insured – Co-Owner Of Insured Premises**

    WHO IS AN INSURED under Section **C.** is amended to include as an additional insured the person(s) or Organization(s) shown in the Declarations as an Additional Insured -- Co-Owner Of Insured Premises, but only with respect to their liability as co-owner of the premises shown in the Declarations.

The limits of insurance that apply to additional insureds are described in Section **D.** – Limits Of Insurance.

How this insurance applies when other insurance is available to an additional insured is described in the Other Insurance Condition in Section **E.** – Liability And Medical Expenses General Conditions.

G. **LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

1. "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

    a. (1) Radio;
       (2) Television;
       (3) Billboard;
       (4) Magazine;
       (5) Newspaper;

    b. The Internet, but only that part of a web site that is about goods, products or services for the purposes of inducing the sale of goods, products or services; or

    c. Any other publication that is given widespread public distribution.

    However, "advertisement" does not include:

    a. The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or

    b. An interactive conversation between or among persons through a computer network.

2. "Advertising idea" means any idea for an "advertisement".

3. "Asbestos hazard" means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

4. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

5. "Bodily injury" means physical:

    a. Injury;

    b. Sickness; or

    c. Disease

    sustained by a person and, if arising out of the above, mental anguish or death at any time.

6. "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above;

**c.** All other parts of the world if the injury or damage arises out of:

   **(1)** Goods or products made or sold by you in the territory described in **a.** above;

   **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

   **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in the United States of America (including its territories and possessions), Puerto Rico or Canada, in a "suit" on the merits according to the substantive law in such territory, or in a settlement we agree to.

**7.** "Electronic data" means information, facts or programs:

**a.** Stored as or on;

**b.** Created or used on; or

**c.** Transmitted to or from

computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is subject to the Damage To Premises Rented To You limit described in Section **D.** – Liability and Medical Expenses Limits of Insurance.

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, including an easement or license agreement in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement; or

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** includes that part of any contract or agreement that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

However, Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(1)** above and supervisory, inspection, architectural or engineering activities.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a.**, **b.**, **c.**, or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in **a.**, **b.**, **c.**, or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        **(1)** Equipment, of at least 1,000 pounds gross vehicle weight, designed primarily for:

            **(a)** Snow removal;

            **(b)** Road maintenance, but not construction or resurfacing; or

            **(c)** Street cleaning;

        **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral, written or electronic publication of material that violates a person's right of privacy;

f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

18. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

19. "Products-completed operations hazard";

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed to be completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

20. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

As used in this definition, "electronic data" is not tangible property.

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

22. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. "Volunteer worker" means a person who:

a. Is not your "employee";

b. Donates his or her work;

c. Acts at the direction of and within the scope of duties determined by you; and

d. Is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

24. "Your product":

  a. Means:

    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (a) You;

      (b) Others trading under your name; or

      (c) A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b. Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

  c. Does not include vending machines or other property rented to or located for the use of others but not sold.

25. "Your work":

  a. Means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

  b. Includes:

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    (2) The providing of or failure to provide warnings or instructions.

Form SS 00 08 04 05



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM
COMMON POLICY CONDITIONS
SPECIAL PROPERTY COVERAGE FORM
STANDARD PROPERTY COVERAGE FORM**

I. The following provisions modify the **COMMON POLICY CONDITIONS:**

A. Paragraph **2.** of the **Cancellation** Condition is deleted and replaced by the following:

2. If this policy has been in effect for less than 60 days, we may cancel this policy for any reason, subject to the following:

a. We may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice of cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for:

(a) Nonpayment of premium; or

(b) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

(i) "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds.

Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'; and

(ii) The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard' "

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

B. The following is added to paragraph **A. Cancellation** :

**Cancellation of Policies In Effect For 60 Days or More**

a. If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons, or as permitted under applicable New Jersey law:

(1) Nonpayment of premium;

(2) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

(3) Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

Form SS 01 30 04 08

Page 1 of 4

© 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

**(4)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

**(5)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

**(6)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

**(7)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

**(8)** Loss of or reduction in available insurance capacity;

**(9)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

**(10)** Loss of or substantial changes in applicable reinsurance;

**(11)** Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

**(12)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefor and a reasonable opportunity to respond;

**(13)** Agency termination, provided:

    **(a)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

    **(b)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

**(14)** Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

**b.** If we cancel this policy based on paragraph **a.(1)** or **(2)** above, we will mail a written notice to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

**c.** In the notice of cancellation which is sent to the first Named Insured, we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

**d.** Notice will be sent to the last mailing addresses known to us, by:

    **(1)** Certified mail; or

    **(2)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

**e.** We need not send notice of cancellation if you have:

    **(1)** Replaced coverage elsewhere; or

    **(2)** Specifically requested termination.

**C.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

If we pay a co-insured for loss arising out of an act of domestic violence by another insured, the rights of the co-insured, who did not cooperate

in or contribute to the loss, to recover damage from the perpetrator of domestic violence are transferred to us to the extent of our payment. Following the loss, the co-insured who did not cooperate in or contribute to the loss may not waive such rights to recover against the perpetrator of domestic violence.

D. The following are added and supersede any other provision(s) to the contrary:

1. **Nonrenewal**

   a. We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

   b. This notice will be sent to the first Named Insured at the last mailing address known to us by:

      (1) Certified mail; or

      (2) First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

   c. We need not mail or deliver this notice if you have:

      (1) Replaced coverage elsewhere; or

      (2) Specifically requested termination.

2. **Domestic Partners**

   All references to spouse within this policy shall include a partner in a civil union recognized under New Jersey law.

3. **Use and Maintenance of Underwriting Guidelines**

   Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are

maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

II. The following provisions modify the **STANDARD** or **SPECIAL PROPERTY COVERAGE FORM**:

A. The following is added to paragraph **B. EXCLUSIONS**:

**Domestic Violence Exclusion**

1. We will not pay for loss or damage arising out of any act committed:

   a. By or at the direction of any insured; and

   b. With the intent to cause a loss.

2. This exclusion will not apply to deny payment to a co-insured who did not cooperate in or contribute to the loss if the loss arose out of domestic violence.

3. If we pay a claim pursuant to paragraph **2** above, our payment to the insured is limited to that insured's insurable interest in the property. In no event will we pay more than the Limit of Insurance.

To the extent that the **Concealment, Misrepresentation Or Fraud** Common Policy Condition conflicts with the provisions of paragraph **2.** above, the provisions of **2.** will apply.

III. The following provisions modify the **BUSINESS LIABILITY COVERAGE FORM**:

A. The following is added to the **LIABILITY AND MEDICAL EXPENSE GENERAL CONDITIONS**:

**Your Right to Loss Information**

We will provide the first Named Insured shown in the Declarations the following loss information relating to this and any preceding Liability Coverage Form we have issued to you during the previous three years:

1. A list or other records of each "occurrence" of which we were notified in accordance with paragraph **2.a.** of the Duties in the Event of Occurrence,

Offense, Claim or Suit Condition in this Section.  We will include a brief description of the "occurrence" and information on whether any claim arising out of the "occurrence" is open or closed.

2.  A summary by policy year, of payments made and amounts reserved, stated separately under any applicable Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured during the policy period.  We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so.  In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.

Form SS 01 30 04 08



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – POLLUTANTS AND CONTAMINANTS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

**A.**  Paragraph **G.12.** of the Standard Property Coverage Form and Paragraph **G.15.** of the Special Property Coverage Form is deleted and replaced with the following:

"Pollutants and Contaminants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**Form SS 10 39 07 05**                                                                                                 **Page  1  of  1**

© 2005, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# STRETCH

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A.** The following changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.**, or to the Special Property Coverage Form, Additional Coverages, **A.5.**:

   **1. Accounts Receivable**

   The following Additional Coverage is added:

   **a.** We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover direct physical loss of or physical damage to your records of accounts receivable. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

   **b.** We will pay up to $25,000 in any one occurrence as a Limit of Insurance to cover direct physical loss of or physical damage to your records of accounts receivable that are not located at the "scheduled premises" or in transit. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

   This Additional Coverage is subject to the provisions of the Accounts Receivable Coverage, Form SS 04 39, with the exception of the Limit of Insurance provision contained in that form. Accounts Receivable Coverage, Form SS 04 39 is made a part of this policy whether or not Accounts Receivable coverage is indicated in the Declarations.

   **2. Brands and Labels**

   The following Additional Coverage is added:

   In the event of covered physical loss or physical damage to merchandise that is branded or labeled, we will take all or part of the physically damaged property at an agreed or appraised value and we will pay for:

   **a.** Expenses you incur to:

   **(1)** Stamp salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

   **(2)** Remove the brands or labels, if doing so will not physically damage the merchandise.  You must relabel the merchandise and its containers to comply with the law.

   **b.** Any reduction in the salvage value of the physically damaged merchandise as the result of the removal of the brand or label.

   This Additional Coverage is included within the Business Personal Property Limit of Insurance.

   **3. Claim Expenses**

   The following Additional Coverage is added:

   In the event of covered loss or physical damage we will pay up to $10,000 in any one occurrence as an additional Limit of Insurance to cover reasonable expenses incurred by you at our specific request to assist us in:

   **a.** The investigation of a claim or suit; or

   **b.** The determination of the amount of loss, such as taking inventory, or auditing business records.

   **4. Computer Fraud**

   The following Additional Coverage is added:

   We will pay up to $5,000 in any one occurrence for physical loss of or physical damage to "money", "securities", and other property having intrinsic value resulting directly from computer fraud. Computer fraud means any act of stealing property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside your premises or from a banking institution or similar safe depository, to a

© 2007, The Hartford

person (other than a "messenger") outside those premises or to a place outside those premises.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**5. Computers and Media**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to apply anywhere in the Coverage Territory to cover direct physical loss or physical damage to your computer systems. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Computers and Media, Form SS 04 41, with the exception of the Limit of Insurance provision contained in that form. Computers and Media, Form SS 04 41 is made a part of this policy whether or not Computers and Media coverage is indicated in the Declarations.

**6. Debris Removal**

The following Additional Coverage is added:

In Limits of Insurance, **C.4.b.**, the additional limit of insurance for the Debris Removal Additional Coverage is increased to $25,000 in any one occurrence.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**7. Employee Dishonesty (including ERISA)**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to cover loss from employee dishonesty.  This includes ERISA coverage. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Employee Dishonesty Coverage, Form SS 04 42, with the exception of the Limit of Insurance provision contained in that form. Employee Dishonesty Coverage, Form SS 04 42 is made a part of this policy whether or not Employee Dishonesty Coverage is indicated in the Declarations.

**8. Fine Arts**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance at each "scheduled premises" to apply to Fine Arts. This Limit of Insurance is in addition to any other Limit of

Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Fine Arts Coverage Form, Form SS 04 22, with the exception of the following:

a. The requirement contained under Paragraph **A.1.**, Under A. Coverage, to list and describe Fine Arts in the Declarations or Shedule is deleted when Fine Arts are covered under this Stretch endorsement; and

b. The Limit of Insurance provision does not apply.

c. Paragraph **D.1.** Valuation is deleted and replaced by the following:

The value of Fine Arts will be the market value at the time of physical loss or physical damage.

Fine Arts Coverage, Form SS 04 22 is made a part of this policy whether or not Fine Arts Coverage is indicated in the Declarations.

**9. Forgery**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to cover loss from forgery of covered instruments, money orders, credit cards, and counterfeit money.

This Additional Coverage is subject to the provisions of Forgery Coverage, Form SS 04 86, with the exception of the Limit of Insurance provision contained in that form. Forgery Coverage, Form SS 04 86 is made a part of this policy, whether or not Forgery Coverage is indicated in the Declarations.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**10. Laptop Computers - Worldwide Coverage**

The following Additional Coverage is added:

We will pay up to $5,000 in any one occurrence as a Limit of Insurance to apply to laptop, palmtop and similar portable computer equipment, personal digital assistants (PDAs), and accessories anywhere in the world, including while in transit. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

Limitation:  We will not pay for direct physical loss or physical damage caused by, resulting from, arising out of the theft of this property which in transit as checked baggage.

This Additional Coverage is subject to the provisions of Computers and Media, Form SS

04 41, with the exception of the Limited Insurance provision contained in that form. Computers and Media, Form SS 04 41 is made a part of this policy whether or not Computers and Media coverage is indicated in the Declarations.

## 11. Off-Premises Utility Services - Direct Damage

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover direct physical loss or physical damage to Covered Property caused by the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Off-Premises Utility Services - Direct Damage, Form SS 40 18, with the exception of the Utility Services Limit of Insurance contained in that form. Off-Premises Utility Services – Direct Damage, Form SS 40 18 is made a part of this policy, whether or not Off-Premises Utility Services – Direct Damage coverage is indicated in the Declarations.

## 12. Outdoor Signs

The following Additional Coverage is added and supersedes any other coverage for signs in this policy:

We will pay up to full value of outdoor signs at each "scheduled premises" to cover direct physical loss of or physical damage to outdoor signs.

This Additional Coverage is subject to the provisions of Outdoor Signs, Form SS 04 44, with the exception of the Limit of Insurance provision and paragraph **E.** of that form. Outdoor Signs, Form SS 04 44 is made a part of this policy whether or not Outdoor Signs coverage is indicated in the Declarations.

This Additional Coverage is in addition to any recoverable Limits of Insurance applicable to Building or Business Personal Property.

## 13. Pairs or Sets

The following Additional Coverage is added:

If pairs or sets of stock are damaged by a Covered Cause of Loss, we will pay any reduction in value of the undamaged parts of such damaged pairs or sets.

As used in this Additional Coverage, the term stock means merchandise held in storage or for sale, raw materials, and goods in-process or finished.

This coverage is included within the Business Personal Property Limit of Insurance.

## 14. Personal Property of Others

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance at each "scheduled premises" to apply to personal property of others that is in your care, custody or control. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Personal Property of Others, Form SS 04 45, with the exception of the statement concerning Limit of Insurance applicable to Personal Property of Others shown in the Declarations, contained in that form. Personal Property of Others, Form SS 04 45 is made a part of this policy whether or not Personal Property of Others coverage is indicated in the Declarations.

## 15. Property at Other Premises

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence to extend coverage for Business Personal Property at any premises not described in the Declarations.

This includes property that you have sold under an installation agreement and your responsibility continues until the property is accepted by the customer.

This Extension does not apply to:

**a.** Property in the care, custody or control of your salespersons;

**b.** Property at any fair or exhibition;

**c.** Property in transit; or

**d.** Property temporarily stored at any premises not described in the Declarations.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

## 16. Salespersons' Samples

The following Additional Coverage is added:

We will pay up to $1,000 in any one occurrence as an additional Limit of Insurance to extend Business Personal Property to cover:

**a.** Samples of your stock in trade (including containers); and

**b.** Similar property of others;

but only while such property is in:

    **(1)** Your custody while acting as a sales representatives; or

    **(2)** In the custody of your sales representative or agents.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**17. Sewer and Drain Back Up**

The following Additional Coverage is added:

We will pay for direct physical loss of or physical damage to Covered Property solely caused by water that backs up from a sewer or drain. This coverage is included within the Covered Property Limits of Insurance.

**THIS IS NOT FLOOD INSURANCE**

We will not pay for water or other materials that back up from any sewer or drain when it is caused by any flood. This applies regardless of the proximity of the flood to Covered Property. Flood includes the accumulation of surface water, waves, tides, tidal waves, overflow of streams or other bodies of water, or their spray, all whether driven by wind or not that enters the sewer or drain system.

**18. Sump Overflow or Sump Pump Failure**

The following Additional Coverage is added:

The maximum we will pay in any one occurrence is $15,000 for any loss, including Business Income or Extra Expense, resulting from physical loss or physical damage to Covered Property that is caused by or resulting from water that overflows due to the failure of a sump pump, sump pump well, or any other type of system designed to remove subsurface water from the foundation area if the failure is directly or indirectly the result of a Covered Cause of Loss. Failure means an abrupt cessation of normal functioning. This Limit of Insurance is the maximum we will pay regardless of any other coverage provided under this policy.

This Additional Coverage is subject to the terms and conditions of this policy with the exception of:

**a.** Paragraph **B.1.f.**, Power Failure, of the Standard Property Coverage Form and Paragraph **B.1.d.**, Power Failure, of the Special Property Coverage Form; and

**b.** Paragraph **B.1.h.(4)**, Water, of the Standard Property Coverage Form and Paragraph **B.1.f.(4)**, Water, of the Special Property Coverage Form.

**THIS IS NOT FLOOD INSURANCE**

We will not pay for water or other materials that overflow from a sump when the overflow is caused by any flood. This applies regardless of the proximity of the flood to Covered Property. Flood includes the accumulation of surface water, waves, tides, tidal waves, overflow of streams or other bodies of water, or their spray, all whether driven by wind or not that enters the sewer or drain system.

**19. Temperature Change**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover direct physical loss of or physical damage to perishable stock caused by or resulting from a change of temperature or contamination by a refrigerant.

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Temperature Change Coverage, Form SS 04 46, with the exception of the Limit of Insurance provision contained in that form. Temperature Change, Form SS 04 46 is made a part of this policy whether or not Temperature Change coverage is indicated in the Declarations.

**20. Tenant Building and Business Personal Property Coverage - Required by Lease**

The following Additional Coverage is added:

The maximum we will pay in any one occurrence is $20,000 as a Limit of Insurance to apply to direct physical loss of or physical damage to Building and Business Personal Property for which you have a contractual responsibility to insure. This includes building fixtures, machinery and equipment.

**21. Transit Property in the Care of Carriers for Hire**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to apply to direct physical loss of or physical damage to property while in transit at your risk. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Transit Property in the Care of Carriers for Hire, Form SS 04 30, with the exception of the Limit of Insurance provision contained in that form. Transit Property in the Care of Carriers for Hire, Form SS 04 30 is made a part of this policy whether or not Transit Property in the Care of Carriers for Hire is indicated in the Declarations.

**22. Unauthorized Business Card Use**

The following Additional Coverage is added:

The maximum we will pay in any one occurrence is $2,500 as a Limit of Insurance to cover loss resulting from the theft or unauthorized use of your Business Credit, Debit or Charge Cards, including the reasonable legal expenses you incur.

The Business Credit, Debit or Charge Cards must be issued to you or registered in your name or the business name and be used solely for business purposes.

**Limitation.** We will not pay for the theft or unauthorized use of Business Credit, Debit or Charge Cards entrusted to others or your employees.

**23. Valuable Papers and Records**

The following Additional Coverage is added:

**a.** We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply at each "scheduled premises" to cover direct physical loss of or physical damage to your valuable papers and records. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

**b.** We will pay up to $25,000 in any one occurrence as a Limit of Insurance to cover direct physical loss of or physical damage to your valuable papers and records that are not located at the "scheduled premises" or in transit. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of the Valuable Papers and Records Coverage, Form SS 04 47, with the exception of the Limit of Insurance provision contained in that form. Valuable Papers and Records Coverage, Form SS 04 47 is made a part of this policy whether or not Valuable Papers and Records coverage is indicated in the Declarations.

**B.** The following changes apply to the Standard Property Coverage Form, Coverage Extensions, **A.5.**, or to the Special Property Coverage Form, Coverage Extensions, **A.6.**. The Limits of Insurance stated in the paragraphs below replace the Limits of Insurance stated in the Standard Property Coverage Form or the Special Property Coverage Form for the coverages provided under this section. Except as otherwise stated, any other Limit of Insurance purchased under this policy as an option for the following coverages is in addition to the Limit of Insurance stated below:

**1.** Newly Acquired or Constructed Property

The following changes are made to Newly Acquired or Constructed Property:

**a. Building**

**(1)** The most we will pay in any one occurrence in subparagraph **(1)** is increased from $500,000 to $1,000,000 at each premises.

**(2)** The Limit of Insurance stated above is the maximum Limit of Insurance available for this coverage under this policy.

**b. Business Personal Property**

**(1)** The most we will pay in any one occurrence in subparagraph **(2)** is increased from $250,000 to $500,000 at each premises.

**(2)** The Limit of Insurance stated above is the maximum Limit of Insurance available for this coverage under this policy.

**c. Business Income and Extra Expense**

**(1)** If Business Income or Extra Expense are provided under this policy, the most we will pay in any one occurrence in subparagraph **(3)** is increased from $50,000 to $500,000 in any one occurrence at each premises.

**(2)** The Limit of Insurance stated above is the maximum Limit of Insurance available for this coverage under this policy.

**2. Outdoor Property**

In the Outdoor Property Coverage Extension, the most we will pay in any one occurrence is increased to $20,000, but not more than $1,000 for any one tree, shrub or plant.

**3. Personal Effects**

In the Personal Effects Coverage Extension, the most we will pay in any one occurrence is increased from $10,000 to $25,000 at each "scheduled premises."

The Limit of Insurance stated above is the maximum Limit of Insurance available for this coverage under this policy.

**4. Property Off-Premises**

In the Personal Property Off-Premises Coverage Extension, the most we will pay in any one occurrence in subparagraph **A.6.h.(2)** is increased from $2,500 to $15,000.

**C.** The following changes apply only if Business Income and Extra Expenses are covered under this policy. These changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.**, or to the Special Property Coverage Form, Additional Coverages, **A.5.**:

**1. Business Income Extension for Off-Premises Utility Services**

The following Additional Coverage is added:

We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply at each

"scheduled premises" to cover loss of Business Income and Extra Expense caused by or resulting from the interruption of utility services. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

This Additional Coverage is subject to the provisions of Business Income Extension for Off-Premises Utility Services, Form SS 04 19, with the exception of the Limit of Insurance provision contained in that form. Business Income Extension for Off-Premises Utility Services, Form SS 04 19 is made a part of this policy whether or not Business Income Extension for Off-Premises Utility Services coverage is indicated in the Declarations.

2. **Business Income Extension for Web Sites**

The following Additional Coverage is added:

We will pay up to $10,000 in any one occurrence as a Limit of Insurance to cover loss of Business Income you sustain due to the necessary interruption of business operations caused by or resulting from direct physical loss of or physical damage to your Web Site operation at the premises of a vendor acting as your service provider. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage.

Such interruption must be caused by or result from a Covered Cause of Loss.

a. **Coverage Time Period**

We will only pay for loss you sustain during the 7-day period immediately following the first 12 hours after the Covered Cause of Loss.

b. **Conditions**

This coverage applies only:

(1) If you have a back-up copy of your Web Page stored at a location other than the site of the Web Site vendor.

(2) To the extent that Business Income is permanently lost.

3. **Business Income from Dependent Properties**

The following Additional Coverage is added:

We will pay up to $25,000 in any one occurrence as a Limit of Insurance to apply to loss of Business Income and Extra Expense due to direct physical damage to property of others you depend on. This Limit of Insurance is in addition to any other Limit shown in the Declarations for specific Dependent Properties.

This additional coverage is subject to the provisions of Business Income from Dependent Properties, Form SS 04 78, with the exception of the Limit of Insurance provision contained in that

form. Business Income from Dependent Properties, Form SS 04 78 is made a part of this policy whether or not Business Income from Dependent Properties coverage is indicated in the Declarations.

There is no requirement for Dependent Properties to be scheduled for the coverages provided by this Stretch endorsement to apply.

4. **Extended Business Income**

In the Extended Business Income Additional Coverage, paragraph **4.j.(1)(b)(ii)** of the Standard Property Coverage Form and paragraph **5.r.(1)(b)(ii)** of the Special Property Coverage Form are amended to read as follows:

(b) 60 consecutive days after the date determined in (a) above.

D. The following changes apply to Paragraph **E.5.d.**, Loss Payment, of the Standard Property Coverage Form and the Special Property Coverage Form:

1. **Valuation Changes**

The following are added to the Loss Payment Property Loss Condition **E.5.d.**:

(10)**Commodity Stock**

We will determine the value of merchandise and raw materials that are bought and sold at an established market exchange. We will determine the value at:

(a) The posted market price as of the time and place of loss;

(b) Less discounts and expenses you otherwise would have had.

(11)**"Finished Stock"**

We will determine the value of goods that you have manufactured at the selling price less discounts and expenses you otherwise would have had.

(12)**Mercantile Stock - Sold**

We will determine the value of goods you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME EXTENSION FOR OFF-PREMISES UTILITY SERVICES

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**

This insurance applies only when Business Income and Extra Expense is shown in the Declarations as applicable. Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A. BUSINESS INCOME EXTENSION FOR OFF-PREMISES UTILITY SERVICES**

This Coverage Extension applies only when the Business Income Additional Coverage is included in this policy.

We will pay for loss of Business Income or Extra Expense at the "scheduled premises" caused by the interruption of service to the "scheduled premises". The interruption must result from direct physical loss or physical damage by a Covered Cause of Loss to the following property not on "scheduled premises":

1. "Water Supply Services";

2. "Communication Supply Services"; or

3. "Power Supply Services".

**B. WAITING PERIOD**

We will only pay for loss you sustain after the first 12 consecutive hours following the direct physical loss of or physical damage to the off-premises property to which this endorsement applies. We will not pay for any reduction in business income or extra expense after electricity, steam or gas has been restored to the "scheduled premises".

**C. LIMIT OF INSURANCE**

The most we will pay in any one occurrence for loss under this extension is the limit of insurance shown in the Declarations at each "scheduled premises".

**D. ADDITIONAL DEFINITIONS**

1. **"Water Supply Services"**, meaning the following types of property supplying water to the "scheduled premises":

   **a.** Pumping stations; and

   **b.** Water mains.

2. **"Communication Supply Services"**, meaning property, including overhead transmission lines supplying communication services, including telephone, radio, microwave or television services, to the "scheduled premises", such as:

   **a.** Communication transmission lines, including optic fiber transmission lines;

   **b.** Coaxial cables; and

   **c.** Microwave radio relays except satellites.

3. **"Power Supply Services"**, meaning the following types of property supplying electricity, steam or gas, including overhead transmission lines to the "scheduled premises":

   **a.** Utility generating plants;

   **b.** Switching stations;

   **c.** Substations;

   **d.** Transformers; and

   **e.** Transmission Lines.

Form SS 04 19 04 09                                                                                     Page 1 of 1

© 2009, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TRANSIT COVERAGE – PROPERTY IN THE CARE OF CARRIERS FOR HIRE

This endorsement modifies insurance provided under the following:

**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement the terms and conditions of the policy and of the Special Property Coverage Form apply to the insurance stated below.

**A.** With respect to this Transit Coverage – Property in the Care of Carriers for Hire only, the following changes are made to the Special Property Coverage Form:

  **1.** Under **A.4.** Limitations, subparagraph **c.(3)** which limits coverage for patterns, dies, molds and forms, is deleted.

  **2.** Under **B.** Exclusions

    **a.** Exclusions **1.a.** (Earth Movement) and **1.f.** (Water) do not apply to property in transit.

    **b.** Exclusions **2.e.** (Dishonesty) and **2.g.** (Exposed Property) do not apply to property in custody of a carrier for hire.

    **c.** Exclusion **2.f.** (False Pretense) does not apply to loss or damage caused by your good faith acceptance of false bills of lading or shipping receipts.

    **d.** The following Exclusion is added:

      We will not pay for physical loss or physical damage caused by or resulting from poor or insufficient packaging or packing.

**B.** **Transit Coverage – Property in the Care of Carriers for Hire**

  **1.** The insurance that applies to your Business Personal Property and Personal Property of Others is extended to apply to shipments of that property while in transit at your risk, by motor vehicle, railroad car or aircraft between points within the Coverage Territory.  This includes property you have sold and for which your responsibility continues until it is delivered.

  **2.** The Transit Coverage – Property in the Care of Carriers for Hire also applies to:

    **a.** **Expenses to Inspect, Repackage and Reship Damaged Shipments**

      The necessary additional expenses you incur to inspect, repackage and reship Covered Property which is physically damaged as a result of a Covered Cause of Loss.

    **b.** **Expenses to Protect Covered Property from Spoilage or Change in Temperature**

      The necessary additional expense you incur to temporarily store Covered Property in a temperature controlled environment in order to avoid or minimize physical loss or physical damage to such property from spoilage or change in temperature.  Such temporary storage must be made necessary by the sudden and accidental breakdown of heating or refrigeration unit(s) on transporting conveyances.

      This additional expense will not include:

      **(1)** Expenses to repair or replace heating or refrigeration unit(s);

      **(2)** Costs or penalties due to detention or delay of any vehicles, trailers, conveyances or containers; or

      **(3)** Costs for additional wages, room, board or meals.

    **c.** **F.O.B. Shipments**

      Outgoing shipments where the risk of physical loss or physical damage is transferred to the buyer when such property leaves your premises.

      You must use all reasonable means to collect the amount due you from the buyer

© 2005, The Hartford

before making a claim under this Transit Coverage. We will not make payment until you grant us the right of recovery against the buyer.

**d. Loading and Unloading**

Shipments during loading or unloading and within 500 feet of any transporting conveyance.

**e. Return Shipments**

Outgoing shipments which have been rejected by the consignee or are not deliverable, while:

**(1)** In due course of transit, being returned to you; or

**(2)** Up to 10 days after delivery or attempted delivery awaiting return shipment to you.

Payment under paragraphs **a., b., c., d. and e.** above will not increase the Transit Coverage Limit of Insurance.

**C. Under this Transit Coverage – Property in the Care of Carriers for Hire, we will not pay for:**

**1.** Property in the care, custody or control of your salespersons.

**2.** Mail shipments in the custody of the U.S. Postal Service.

**3.** Property of Others for which you are responsible as a:

**a.** Carrier for hire; or

**b.** Carloader, consolidator, broker, freight forwarder, shipping association, or other arranger of transportation.

**4.** Property in or on a motor vehicle you own, lease or operate.

**D. Limit of Insurance**

The Limit of Insurance shown in the Declarations for Transit Coverage – Property in the Care of Carriers for Hire is the most we will pay for all physical loss or physical damage in any one occurrence to property insured under this endorsement.

**E. Deductible**

We will not pay for physical loss or physical damage in any one occurrence until the amount of physical loss or physical damage exceeds $250. We will then pay the amount of physical loss or physical damage in excess of $250 up to the applicable Limit of Insurance.

**F. Additional Conditions**

**1.** Valuation

Property Loss Condition **E.5.** is deleted and replaced by the following:

**a.** Valuation

**(1)** Property You Own

The value of Covered Property will be the amount of invoice plus accrued charges, prepaid charges and charges since shipment; or

**(2)** In the absence of an invoice, the value of Covered Property will be its actual cash value, with proper deduction for depreciation, at the point of destination on the date of expected arrival.

**b.** Property of Others

The most we will pay for Covered Property owned by others is the lesser of:

**(1)** Your legal liability for direct physical loss or physical damage to such property; or

**(2)** What we would pay if you had owned the property.

**2.** Impairment of Rights of Recovery

We will not pay for physical loss or physical damage, if you impair our rights to recover damages from any carrier for hire. But you may accept from carriers for hire bills of lading, receipts or contracts of transportation which contain a limitation of value.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# BARBER AND BEAUTY SHOP PROFESSIONAL SERVICE LIABILITY

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

Solely with respect to the coverage provided by this endorsement, the Business Liability Coverage Form is amended as follows:

**A. Amended Coverages**

1. The Insuring Agreement (Section **A.** – COVERAGES) is amended to add the following:

   Coverage is extended to include "bodily injury", "property damage" and "personal and advertising injury" arising out of the rendering of or failure to render professional services performed in the course of the insured's barber shop, beauty shop or nail salon business.

2. Section **C.**, WHO IS AN INSURED, is amended to add the following:

   Any independent contractor who performs beautician, barber shop or nail related professional services on behalf of the named insured.  But only for damages that result from:

   a. The performance of or failure to perform such services; or

   b. The named insured premises.

   However, with respect to insurance afforded to any independent contractor of the named insured, this insurance does not apply to:

   a. "Bodily injury" to:

      (1) The named insured;

      (2) Employees of the named insured; or

      (3) Any other independent contractor.

   b. "Property damage" to property owned, occupied or used by, rented to, in care, custody or control of, or over which physical control is being exercised for any purpose by:

      (1) Another beautician or barber independent contractor; or

      (2) An employee of the named insured.

**B. Amended Exclusions**

   Exclusion **1.j. Professional Services** (Section **B.** – EXCLUSIONS) does not apply to the extent that coverage is granted in paragraph **A.** above.

**C. Additional Exclusions**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

   (a) Any services rendered or products used in treatments that are prohibited by law or otherwise beyond the scope of any license granted to the insured.

      But the failure of the insured or insured's "employee" to perform a predisposition or skin test will not be deemed a violation of a prohibition under the law;

   (b) Any services rendered in connection with any exercise, slendering, weight reducing or similar program;

   (c) Any equipment or process used to tan skin;

   (d) The use of steam or electric heat baths or steam or electric heat saunas;

   (e) Any form of body massage or massage therapy (except facial massage);

**Form SS 04 37 10 08**

**Page 1 of 2**

(f) Chiropody or podiatry;

(g) Any goods or products manufactured by the insured;

(h) The use, administration or application of any dye or coloring to eyelashes or eye brows except mascara or eyebrow pencils;

(i) Body piercing (not including ear piercing);

(j) Any services rendered in connection with the process of dermabrasion, ablation, surgical removal of skin blemishes or imperfections by abrasion or ablation, or any similar services, however, this does not include non-surgical microdermabrasion;

(k) Any form of injection of substances into the skin, including but not limited to Botox injections;

(l) Any face lifting, plastic surgery, removal or attempted removal of warts, moles or similar types of growths, or removal or attempted removal of scars;

(m) The use of any apparatus employing x-rays, electric rays or laser devices to remove hair or hair removal by electrolysis;

(n) Tattooing, including but not limited to the insertion of pigments into or under the skin, or tattoo removal;

(o) The use, administration or application of permanent makeup;

(p) Any hair implants and/or hair transplants or any advice or recommendations given concerning such services;

(q) The use, administration or application of chemical peels; or

(r) The failure to properly evaluate, treat or diagnose a skin condition.

2. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" caused by:

(a) Any person employed in violation of law as to age, or under age of 16 years if there is no legal age limit;

(b) Any operator of a permanent waving machine who has not had at least 2 months actual experience under the supervision of a trained operator;

**D. Clarification As Respects The Liability And Medical Expenses Limits of Insurance**

The Limits of Insurance for any "occurrence" covered by this endorsement are *within*, and **not** *in addition to*, the otherwise applicable Limits of Insurance, as provided by Section **D. –** LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE.

Any damages we pay on your behalf for a covered "occurrence" will erode the General Aggregate limit as respects the Limits of Insurance available to make payments for other claims covered by the Business Liability Coverage Form. Consequently, any payment made on your behalf for covered losses other than those provided by this endorsement will also erode the General Aggregate limit.

For the purpose of determining the limits of insurance for the coverage provided by this endorsement, any act or omission together with all related acts or omissions in the furnishing of professional services in the course of the insured's barber shop, beauty shop or nail salon business to any one person will be considered one "occurrence" with respect to "bodily injury" or "property damage" and one offense with respect to "personal and advertising injury".

Form SS 04 37 10 08



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ACCOUNTS RECEIVABLE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** When shown in the Declarations as applicable, the Limit of Insurance stated in paragraph **A.5.a.(1), Accounts Receivable,** in the Standard Property Coverage Form and **A.6.a.(1), Accounts Receivable**, in the Special Property Coverage Form is replaced by the Limit of Insurance for Accounts Receivable shown in the Declarations. All other terms and conditions of the Accounts Receivable Coverage Extension apply to this Optional Coverage.

**B. Limit of Insurance**

The most we will pay under this coverage extension in any one occurrence is the Limit of Insurance shown in the Declarations for Accounts Receivable.

**C. Deductible**

We will not pay for loss in any one occurrence unless the amount of loss exceeds the policy deductible stated in the Declarations.  We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

**D. Additional Conditions**

(1) If you cannot accurately establish the value of accounts receivable outstanding as of the time of direct physical loss or physical damage the following method will be used:

   (a) Determine the total of the average monthly value of accounts receivable for the 12 months immediately preceding the month in which the direct physical loss or physical damage occurred; and

   (b) Adjust that total for any normal fluctuations in the value of accounts receivable for the month in which the direct physical loss or physical damage occurred or for any demonstrated variance from the average for that month.

(2) The following will be deducted from the total value of accounts receivable, however that value is established:

   (a) The value of the accounts for which there is no loss or damage;

   (b) The value of the accounts that you are able to reestablish or collect;

   (c) A value to allow for probable bad debts that you are normally unable to collect; and

   (d) All unearned interest and service charges.

© 2005, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMPUTERS AND MEDIA

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A. Computer Equipment, Data and Software**

  **1. Coverage**

    We will pay for direct physical loss of or physical damage, to "computer equipment" and the cost to research, replace or restore physically lost or physically damaged "data" and "software" subject to the Limit of Insurance shown in the Declarations for Computers and Media while anywhere within the policy territory, and while in transit, but only if:

    **a.** Owned by you; or

    **b.** Owned by others but in your care, custody and control regardless of whether you use it for personal or business needs.

  **2. Property Not Covered**

    "Computer Equipment" as used in this optional coverage does not include:

    **a.** Source documents, other than manuals purchased with hardware or "software";

    **b.** Worksheets and printouts;

    **c.** Property held for sale or lease;

    **d.** Property leased or rented to others; or

    **e.** "Money", deeds, notes, "securities" or other financial instruments, including such instruments in electronic form.

  **3. Extended Causes of Loss**

    Direct physical loss or physical damage to "computer equipment", "data" or "software" is extended to include the following:

    **a.** Electromagnetic injury caused by:

      **(1)** Blackout or brownout;

      **(2)** Power Failure;

      **(3)** Airport security check, or radio or telephone line interference; or

      **(4)** Electromagnetic disturbance outside the "computer system".

    **b.** Head crash, meaning physical damage to disks, tapes or hardware caused by a contact of electromagnetic heads (which read or write information) with such disks or tapes;

    **c.** Damage caused by a "computer virus"; and

    **d.** Theft of "computer equipment" away from the "scheduled premises". Theft means an act of stealing or an attempt to steal. Theft includes loss of property from a known place when it is likely that the property has been stolen.

  **4. Exclusion**

    We will not pay to research, replace or restore physically lost or physically damaged "data" or "software" which is licensed, leased or rented to others.

  **5. Deductible**

    We will not pay for loss or damage in any one occurrence to "computer equipment" until the amount of loss or damage exceeds $250, unless a separate deductible is stated in the Declarations for Computers and Media Coverage.

**B. Additional Coverage**

  **1. Business Income and Extra Expense Coverage**

    If Business Income and Extra Expense Coverage is included in this policy then the following applies.

© 2009, The Hartford

a. **Coverage**

The following Additional Coverages in the Standard or Special Property Coverage Form apply to "computer equipment", "data" and "software":

**(1)** Business Income;

**(2)** Extra Expense;

**(3)** Civil Authority; and

**(4)** Extended Business Income.

b. **Coverage Limitations**

The following limitations apply only if the physical loss or physical damage is a direct result of the **Extended Causes of Loss** for "computer equipment", "software" and "data" as indicated below.

**(1) Limit of Insurance**

This Additional Coverage is included in the Limit of Insurance for Computers and Media shown in the Declarations when the actual loss of business income and extra expense you incur due to the necessary suspension (slowdown or cessation) of your operations is a result of:

**(a)** A cause of loss included in **A.3.a.**, **b.** or **c., Extended Causes of Loss,** of this endorsement; or

**(b)** Physical damage or physical loss to "computer equipment", "data", and "software" that was away from the scheduled premises at the time of loss.

This is not an additional limit of insurance.

**(2) Waiting Period**

We will not pay for any covered Business Income loss you sustain under this provision due to physical loss or physical damage to "data", or "software" caused by a "computer virus" which results in the necessary suspension (slowdown or cessation) of your business described in the Declarations during the first 12 hours that immediately follow the start of such suspension. This Waiting Period applies independent of the deductible applicable to "Computer Equipment".

2. **Equipment Breakdown Coverage**

The Additional Coverage for Equipment Breakdown applies to "computer equipment",

"data", and "software" when this endorsement is attached to the Special Property Coverage Form and Equipment Breakdown Additional Coverage is included on the policy.

C. **Exclusion of Certain Computer Related Losses**

The provisions of this endorsement do not override or in any way affect the application of the Exclusion of Certain Computer Related Losses if such exclusion is endorsed to or otherwise made a part of this policy. That exclusion addresses the inability of a "computer system" to correctly recognize process, distinguish, interpret or accept one or more dates or times.

D. **Exclusions**

1. Section **B. Exclusions,** of the Standard or Special Property Coverage Form do not apply to coverage provided by this endorsement, except for the exclusions of:

   **a.** Earth Movement;

   **b.** Governmental Action;

   **c.** Nuclear Hazard;

   **d.** War and Military Action; and

   **e.** Water.

2. **Additional Exclusions**

We will not pay for loss or damage caused by or resulting from:

   **a.** Input, programming or processing errors;

   **b.** Mechanical breakdown or failure, however head crash will not be considered as a mechanical breakdown or failure.

   This exclusion does not apply to "computer equipment", "data", and "software" when this endorsement is attached to the Special Property Coverage Form and Equipment Breakdown Additional Coverage is included on the policy;

   **c.** Faulty construction, materials or workmanship;

   **d.** Error, omission or deficiency in design;

   **e.** Rust, corrosion, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

   **f.** Dryness or dampness of atmosphere; changes in or extremes of temperature;

   **g.** Wear and tear, marring or scratching;

   **h.** Insects, birds, rodents, or other animals;

   **i.** Obsolescence;

**j.** Dishonest or criminal acts by you, any of your partners, employees, trustees, authorized representatives or anyone to whom you entrust the property for any purpose, whether acting alone or in collusion with others;

**k.** Unexplained disappearance, however we will cover theft of "computer equipment" as provided in provision **A.3.d.**;

**l.** Unlawful trade, or seizure by orders of governmental authority;

**m.** Delay or loss of market; and

**n.** Theft of laptop, palmtop or similar portable property while in transit as checked baggage.

## E. Limit of Insurance

The most we will pay for physical loss or physical damage in any one occurrence is the Limit of Insurance for Computers and Media shown in the Declarations.

## F. Loss Payment

This Loss Payment condition is applicable to the "computer equipment", "data", and "software" coverage provided by this endorsement. We will determine the value of Covered Property as follows:

**1.** "Computers," "peripheral devices", "media", and manuals at the full cost of repair or replace the property subject to the Limit of Insurance. However, we will not pay more for physical loss or physical damage on a replacement cost basis than the lesser of and the following:

**a.** The amount necessary to replace the item with similar property possessing the minimum characteristics necessary to perform the same functions when replacement with identical property is not possible or practical.

**b.** The amount necessary to repair or replace the item with one substantially identical to the physically lost or physically damaged item. In the event of a covered total loss to one or more items, we will allow up to 20% over the current replacement cost as described in this provision, as an Optional Upgrade Allowance for the purchase of new property with upgraded processing or performance characteristics. This Optional Upgrade Allowance will, at our option, be payable after you have purchased the

replacement property and have provided us with written proof of such purchases; or

**c.** If the item is not repaired or replaced, we will not pay more than the actual cash value of the item at the time of physical loss or physical damage. If you elect this option, you have the right to make further claim within 180 days after loss for any additional payment on a replacement cost basis.

**2.** In the event of physical loss or physical damage to "data" or "software", we will pay the reasonable amount you actually spend to reproduce, restore, or replace the physically lost or physically damaged "data" or "software". This includes the cost of computer consultation services for restoration and the cost of research to reconstruct lost or damaged information. But we will not pay more than the Limit of Insurance for Computers and Media specified in the Declarations.

**3.** In the event of physical loss or physical damage to any part of "computer equipment", "data" or "software", we will pay only what it would cost to replace, reproduce, or restore the physically lost or physically damaged part.

## G. Additional Definitions

**1.** "Computer Virus" means a program, which is intentionally created to cause damage or disruption in the computer operations of a party using or coming in contact in any way with the program.

**2.** "Computer System" includes "computer", "peripheral devices", "software", and "data" necessary for the "computer" to function for its intended purpose.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE DISHONESTY COVERAGE

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**The following is added to Additional Coverages:**

**A.  COVERAGE**

We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Causes of Loss.

**1.  Covered Property**

Covered Property means "money", "securities", and other tangible property of intrinsic value and not otherwise excluded.

**2.  Covered Causes of Loss**

Covered Causes of Loss means dishonest acts committed by an "employee", except you, whether identified or not, acting alone or in collusion with other persons, with the manifest intent to:

a.  Cause you to sustain loss; and also

b.  Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions or other employee benefits earned in the normal course of employment) for:

(1)  That "employee"; or

(2)  Any person or organization intended by the "employee" to receive that benefit.

**3.  Additional Coverages**

a.  **Employees Temporarily Outside Coverage Territory**

We will pay for loss caused by any "employee" while temporarily outside the Coverage Territory for a period of not more than 90 days.

b.  **Employees at Client or Customer Premises**

We will pay for any loss caused by your "employee" while at the premises of your client or customer.

Any claim for loss sustained by any client or customer and covered by this policy may only be made by you in your Proof of Loss. No third party has a direct right against this insurance and no third party may make a direct claim against us as the writer of your insurance.

c.  **Welfare and Pension Plan ERISA Compliance**

In compliance with certain provisions of the Employee Retirement Income Security Act (ERISA):

1.  For the purposes of this insurance, the following are added as Named Insureds under this Employee Dishonesty Coverage:

(a)  Any Employee Welfare Benefit Plan, or

Form SS 04 42 09 07

Page 1 of 3

© 2007, The Hartford

(b) Any Employee Benefit Pension Plan (hereafter called Plan) owned, controlled or operated by you and which you provide solely for the benefit of your employees.

(2) "Employee" also includes any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or a manager who is an independent contractor, of any Employee Welfare of Pension Benefit Plan (hereafter called Plan) insured under this insurance; and

(b) Your director or trustee while that person is handling funds or other property of any Plan insured under this insurance.

(3) If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance under this Employee Dishonesty Coverage Form that is sufficient to provide an amount of insurance for each Plan that is at least equal to that required if each Plan were separately insured.

(3) If the insured first named in the Declarations is an entity other than a Plan, any payment we make to that insured for loss sustained by any Plan will be held by that insured for the use and benefit of the Plan(s) sustaining the loss.

(4) If two or more Plans are insured under this insurance, any payment we make for loss:

(a) Sustained by two or more plans or

(b) Of commingled funds or other property of two or more Plans

That arises out of one occurrence, is to be shared by each Plan sustaining loss in the proportion that the amount of insurance required for each such Plan under ERISA provisions bears to the total of those amounts.

(5) The deductible provision does not apply to loss sustained by any Plan subject to ERISA which is insured under this insurance.

4. **Theft Limitation Exception**

Paragraph **A.4.c.**, **Limitations** of the Special Property Coverage Form does not apply to coverage provided by this endorsement.

B. **EXCLUSIONS**

The following Exclusions apply in addition to the Exclusions in the Crime Common Conditions and Exclusions.

1. **Employee Terminated Under Prior Insurance**

We will not pay for loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been terminated and not reinstated since the last such termination.

2. **Insurance Operations**

We will not pay for direct or indirect loss resulting from contractual or extra-contractual liability sustained by you in connection with the issuance of contracts or purported contracts of insurance, indemnity or suretyship.

3. **Inventory Shortages**

We will not pay loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

a. An inventory computation; or

b. A profit and loss computation.

4. **Partners**

We will pay only for loss caused by any partner or member of a limited liability corporation that is in excess of the sum of:

a. Any amounts you owe that partner or member; and

b. The value of that partner's or member's ownership interest determined by the closing of you organization's books on the date of discovery of the loss by anyone in your organization not involved in the Employee Dishonesty; and

c. Any applicable deductible amount.

5. **Trading Loss**

We will not pay for loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

    Form SS 04 42 09 07

## C.  ADDITIONAL CONDITIONS

The following conditions apply.

**Termination As To Any "Employee"**

This insurance is terminated as to any "employee":

1.  Immediately upon discovery by;

    a.  You; or

    b.  Any of your partners, officers or directors not in collusion with the "employee";

    Of any dishonest act committed by that "employee" whether before or after becoming employed by you.

2.  On the date specified in a notice mailed to you. That date will be at least 30 days after the date of mailing.

    The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice.  Delivery of notice is the same as mailing.

## D.  LIMIT OF INSURANCE

The most we will pay for each occurrence of loss under this endorsement is the Employee Dishonesty Limit of Insurance stated in the Declarations.

The Additional Coverages specified in this endorsement are included in this Limit of Insurance.

## E.  DEDUCTIBLE

We will not pay for loss in any one occurrence unless the amount of loss exceeds the Deductible shown Paragraph **D.5.** of the Standard Property Coverage Form or Paragraph **D.5.** the Special Property Coverage Form, unless a separate Deductible for Employee Dishonesty applies and is stated in the Declarations.  We will then pay the amount of the loss in excess of the Deductible, up to the Limit of Insurance.

## F.  OCCURRENCE DEFINITION

As used in this Endorsement, occurrence means all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OUTDOOR SIGNS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations.  The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** We will pay for direct physical loss of or physical damage to all outdoor signs at the "scheduled premises":

**(1)** Owned by you; or

**(2)** Owned by others but in your care, custody and control.

**B.** Paragraph **A.3.**, Covered Causes of Loss, and Section **B.**, Exclusions, do not apply, to this Optional Coverage, except for:

**(1)** Governmental Action;

**(2)** Nuclear Hazard; and

**(3)** War and Military Action.

**C.** **Additional Exclusion**

We will not pay for physical loss or physical damage caused by or resulting from:

**(1)** Wear and tear;

**(2)** Hidden or latent defect;

**(3)** Rust;

**(4)** Corrosion; or

**(5)** Mechanical breakdown.

**D.** **Limit of Insurance**

The most we will pay for physical loss or physical damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

**E.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

© 2005, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY OF OTHERS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations.  The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

We will pay, on replacement cost basis, for direct physical loss or physical damage by a Covered Cause of Loss to Personal Property of Others that is in your care, custody and control.

The most we will pay for direct physical loss or physical damage in any one occurrence is the Limit of Insurance applicable to Personal Property of Others shown in the Declarations.

© 2005, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEMPERATURE CHANGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

This coverage applies only when it is indicated in the Declarations.  The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** We will pay for direct physical loss of or physical damage to "perishable stock" at the "scheduled premises" caused by or resulting from:

1. A change in temperature or humidity resulting from:

   **(a)** Mechanical breakdown or failure of:

       **(1)** Stationary heating plants; or

       **(2)** Refrigerating, cooling or humidity control apparatus or equipment;

       But only while such plants, equipment or apparatus are at the "scheduled premises".

   **(b)** Complete or partial failure of electric power, either on or away from your "scheduled premises".  Such failure of power must be due to conditions beyond your control; or

2. Contamination by a refrigerant.

**B. SELLING PRICE**

We will determine the value of finished "perishable stock" in the event of direct physical loss or physical damage at the selling price, as if no physical loss or physical damage had occurred less discounts and expenses you otherwise would have had.

**C.** We will not pay for direct physical loss of or physical damage to "perishable stock" located:

1. On buildings;

2. In the open; or

3. In vehicles, other than trailers used for storage located within 1000 feet of the "scheduled premises".

**D. EXCLUSIONS**

1. The following exclusions under SECTION **B** - EXCLUSIONS are deleted:

   **(a)** Ordinance or Law;

   **(b)** Power Failure; and

   **(c)** Mechanical Breakdown in the Standard Property Coverage Form.

2. The following exclusions are added:

   We will not pay for direct physical loss or physical damage caused by or resulting from:

   **(a)** The disconnecting of any of the following systems from the source of power:

       **(1)** Refrigerating;

       **(2)** Cooling; or

       **(3)** Humidity control.

   **(b)** The loss of electrical power caused by the shutting off of any switch or other device used to control the flow of electric power or current.

   **(c)** The inability of an electrical utility company, your stationary heating plant or any other power source to provide sufficient heat or power due to:

       **(1)** Lack of fuel;

       **(2)** Lack of capacity to make enough heat or power; or

       **(3)** Order of the government.

   **(d)** Breaking of any glass that is a permanent part of a refrigerating, cooling or humidity control unit.

**E. DEDUCTIBLE**

We will not pay for loss in any one occurrence unless the amount of loss exceeds the deductible stated in paragraph **D.5.** of the Standard Property Coverage Form or **D.5.** of the Special Property Coverage Form., unless a different deductible is stated in the

© 2014, The Hartford

Declarations for Temperature Change. We will then pay the amount of loss in excess of the deductible, up to the Limit of Insurance.

## F. LIMIT OF INSURANCE

The most we will pay for direct physical loss or physical damage in any one occurrence is the Limit of Insurance for Temperature Change shown in the Declarations.

## G. ADDITIONAL CONDITIONS

1. We will pay for direct physical loss or physical damage under this Optional Coverage only when:

   **(a)** Such physical loss or physical damage is not covered elsewhere in this policy or any other policy that insures the "perishable stock" at the "scheduled premises"; and

   **(b)** This Temperature Change coverage is shown as a specific item of insurance in the Declarations.

2. In the event of physical loss or physical damage, none of the other coverages under this policy or any other policy will share in its payment unless the provisions of the policy are similar to the provisions of this Optional Coverage.

3. We will not pay more than the Limit of Insurance shown in the Declarations for the Temperature Change.

## H. ADDITIONAL DEFINITIONS

For the purpose of this insurance:

1. "Mechanical breakdown" means:

   **(a)** Breaking or separation of any mechanical part(s) other than gas pipes or lines; or

   **(b)** Burning out of any electrical motor servicing such unit; and

   requiring replacement of the damaged parts to become functional.

   But "mechanical breakdown" does not mean faulty operation or failure of equipment which results in temperature change but does not require replacement of broken parts.

   We will not pay for direct physical loss or physical damage to "perishable stock" caused by such faulty operation or failure of equipment.

2. "Perishable stock" means personal property:

   **(a)** Maintained under controlled conditions for its preservation; and

   **(b)** Susceptible to direct physical loss or physical damage if the controlled conditions change.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VALUABLE PAPERS AND RECORDS

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

This coverage applies only when it is indicated in the Declarations. The provisions of this policy apply to the coverage stated in this endorsement, except as indicated below.

**A.** We will pay for direct physical loss of or physical damage to the following types of property at the "scheduled premises" that is your property or property of others in your care, custody or control:

Valuable Papers and Records, meaning inscribed, printed or written:

**(1)** Documents;

**(2)** Manuscripts;

**(3)** Records including patient records; or

**(4)** X-Rays

including abstracts, books, deeds, drawings, films, maps or mortgages.

**But Valuable Papers and Records does not include:**

**(1)** Property that cannot be reproduced, replaced or restored;

**(2)** "Money" and "Securities";

**(3)** Converted data; or

**(4)** Programs or instructions used in your data processing operations, including the material on which the data is recorded.

**B. Limit of Insurance**

The most we will pay for direct physical loss or physical damage in any one occurrence is the Limit of Insurance for Valuable Papers and Records shown in the Declarations.

**C. Deductible**

We will not pay for loss in any one Occurrence unless the amount of loss exceeds the policy deductible stated in the Declarations. We will then pay the amount of loss in excess of the Deductible, up to the Limit of Insurance.

**D.** Under this Optional Coverage we will not pay for property:

**(1)** Held as samples or for delivery after sale;

**(2)** In storage away from the premises shown in the Declarations; or

**(3)** If such property can not be replaced with other property of like kind and quality.

**E.** With respect to this Optional Coverage, Coverage Extension **A.5.h.**, Property Off-Premises in the Standard Property Coverage Form and Coverage Extension **A.6.h.**, Property Off-Premises in the Special Property Coverage Form are replaced by the following:

**1.** You may apply the insurance provided under this Optional Coverage to Valuable Papers and Records while such property is not at the "scheduled premises", including while in transit. The most we will pay for direct physical loss or physical damage under this Coverage Extension is 25% of the Limit of Insurance shown in the Declarations for Valuable Papers and Records but not more than $25,000.

**2.** However, if Valuable Papers and Records – Off-Premises is scheduled in the Declarations, then the limit in E.1. above is replaced by the limit of insurance shown in the Declarations for Valuable Papers and Records – Off-Premises.

**F.** The Valuable Papers and Records Coverage Extension, paragraph **A.5.i.** in the Standard Property Coverage Form and paragraph **A.6.i.** in the Special Property Coverage Form., do not apply to any premises where this Optional Coverage applies.

**G.** With respect to coverage provided by this endorsement, paragraph **E.5.d.(6)** in the Standard Property Coverage Form and in the Special Property Coverage Form are replaced by the following:

**(6)** We will determine the value of "Valuable Papers and Records" at the cost of:

**a.** Blank materials for reproducing the records; and

© 2009, The Hartford

**b.** The reasonable cost to research, replace or restore the lost information.

**H.** **Section B. Exclusions** does not apply to this Optional Coverage except for:

**(1)** Governmental Action;

**(2)** Nuclear Hazard; and

**(3)** War and Military Action.

**I.** **Additional Exclusions**

We will not pay for direct physical loss or physical damage caused by or resulting from any of the following:

**(1)** Dishonest acts by:

    **(a)** You, or your employees or authorized representatives;

    **(b)** Anyone else with an interest in the property, or their employees or authorized representatives; or

    **(c)** Anyone else to whom the property is entrusted.

    This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

But this exclusion does not apply to a carrier for hire.

**(2)** Errors or omissions in processing or copying.

But we will pay for direct physical loss or physical damage caused by resulting fire or explosion.

**(3)** Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct physical loss or physical damage caused by lightning.

**(4)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(5)** Unauthorized instructions to transfer property to any person or to any place.

Form SS 04 47 04 09



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CRIME COMMON CONDITIONS AND EXCLUSIONS

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

The following conditions are added the **Standard Property Coverage Form** and the **Special Property Coverage Form**.

## A. CRIME COMMON CONDITIONS

**1. Consolidation - Merger**

If through consolidation or merger with, or purchase of assets of, some other entity:

**a.** Any additional persons become "employees"; or

**b.** You acquire the use and control of any additional premises;

any insurance afforded for "employees" or premises also applies to those additional "employees" and premises, but only if you:

**(1)** Give us written notice within 60 days thereafter; and

**(2)** Pay us an additional premium.

**2. Discovery Period for Loss**

We will pay only for covered loss discovered no later than one year from the end of the policy period.

Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this policy has been, or may be incurred even though the exact amount or the details of the loss may not then be known.

Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts, which if true, would be a covered loss under this policy.

**3. Joint Insured**

**a.** If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

**b.** If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**c.** An "employee" of any Insured is considered to be an "employee" of every Insured.

**d.** If this insurance or any of its coverages is canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

**e.** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**4. Legal Action Against Us**

The following replaces the Legal Action Against Us in the Property Loss Conditions:

No one may bring a legal action against us under this Coverage Part unless:

**a.** There has been full compliance with all of the terms of this Coverage Part; and

**b.** The action is brought within 2 years after the date on which you discover the loss .

© 2000, The Hartford

5. **Loss Sustained During Prior Insurance**

   a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

      (1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

      (2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

   b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

      (1) This insurance as of its effective date; or

      (2) The prior insurance had it remained in effect.

6. **Non-Cumulation of Limit of Insurance**

   Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

7. **Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate**

   If any loss is covered under this policy and under any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest, we will not pay more that the highest single Limit of Insurance. We will settle such claim as follows:

   a. We will first pay the Limit of Insurance applicable under this policy subject to this policy's applicable deductible; then

   b. If the Limit of Insurance under that prior policy is equal to or less than the Limit of Insurance under this policy, we will make no further payment; or

   c. If the Limit of Insurance under that prior policy is higher than the Limit of Insurance under this policy, we will then pay for any remaining part of the loss.

   But in no event will our total payment for loss be more than would be payable under the policy with the highest Limit of Insurance.

We will also apply any deductible under that prior policy to the extent it exceeds the deductible under this policy.

8. **Ownership of Property, Interests Covered**

   The property covered under this insurance is limited to property:

   a. That you own or hold; or

   b. For which you are legally liable.

   However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

9. **Policy Period**

   a. The Policy Period is stated in the Declarations.

   b. Subject to the Loss Sustained During Prior Insurance condition, **A.5.** above, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

10. **Recoveries**

   The following replaces the Recovered Property in the Property Loss Conditions:

   a. Any recoveries less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

      (1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

      (2) Then to us, until we are reimbursed for the settlement made;

      (3) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

   b. Recoveries do not include any recovery:

      (1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

      (2) Of original "securities" after duplicates of them have been issued.

B. **CRIME COMMON EXCLUSIONS**

The following are Exclusions replace the Exclusions in Section B:

1. **Governmental Action**

   We will not pay for loss resulting from seizure or destruction of property by order of governmental authority.

2. **Indirect Loss**

We will not pay for loss that is an indirect result of any act or occurrence covered by this insurance including, but not limited to, loss resulting from:

a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

b. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

3. **Legal Expenses**

We will not pay for expenses related to any legal action.

4. **Nuclear Hazard**

We will not pay for loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

5. **War and Similar Actions**

We will not pay for loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

C. **CRIME COMMON DEFINTIONS**

The following is added to Definitions

**"Employee"** means:

1. Any natural person:

a. While in your service (and for 60 days after termination of service); and

b. Whom you compensate directly by salary, wages or commissions; and

c. Whom you have the right to direct and control while performing services for you;

2. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the premises;

3. Any natural person who is your partner or member of a limited liability corporation.

4. Any natural person, whether or not compensated, while performing services for you as the chairman or a member of any committee;

5. Any natural person who is a non-compensated officer;

6. Any natural person who is a director or trustee while acting as a member of any of your elected or appointed committees or while acting within the scope of the usual duties of an "employee";

7. Any natural person who is a non-compensated volunteer, other than one who is a fund solicitor, while performing services for you that are usual to the duties of an "employee";

8. Any natural person who is a former employee, director, partner, member, representative or trustee retained as a consultant while performing services for you;

9. Any natural person who is a student intern who is pursuing studies or acting within the scope of the usual duties of an "employee";

10. Any natural person, who is a student enrolled in your facility, while handling or has possession of property or funds in connection with sanctioned student activities;

11. The spouses of and children over 18 years old who reside with any "employee" who is a building manager, superintendent or janitor.

Each family is deemed to be, collectively, one "employee" for the purposes of this insurance, except that any Termination Condition applies individually to the spouse and children.

**"Employee"** does not mean:

(1) An agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any manager, director, partner, member or trustee, except while acting within the scope of the usual duties of an "employee".



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OFF-PREMISES UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

**A. DIRECT DAMAGE EXTENSION FOR OFF-PREMISES UTILITY SERVICES**

This Coverage Extension applies only to the "scheduled premises" shown in the Declarations with a Utility Services Limit of Insurance.  The Utility Services Limit of Insurance is part of, not in addition to, the Limit of Insurance stated in the Declarations as applicable to the Covered Property.

We will pay for direct physical loss of or physical damage to Covered Property described in the Declarations caused by the interruption of utility service to the "scheduled premises".  The interruption must result from direct physical loss or physical damage by a Covered Cause of Loss to the following property, not on the "scheduled premises":

1.  "Water Supply Services";

2.  "Communication Supply Services"; or

3.  "Power Supply Services".

**B. ADDITIONAL DEFINITIONS**

1.  **"Water Supply Services"**, meaning the following types of property supplying water to the "scheduled premises":

    a.  Pumping stations; and

    b.  Water mains.

2.  **"Communication Supply Services"**, meaning property supplying communication services, including telephone, radio, microwave or television services, including overhead transmission lines to the "scheduled premises", such as:

    a.  Communication transmission lines, including optic fiber transmission lines;

    b.  Coaxial cables; and

    c.  Microwave radio relays except satellites.

3.  **"Power Supply Services"**, meaning the following types of property supplying electricity, steam or gas, including overhead transmission lines to the "scheduled premises":

    a.  Utility generating plants;

    b.  Switching stations;

    c.  Substations;

    d.  Transformers; and

    e.  Transmission Lines.

© 2005, The Hartford

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBERFLEX COVERAGE

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This endorsement modifies coverage under the Business Liability Coverage Form for your web site or internet related activities.

**A.** Exclusion **1.p. "Personal and Advertising Injury"** (Section **B. - EXCLUSIONS**) is modified as follows:

**1.** Paragraphs **(4)**, **(5)** and **(7)** are deleted and replaced by the following:

**(4)** Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement" or on "your web site";

**(5)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement" or on "your web site";

**(7)** **(a)** Arising out of any violation of any actual or alleged infringement or violation of intellectual property rights, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

**(b)** Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply to infringement, in your "advertisement" or on "your web site", of

**(a)** Infringement in your "advertising" of:

**(i)** Copyright;

**(ii)** Slogan; or

**(iii)** Title of any literary or artistic work; or

**(b)** Copying in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

**2.** Paragraph **(9)** does not apply.

**3.** Subparagraphs **(a)**, **(b)** and **(c)** of Paragraph **(12)** do not apply.

**B.** Section **G.** – LIABILITY AND MEDICAL EXPENSES DEFINITIONS is amended as follows:

**1.** Paragraph **b.** of definition **1.** "advertisement" is deleted and replaced by:

"Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

**b.** The Internet;

**2.** Paragraphs **f.** and **g.** of the definition of "personal and advertising injury" are deleted and replaced by the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**f.** Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement";

**g.** Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your web site"; or

**3.** The following is added to the definition of "personal and advertising injury":

As used in this definition, oral, written or electronic publication includes publication of material in your care, custody or control by someone not authorized to access or distribute that material.

**4.** The following definition is added:

"Your web site" means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, for the purposes of promoting your goods or services, that is accessible over a computer network.

Form SS 40 26 06 11

© 2011, The Hartford

Page 1 of 1



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION - EXCEPTION FOR SCHEDULED ACTIVITIES

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

Exclusion **c.** of Section **B. EXCLUSIONS** is replaced by the following:

   **c.**  "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      **(1)** Causing or contributing to the intoxication of any person;

      **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

   **(1)** Manufacture, sell or distribute alcoholic beverages;

   **(2)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

      **(a)** Requires a license; or

      **(b)** Is for the purpose of financial gain or livelihood; or

   **(3)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of the selling, serving or furnishing of alcoholic beverages at the specific activity(ies) described in the declarations.

© 2000, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE

This endorsement modifies insurance provided under the following:

<div align="center">

SPECIAL PROPERTY COVERAGE FORM
STANDARD PROPERTY COVERAGE FORM
PERSONAL PROPERTY OF OTHERS
COMPUTERS AND MEDIA COVERAGE

</div>

**A. Fungi, Bacteria or Virus Exclusions**

1. Paragraph **A.5.i.(5).** of the Increased Cost of Construction Additional Coverage of the Standard Property Coverage Form is replaced by the following:

   (5) Under this Additional Coverage, we will not pay for:

   (a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling, or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, bacteria or virus; or

   (b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet or dry rot, bacteria or virus.

2. The following exclusion is added to Paragraph **B.1.** Exclusions of the Standard Property Coverage Form and the Special Property Coverage Form; Paragraph **F.**, Additional Exclusions of Computers and Media, form SS 04 41, and to form SS 04 45, Personal Property of Others:

   i. **"Fungi", Wet Rot, Dry Rot, Bacteria And Virus**

   We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

   (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

   (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss".

   This exclusion does not apply:

   (1) When "fungi", wet or dry rot, bacteria or virus results from fire or lightning; or

   (2) To the extent that coverage is provided in the Additional Coverage – Limited Coverage for "Fungi", Wet Rot, Dry Rot, Bacteria and Virus with respect to loss or damage by a cause of loss other than fire or lightning.

   This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

**B.** The following Additional Coverage is added to Paragraph **A.4.** of the Standard Property Coverage Form or Paragraph **A.5.** of the Special Property Coverage Form, and applies to the optional coverage form SS 04 41, Computers and Media and SS 04 45, Personal Property of Others and form:

**Form SS 40 93 07 05**

**Page 1 of 3**

© 2005, The Hartford

**1. Limited Coverage For "Fungi", Wet Rot, Dry Rot, Bacteria and Virus**

   **a.** The coverage described in **1.b.** below only applies when the "fungi", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

      **(1)** A "specified cause of loss" other than fire or lightning;

      **(2)** Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises.

   **b.** We will pay for loss or damage by "fungi", wet rot, dry rot, bacteria and virus. As used in this Limited Coverage, the term loss or damage means:

      **(1)** Direct physical loss or direct physical damage to Covered Property caused by "fungi", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungi", wet rot, dry rot, bacteria or virus;

      **(2)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot, dry rot, bacteria or virus; and

      **(3)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot, dry rot, bacteria or virus are present.

   **c.** Unless a higher Limit of Insurance is shown in the Declarations for Limited "Fungi", Bacteria or Virus Coverage, the coverage described under this Limited Coverage is no more than the Limit of Insurance stated in the Declarations for Building and Business Personal Property, but not greater than $50,000.

     If form SS 04 41, Computers and Media, and form SS 04 45, Personal Property of Others, are made a part of this policy, then the Limits of Insurance for Computers and Media, and Personal Property of Others is included within this coverage limit. This coverage is made applicable to separate "scheduled premises" as described in the Declarations. Regardless of the number of claims, this limit is the most we will pay per "scheduled premises" for the total of all loss or damage arising out of all

      **(1)** occurrences of "specified causes of loss" (other than fire or lightning); and

      **(2)** Equipment Breakdown Accident that occurs to Equipment Breakdown Property;

      which take place in a 12-month period (starting with the beginning of the present annual policy period).

     With respect to a particular occurrence of loss which results in "fungi", wet or dry rot, bacteria or virus, we will not pay more than the total of $50,000 unless a higher Limit of Insurance is shown in the Declarations, even if the "fungi", wet or dry rot, bacteria, or virus continues to be present or active, or recurs, in a later policy period.

   **d.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot, dry rot, bacteria or virus, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

     If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot, dry rot, bacteria or virus, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet or dry rot, bacteria or virus causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

   **e.** The terms of this Limited Coverage do not increase or reduce the coverage for Water Damage provided under provision **B.1.h., Exclusion – Water Damage** of the Standard Property Coverage Form or Additional Coverage provision **A.5.n., Water Damage, Other Liquid, Powder or Molten Material Damage** of the Special Property Coverage Form.

   **f.** The following applies only if a Time Element Coverage applies to the "scheduled premises" and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Time Element Coverage.

      **(1)** If the loss which resulted in "fungi", wet or dry rot, bacteria or virus does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to

property caused by "fungi", wet or dry rot, bacteria or virus, then our payment under the Time Element Coverage is limited to the amount of loss and expense sustained in a period of not more than 30 days unless another number of days is indicated in the Declarations. The days need not be consecutive. If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet or dry rot, bacteria or virus, but remediation of "fungi", wet or dry rot, bacteria or virus prolongs the "period of restoration", we will pay for loss and expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days unless another number of days is indicated in the Declarations. The days need not be consecutive.

C. **Fungi Definition**

1. **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# IDENTITY RECOVERY COVERAGE FOR BUSINESSOWNERS AND EMPLOYEES

## IDENTITY THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT

This endorsement modifies insurance provided under the following:

### SPECIAL PROPERTY COVERAGE FORM

**A.** The following is added to paragraph **5. Additional Coverages (Section A. – Coverage):**

**IDENTITY RECOVERY COVERAGE**

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met:

1. There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this policy; and

2. Such "identity theft" is first discovered by the "identity recovery insured" during the policy period for which this Identity Recovery coverage is applicable; and

3. Such "identity theft" is reported to us as soon as practicable but in no event later than 60 days after it is first discovered by the "identity recovery insured."

If all three of the requirements listed above have been met, then we will provide the following to the "identity recovery insured":

1. **Case Management Service**

   Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

2. **Expense Reimbursement**

   Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft."

This coverage is additional insurance.

**B.** The following additional exclusions are added to Section **B.** – Exclusions and apply to this coverage:

**EXCLUSIONS**

We do not cover loss or expense arising from any of the following:

1. Theft of a professional or business identity.

2. Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any authorized representative of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

3. Loss other than "identity recovery expenses".

4. An "identity theft" that is first discovered by the "identity recovery insured" prior to or after the policy period for which this coverage applies.  This exclusion applies whether or not such "identity theft" began or continued during the period of coverage.

5. An "identity theft" that is not reported to us within 60 days after it is first discovered by the "identity recovery insured."

6. An "identity theft" that is not reported in writing to the police.

© 2007, The Hartford

## C. LIMITS OF INSURANCE

1. Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

2. Expense Reimbursement coverage is subject to a limit of $15,000 annual aggregate per "identity recovery insured." Regardless of the number of claims, this limit is the most we will pay for the total of all loss or expense arising out of all "identity thefts" to any one "identity recovery insured" which are first discovered by the "identity recovery insured" during a 12-month period starting with the beginning of the present annual policy period. If an "identity theft" is first discovered in one policy period and continues into other policy periods, all loss and expense arising from such "identity theft" will be subject to the aggregate limit applicable to the policy period when the "identity theft" was first discovered.

   a. Legal costs as provided under paragraph **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the Expense Reimbursement coverage limit.

   b. Lost Wages and Child and Elder Care Expenses as provided under paragraphs **e.** and **f.** of the definition of "identity recovery are jointly subject to a sublimit of $250 per day, not to exceed $5,000 in total. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to lost wages and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

   c. Mental Health Counseling as provided under paragraph **g.** of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

## D. DEDUCTIBLE

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to a deductible of $250. Any one "identity recovery insured" shall be responsible for only one deductible under this Identity Recovery Coverage during any one policy period.

## E. The following additional conditions are added to Section **F.** – Property General Conditions and apply to this coverage:

### CONDITIONS

1. Assistance and Claims

   For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-888-772-1798**.

   The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

   a. Information and advice for how to respond to a possible "identity theft"; and

   b. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

   In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identify theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identify theft" has not occurred.

   As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses."

2. Services

   The following conditions apply as respects any services provided by us or our designees to any "identity recovery insured" under this endorsement:

   a. Our ability to provide helpful services in the event of an "identity theft" depends on the cooperation, permission and assistance of the "identity recovery insured."

**b.** All services may not be available or applicable to all individuals. For example, "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that our services will end or eliminate all problems associated with an "identity theft" or prevent future "identity thefts."

**F.** With respect to the provisions of this endorsement only, the following definitions are added to Section **G.** – Property Definitions:

**DEFINITIONS**

**1.** "Identity Recovery Case Manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured." This includes, with the permission and cooperation of the "identity recovery insured," written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**2.** "Identity Theft" means the fraudulent use of the social security number or other method of identifying an "identity recovery insured." This includes fraudulently using the personal identity of an "identity recovery insured" to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**3.** "Identity Recovery Expenses" means the following when they are reasonable and necessary expenses that are incurred in the United States or Canada as a direct result of an "identity theft":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft."

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft."

**c.** Costs for up to twelve (12) credit reports from established credit bureaus dated within 12 months after your knowledge or discovery of an "identity theft."

**d.** Legal Costs

Fees and expenses for an attorney approved by us for:

**(1)** Defending any civil suit brought against an "identity recovery insured" by a creditor or collection agency or entity acting on behalf of a creditor for non-payment of goods or services or default on a loan as a result of an "identity theft"; and

**(2)** Removing any civil judgment wrongfully entered against an "identity recovery insured" as a result of the "identity theft."

**e.** Lost Wages

Actual lost wages of the "identity recovery insured" for time reasonably and necessarily take away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Child and Elder Care Expenses

Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Mental Health Counseling

Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

4. "Identity Recovery Insured" means the following:

   **a.** A full time employee of the entity insured under this policy; or

   **b.** The owner of the entity insured under this policy who meets any of the following criteria:

      **(1)** A sole proprietor of the insured entity;

      **(2)** A partner in the insured entity; or

      **(3)** An individual having an ownership position of 20% or more of the insured entity.

An "identity recovery insured" must always be an individual person. The entity insured under this policy is not an "identity recovery insured."

All other provisions of this policy apply.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**


# AMENDMENT - DEFINITION OF INSURED CONTRACT

This endorsement modifies insurance provided under the following:

BUSINESS LIABILITY COVERAGE FORM


Paragraph **f.** of the definition of "insured contract" in the **Liability And Medical Expenses Definitions** Section is replaced by the following:

**f.**   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.   Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** includes that part of any contract or agreement that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

However, Paragraph **f.** does not include that part of any contract or agreement:

**(1)**   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)**   Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports surveys, field orders, change orders, designs or drawings and specifications; or

   **(b)**   Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(2)**   Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(1)** above and supervisory, inspection, architectural or engineering activities.

© 2011, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERILS SPECIFICALLY EXCEPTED

As used herein, "Peril" means a cause of physical loss or damage to property. It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are **SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:**

A. **ACTS, ERRORS OR OMISSIONS** by you or others in:

1. Planning, zoning, developing, surveying, testing or siting property;

2. Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;

3. The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:

   a. Land or buildings or other structures;

   b. Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; or

   c. Other improvements or changes in or additions to land or other property.

4. The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or

5. The maintenance of any such property or facilities.

This exception A. applies whether or not the property or facilities described above are:

1. Covered under this policy; or

2. On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement:

1. If this policy is written to cover the risk of loss from specifically named causes. "Covered Peril" means any Peril specifically named as covered; or

2. If written to cover the risk of loss without specifying specifically named causes, "Covered Peril" means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

B. **COLLAPSE, "CRACKING" OR "SHIFTING"** of buildings, other structures or facilities, or their parts, if the collapse, "cracking" or "shifting":

1. Occurs during "earth movement," "volcanic eruption" or "flood" conditions or within 72 hours after they cease; and

2. Would not have occurred but for "earth movement," "volcanic eruption" or "flood."

But if loss or damage by a covered Peril ensues at the covered premises, we will pay for that ensuing loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, "cracking" or "shifting" of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more of the following Perils:

1. Earthquake;

2. Flood;

3. Volcanic action;

4. Volcanic eruption; or

5. Sinkhole collapse,

this exception B. will not reduce that coverage.

As used in this exception B.:

Form IH 10 01 09 86   Printed in U.S.A.

Page 1 of 2

Copyright, Hartford Fire Insurance Company, 1986

1. "Cracking" means cracking, separating, shrinking, bulging, or expanding;

2. "Shifting" means shifting, rising, settling, sinking, or lateral or other movement;

3. "Earth movement" means any earth movement, including but not limited to "earthquake," landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other "shifting" of earth; all whether or not combined with "flood" or "volcanic eruption." It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;

4. "Earthquake" means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or "shifting" of rock beneath the surface of the ground from natural causes. An "Earthquake" includes all related shocks and after shocks;

5. "Volcanic eruption" means the eruption, explosion or effusion of a volcano. It does not include volcanic action if loss by volcanic action is specifically covered in this policy;

6. "Flood" means:

   a. Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;

   b. Release of water held by a dam, levy or dike or by a water or flood control device;

   c. Water that backs up from a sewer or drain; or

   d. Water under the ground surface pressing on, or flowing, leaking or seeping through:

      (1) Foundations, walls, floors or paved surfaces;

      (2) Basements, whether paved or not; or

      (3) Doors, windows or other openings.

**Form IH 10 01 09 86**   Printed in U.S.A.                                                    **Page 2 of 2**

Copyright, Hartford Fire Insurance Company, 1986



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ARTIFICIAL TANNING

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, in whole or in part, any artificial sun tanning methods or products, including, but not limited to:

1.  Tanning equipment, such as tanning booths, tanning beds, sunlamps, or other appliances or devices used for artificial sun tanning

2.  Artificial tanning treatments, such as spray-on or airbrush tanning applications; or

3.  Artificial tanning supplements or pills used to enhance the tanning process or darken the skin.

**Form SS 05 05 04 08**                                                                                              **Page 1 of 1**

© 2008, The Hartford



# POLICYHOLDER NOTICE - IDENTITY RECOVERY COVERAGE

We are pleased to inform you that **your Business Owners policy from The Hartford now includes Identity Recovery coverage—at no extra cost to you.** (Coverage is provided to individuals, the owners (sole proprietor or at least 20% ownership) or partners, and full time employees whose identity has been stolen.)

Identity theft occurs when someone illegally assumes your identity of and uses it to do one or more of the following:

- o   Make purchases;
- o   Receive loans;
- o   Undertake obligations; or
- o   Commit crimes.

Identity theft has struck 27 million Americans in the past five years alone and is the fastest growing crime in America. Owners of small businesses are especially vulnerable because they may have access to substantial lines of credit and are, therefore, attractive targets to identity thieves.

**Identity Theft Can Cost You Time and Money**
When identity theft occurs, victims have to spend money and, even more significantly, a considerable amount of time and energy to clear their credit history and correct their records. Victims frequently mention that this is an immensely frustrating and time-consuming experience. And long hours spent correcting your credit or identity records are a costly distraction from your business. The Hartford's Identity Recovery program is specially designed to save business owners like you the time and money of correcting problems stemming from the personal identity theft.

**Case Manager Service and Expense Reimbursement**
Even though you take all the right precautions as a business owner to protect yourself from identity theft, it can happen. If it does, your policy now provides you with the following protection and assistance:

- o   Access to a toll-free help line **(1-888-772-1798)** staffed by experienced identity theft counselors who can answer your questions, provide information and resources that can help you if you are a victim of identity theft, and can speed the recovery process since they are familiar with the appropriate process and procedures. These services include:
    - o   Working with credit bureaus, creditors, financial institutions, and others to identify errors and help you correct your records;
    - o   Enrolling you in an electronic credit monitoring service;
    - o   Requesting a fraud alert with credit bureaus where warranted;
    - o   Preparing communications for you to send to the Social Security Administration, state Department of Motor Vehicles and other government entities;
    - o   Providing legal referrals for assistance with court appearances and legal entanglements;
    - o   Working with you to check for a recurrence of identity theft problems;
    - o   Keeping detailed records of the steps taken and remaining in the process.
- o   Reimbursement up to $15,000 for covered expenses (such as cost of obtaining credit bureau reports, postage, phone and shipping fees, certain legal fees caused by identity theft, and Notary and filing fees.)

Should you suspect that you are a victim of identify theft, call our toll-free Identity Recovery Help Line at 1-888-772-1798. Identity recovery counselors are available Monday - Friday from 8:00 AM to 8:00 PM Eastern Standard Time.

Please review your policy carefully for policy terms and conditions.

Thank you.

Form SS 38 25 12 07                                                                                     Page 1 of 1

© 2007, The Hartford

Exhibit 'G'

August 1, 2022

**THE
HARTFORD**



*PO Box 14269*
*Lexington, KY 40512-4269*

Moreira & Moreira, PC
Via email to Monique Moreira at <u>moreiralaw@moreiralawpc.com</u>

Re:    Insured:        HUMA Beauty Salon LLC
       Claimant:       Rochelle Finkelstein
       Claim No:       ███████████
       Date of Loss:   1/17/16

Dear Ms. Moreira:

As you are aware, Sentinel Insurance Company, Ltd. ("Hartford") is the Commercial General Liability carrier for HUMA Beauty Salon LLC ("HUMA"). I am in receipt of your letter dated July 26, 2022 requesting additional insured status on behalf of Vrajsan Inc., Green Street Wine & Liquor, LLC, and 1183 Green Street LLC ("Vrajsan"). The purpose of this email is to advise you that The Hartford denies your request for additional insured status. We set forth the bases for our position in the following paragraphs.

**THE HARTFORD POLICY**

Hartford issued policy ███████████ to HUMA Beauty Salon, LLC for the policy period of December 17, 2015 to December 17, 2016. Hartford issued a Business Liability Coverage Part with limits of $1,000,000 for all "bodily injury" or "property damage" because of an "occurrence" or for one or more offenses within the policy definition of "personal and advertising injury" with $2,000,000 General and Products-Completed Operations Aggregates. We have reviewed the allegations in this lawsuit in conjunction with the pertinent coverage form for our analysis is ███████ ██████– **Business Liability Coverage Form**.

    **A. COVERAGES**
        **1. BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**
        **Insuring Agreement**
        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply…

© 2022 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

The policy defines those parties who would qualify as an insured in **Section C. WHO IS AN INSURED**, pertinent part cited below;

6. **Additional Insureds When Required By Written Contract, Written Agreement or Permit**

The person(s) or organization(s) identified in Paragraphs **a.** through **f.** below are additional insureds when you have agreed, in a written contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement, or the issuance of the permit

A person or organization is an additional insured under this provision only for that period of time required by the contract, agreement or permit.

However, no such person or organization is an additional insured under this provision if such person or organization is included as an additional insured by an endorsement issued by us and made a part of this Coverage Part, including all persons or organizations added as additional insureds under the specific additional insured coverage grants in Section F. – Optional Additional Insured Coverages.
…

f. **Any Other Party**

(1) Any other person or organization who is not insured under Paragraphs a. though e. above, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

(a) In the performance of your ongoing operations;
(b) In connection with your premises owned by or rented to you; or
(c) In connection with "your work"…

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**CONCLUSION:**

The lease section titled Utilities, Taxes and Common Are Maintenance is clear that the landlord will handle all parking lot care and bill the tenant under CAM charges.

The lease does not require that additional insured status be on a primary and noncontributory basis. I have reviewed our policy and do not see these entities listed as your letter advises. Can you please clarify where you see this information? Please also provide a copy of their insurance policies for review.

Section F above requires the injury to have been caused in whole or in part by our insured's acts or omission in performance with their operations. As my insured had no responsibility to maintain the parking lot, this loss was not caused in any way by the actions of Huma.

© 2022 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

We have attempted to fully explain our position to you.  However, there may be other policy conditions or provisions that apply, limit or preclude coverage and we do not waive any rights under the policy or the law, whether specifically mentioned herein or not.  If for some reason you believe that we have overlooked provisions of the applicable policy that would provide coverage in this matter, please inform the undersigned of such in writing.  We will carefully consider your position.  If you should have any disagreement with the position we have taken in this matter, please send the undersigned your written objections for review and consideration.

Should you have any questions regarding this matter, please feel free to contact me.

Sincerely,

*Amanda Chaney*

Amanda Chaney
407-871-4627
Senior Claims Adjuster

Sentinel Insurance Company, Ltd.

© 2022 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

# Civil Case Information Statement

**Case Details: HUDSON | Civil Part Docket# L-002862-22**

**Case Caption:** PREFERRED MUTUAL INS URANCE CO VS SENTINEL INSUR

**Case Initiation Date:** 08/29/2022

**Attorney Name:** MONIQUE DANIELLE MOREIRA

**Firm Name:** MOREIRA & MOREIRA, PC

**Address:** 712 KEARNY AVE
KEARNY NJ 07032

**Phone:** 2019919001

**Name of Party:** PLAINTIFF : Preferred Mutual Insurance Co.

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by:** Preferred Mutual Insurance Co.? NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category:** Putative Class Action? NO  Title 59? NO  Consumer Fraud? NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/29/2022
Dated

/s/ MONIQUE DANIELLE MOREIRA
Signed

A True Copy
Attest:
                                    erver
Joi... Nizlanklewicz